UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Case No.: 12-CV-5583

Efrain Danilo Mendez a/k/a Efrain D. Mendez-Rivera, Aldraily Alberto Coiscou, Fernando Molina a/k/a Jorge Luis Flores Larios, Siryi Nayrobik Melendez, Rene Alexander Oliva, Juan Flores-Larios, Ramiro Cordova, and Daniel Sante, individually and on behalf of all others similarly situated,

**FIRST AMENDED COMPLAINT**

Plaintiffs,

*-against-*

U.S. Nonwovens Corp., Samuel Mehdizadeh a/k/a Solomon Mehdizadeh,  Shervin Mehdizadeh Mehdizadeh, and Rody Mehdizadeh,

Defendant.

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Efrain Danilo Mendez a/k/a Efrain D. Mendez-Rivera, Aldraily Alberto Coiscou, Fernando Molina a/k/a Jorge Luis Flores Larios, Siryi Nayrobik Melendez, Rene Alexander Oliva, Juan Flores Larios, Ramiro Cordova and Daniel Sante ("Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

NATURE OF THE ACTION

1.     U.S. Nonwovens Corp. (U.S. Nonwovens) manufactures a wide range of products that include household cleaning products, disposable cleaning wipes for personal hygiene and other cleaning uses, other non-woven products, and laundry cleaning and care products.   Its clients in the past six years have included Wal-Mart, K-Mart, Sears, CVS, Walgreens and other large retailers.

2.      U.S. Nonwovens Corp. has three factories located in Brentwood, New York located at 100 Emjay Blvd., 105 Emjay Blvd., and 110 Emjay Blvd.

3.      In addition to the Brentwood, New York locations, U.S. Nonwovens maintains a warehouse and distribution center in Hauppauge, New York.

4.      This case was originally commenced by filing of a summons and complaint on November 13, 2012.

5.      At the time of the filing of the complaint, the representative plaintiffs complained that hours worked were often "missing" from their paychecks.   They complained regarding the missing hours.  In some instances, these hours were eventually paid after delays of up to a month a more.   In other instances U.S. Nonwovens refused to pay these hours, claiming that the employee had not "punched" correctly.   Based upon repeated references by U.S. Nonwovens representatives that employees were not properly using the biometric scanning system/punch clock, the plaintiffs believed that the failure to timely pay overtime was due to some type of malfunction with the biometric scanner/punch clock.

6.      Since the filing of the initial complaint, however, it appears that the reason for U.S. Nonwovens' failure to promptly pay overtime (and in some cases fail to pay overtime entirely) has little or nothing to do with the biometric scanner/punch-clock system.   Long-time employees of U.S. Nonwovens who have come forward since the filing of the initial complaint have come forward to report long-standing wage-and-hour abuses.  More specifically:

(a) For at least 12 years, regardless of the system used by U.S. Nonwovens to calculate overtime, there have been widespread complaints by employees that time is missing from paychecks;

- 2 -

(b) Employees only punch-in once at the beginning of the workday and only punch-out once at the end of the workday.   Yet, many times <u>only several hours are missing from a paycheck</u>.   If the machine failed to register the "punch-in" it would result in underpayments of at least 10 hours (the regular shift), not a couple of hours;

(c) "Malfunctions" with the biometric scanner mysteriously result in underpayment, but never overpayment, of wages;

(d) Employees work regular shifts, and U.S. Nonwovens is well aware of a particular employees' work hours.

7.     Even assuming that there is no intentional scheme to deprive employees of overtime on an ad-hoc basis, U.S. Nonwovens does not have procedures in effect to assure that it is properly compensating employees for all overtime hours worked.

8.     U.S. Nonwovens does not have any procedures to identify or address instances where an employee's hours appear to be under-reported.

9.     Moreover, in the instance where an employee actually complains about missing overtime hours, U.S. Nonwovens delays payment of overtime for up to an additional one month or more.

10.     The failure to promptly pay overtime on the next regular pay period, constitutes an overtime violation under 29 U.S.C. 207 and 29 C.F.R. § 778.106.[1]

---

[1] As a general rule, "overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends…" 29 C.F.R. § 778.106.  A delay in payment of overtime is in and of itself actionable under the FLSA.   *Ayers v. SGS Control Services, Inc.*, 03 CIV. 9078 RMB, 2007 WL 646326 (S.D.N.Y. Feb. 27, 2007).

11.    The unreasonably delay the payment of overtime once a complaint regarding unpaid overtime is made also constitutes a violation under 29 U.S.C. 207 and 29 C.F.R. § 778.106. [2]

## SUMMARY OF CAUSES OF ACTION

12.    By this Second Amended Complaint, the plaintiffs assert the following causes of action against U.S. Nonwovens and the defendants:

> (a)   A *First Cause of Action* for failure to timely pay overtime under the FLSA, 29 U.S.C. 201 *et seq.* and the supporting regulations;

> (b)   A *Second Cause of Action* for failure to pay overtime under the FLSA, 29 U.S.C. 201 *et seq.* and the supporting regulations;

> (c)   A *Third Cause of Action* for unpaid overtime under the NYLL;

> (d)   A *Fourth Cause of Action* for untimely payment of wages under the NYLL;

> (e)   A *Fifth Cause of Action* for failure to pay spread of hours pay as required by the NYLL and the supporting regulations of 12 NYCRR §§142-2.4 and 142-2.18;

> (f)   A *Sixth Cause of Action* for failure to provide wage notices under Section 195.1 of the NYLL; and

> (g)   A *Seventh Cause of Action* for common law breach of contract for failure to pay agreed-upon wages under the New York Common Law.

---

[2] "[T]he requirements of the [Fair Labor Standards] Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. [However, p]ayment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made…" 29 C.F.R. § 778.106.

*Plaintiffs*

13.    Each named plaintiff herein is an adult individual who is a resident of Suffolk County, New York.

14.    Each named plaintiff herein was employed by the Defendants during the relevant time period.

15.    Each named plaintiff herein is a covered employee within the meaning of the FLSA and the NYLL.

16.    A written consent form for each named plaintiff has been filed with this Court.

*Defendants*

17.    Defendants U.S. Nonwovens Corp., Samuel Mehdizadeh a/k/a Solomon Mehdizadeh,  Shervin Mehdizadeh Mehdizadeh, and Rody Mehdizadeh jointly employed the Plaintiffs and similarly situated employees during the relevant time period.  Each Defendant has had substantial control over Plaintiffs working conditions, and over the unlawful policies and practices alleged herein.

<u>U.S. Nonwovens Corp.</u>

18.    U.S. Nonwovens Corp. ("U.S. Nonwovens") has operated warehouses and factories located in Brentwood, and Hauppauge, Long Island during the relevant period.

19.    U.S. Nonwovens is a domestic business corporation, organized and existing under the laws of New York.

20.    Upon information and belief, U.S. Nonwovens' principal executive office is located at 100 Emjay Blvd., Brentwood, New York.

21.     U.S. Nonwovens is a covered employer within the meaning of the FLSA and the NYLL, and at all during the relevant time period employed and/or jointly employed the Plaintiffs and similarly situated employees.

22.     During the relevant time period, U.S. Nonwovens maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

23.     Upon information and belief, U.S. Nonwovens applies the same employment policies, practices, and procedures to all non-exempt factory workers, including policies, practices, and procedures with respect to payment of overtime compensation, and spread of hours pay.

24.     Upon information and belief, for each calendar year within the relevant time period and up to the present time, U.S. Nonwoven Corp's annual gross volume of sales made or business done was not less than $500,000.00.

*Individual Defendants*

25.     The defendants Samuel Mehdizadeh a/k/a Solomon Mehdizadeh (Samuel Mehdizadeh), Shervin Mehdizadeh Mehdizadeh (Shervin Mehdizadeh), and Rody Mehdizadeh (collectively the "Individual Defendants") are shareholders in U.S. Nonwovens.

26.     The Individual Defendants together own 100% of the outstanding shares of stock of U.S. Nonwovens.

<u>Samuel Mehdizadeh</u>

27.     Upon information and belief Samuel Mehdizadeh is a resident of the State of New York.

28.     Upon information and belief, at all relevant times, Samuel Mehdizadeh has been a shareholder of U.S. Nonwovens.

29.     Upon information and belief, at all relevant times, Samuel Mehdizadeh has had power over personnel decisions at U.S. Nonwovens, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

30.     Upon information and belief, at all relevant times, Samuel Mehdizadeh has had power over payroll decisions at U.S. Nonwovens, including the power to retain time and/or wage records.

31.     Upon information and belief, Samuel Mehdizadeh is actively involved in managing the day to day operations of U.S. Nonwovens.

32.     Upon information and belief, at all times relevant, Samuel Mehdizadeh has also had the power to stop any illegal pay practices that harmed Plaintiffs.

33.     Samuel Mehdizadeh is a covered employer within the meaning of the FLSA and the NYLL, and at all times relevant, employed and/or jointly employed Plaintiff and similarly situated employees.

<u>Rody Mehdizadeh</u>

34.     Upon information and belief Rody Mehdizadeh is a resident of the State of New York.

35.     Upon information and belief, at all relevant times, Rody Mehdizadeh has been a shareholder of U.S. Nonwovens.

36.     Upon information and belief, at all relevant times, Rody Mehdizadeh has had power over personnel decisions at U.S. Nonwovens, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

37.     Upon information and belief, at all relevant times, Rody Mehdizadeh has had power over payroll decisions at U.S. Nonwovens, including the power to retain time and/or wage records.

38.     Upon information and belief, Rody Mehdizadeh is actively involved in managing the day to day operations of U.S. Nonwovens.

39.     Upon information and belief, at all times relevant, Rody Mehdizadeh has also had the power to stop any illegal pay practices that harmed Plaintiffs.

40.     Rody Mehdizadeh is a covered employer within the meaning of the FLSA and the NYLL, and at all times relevant, employed and/or jointly employed Plaintiff and similarly situated employees.

<u>Shervin Mehdizadeh</u>

41.     Upon information and belief Shervin Mehdizadeh is a resident of the State of New York.

42.     Upon information and belief Shervin Mehdizadeh is an Officer of U.S. Nonwovens.

43.     Upon information and belief, at all relevant times, Shervin Mehdizadeh has been a shareholder of U.S. Nonwovens.

44.     Upon information and belief, at all relevant times, Shervin Mehdizadeh has had power over personnel decisions at U.S. Nonwovens, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

45.     Upon information and belief, at all relevant times, Shervin Mehdizadeh has had power over payroll decisions at U.S. Nonwovens, including the power to retain time and/or wage records.

46.     Upon information and belief, Shervin Mehdizadeh is actively involved in managing the day to day operations of U.S. Nonwovens.

47.     Upon information and belief, at all times relevant, Shervin Mehdizadeh has also had the power to stop any illegal pay practices that harmed Plaintiffs.

48.     Shervin Mehdizadeh is a covered employer within the meaning of the FLSA and the NYLL, and at all times relevant, employed and/or jointly employed Plaintiff and similarly situated employees.

## JURISDICTION AND VENUE

49.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1337 and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

50.     This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

51.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and 2202.

52.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## COLLECTIVE ACTION ALLEGATIONS

53.     Plaintiffs bring the First and Second Causes of Action, on behalf of themselves and all similarly situated persons – non-exempt factory workers employed by U.S. Nonwovens in New York - who elect to opt-in to this action (the "FLSA Collective") pursuant to 29 U.S.C.

216.[3]

54.     Consistent with the Defendants' policy and practice, the Plaintiffs and the FLSA Collective were not paid overtime promptly as required by the FLSA and the supporting regulations.

55.     Consistent with Defendants' policy and pattern or practice, Plaintiffs and the FLSA Collective were not paid premium overtime compensation for all hours worked beyond 40 per workweek.

56.     All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

57.     As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

> (a)  willfully failing to properly record all hours worked;
>
> (b)  willfully failing to pay overtime earned on the regular pay day for the period in which such workweek ends;
>
> (c)  willfully delaying the payment of overtime for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due;

---

[3] The Plaintiffs reserve the right to propose subclasses or to re-define the class upon motion for class certification, consistent with the Court's discretion to alter or modify the class, or to create subclasses.  See *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007); *Shabazz v. Morgan Funding Corp.*, 269 F.R.D. 245, 249 (S.D.N.Y. 2010).

(d) willfully failing to pay its employees, including Plaintiffs and the FLSA
Collective, premium overtime wages for hours that they worked in excess of
40 hours per workweek; and

(e) Willfully failing to record all of the time that its employees, including
Plaintiffs and the FLSA Collective, have worked for the benefit of
Defendants.

58.    Defendants' unlawful conduct, as described in this Class Action Complaint, is
pursuant to a corporate policy or practice of:

(a) Failing to establish and/or implement procedures to assure the proper
recording of hours worked by members of the collective despite a history of
complaints spanning over 12 years;

(b) Failing to establish and/or implement procedures to assure the proper
recording and payment of overtime;

(c) Failing to establish and/or implement procedures to assure payment of
overtime earned on the regular pay day for the period in which such
workweek ends;

(d) Failing to establish and/or implement procedures to assure prompt payment of
overtime, and instead implementing procedures that resulted in the delay of
payment of overtime for a period longer than reasonably necessary.

59.    Defendants are aware or should have been aware that federal law required them to
properly record all hours worked by the collective;

60.     Defendants are aware or should have been aware that federal law required them to properly pay for all employees performing non-exempt duties an overtime premium for hours worked in excess of 40 per workweek.

61.     Defendants are or should have been aware that federal law required them to promptly pay the collective overtime premiums.

62.     Plaintiffs and the FLSA Collective perform or performed the same primary duties.

63.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

CLASS ACTION ALLEGATIONS

64.     Plaintiffs bring the Third, Fourth, Fifth, Sixth and Seventh Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of all non-exempt workers employed by U.S. Nonwovens in New York for the six year period prior to the filing of this complaint and up to the date of final judgment in this matter (the "Rule 23 Class").[4]

65.     Excluded from the Rule 23 Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

66.     The members of the Rule 23 Class are so numerous that joinder of all members is impracticable.

_____

[4] The Plaintiffs reserve the right to propose subclasses or to re-define the class upon motion for class certification, consistent with the Court's discretion to alter or modify the class, or to create subclasses.  See *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007); *Shabazz v. Morgan Funding Corp.*, 269 F.R.D. 245, 249 (S.D.N.Y. 2010).

67.     Upon information and belief, the size of the Rule 23 Class is at least 250 individuals. Although the precise number of such employees is unknown, the facts on which the calculation of that number depends are presently within the sole control of Defendants.

68.     Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

69.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

    (a)  whether Defendants violated NYLL Articles 6 and 19, and the supporting New York State Department of Labor regulations;

    (b)  whether Defendants correctly compensated Plaintiffs and the Rule 23 Class for hours worked in excess of 40 hours per workweek;

    (c)  whether Defendants failed to timely pay Plaintiffs and the Rule 23 Class wages and overtime premiums as required by Section 191 of the NYLL;

    (d)  whether Defendants failed to provide Plaintiffs and the Rule 23 Class spread-of-hours pay;

    (e)  whether Defendants failed to provide Plaintiffs and the Rule 23 Class with wage notices as required by Section 195.1 of the NYLL;

    (f)  whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiff and the Rule 23 Class, and other records required by the NYLL;

(g) whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

(h) The nature and extent of class-wide injury and the measure of damages for those injuries.

70.     The claims of Plaintiffs are typical of the claims of the Rule 23 Class they seek to represent. Plaintiffs and all of the Rule 23 Class members work, or have worked, for Defendants as factory workers in the State of New York.  Plaintiffs and the Rule 23 Class members enjoy the same statutory rights under the NYLL to be paid for all hours worked, to be paid overtime wages, to be paid in a timely manner, to be paid spread of hours pay, to receive the notice prescribed by NYLL §195, and to be provided with an accurate statement of wages.  Plaintiffs and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL. Plaintiffs and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

71.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Classes. Plaintiffs understand that as class representatives, they assume a fiduciary responsibility to the class to represent its interests fairly and adequately. Plaintiffs recognize that as class representatives, they must represent and consider the interests of the class just as they would represent and consider their own interests. Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interests over the class. Plaintiffs recognize that any resolution of a class action must be in the best interest of the class. Plaintiffs understand that in order to provide adequate representation, they must be informed of developments in litigation, cooperate with class

- 14 -

counsel, and testify at depositions and/or trial. Plaintiffs have retained counsel competent and experienced in complex class actions and employment litigation. There is no conflict between Plaintiffs and the Rule 23 members.

72.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' violations of the NYLL, as well as their common and uniform policies, practices, and procedures. Although the relative damages suffered by individual Rule 23 Class members are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation. The individual Plaintiffs lack the financial resources to conduct a thorough examination of Defendants' timekeeping and compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

73.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

74.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) in that the defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

75.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(1)(B) in that prosecuting separate actions by individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter,

would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

## PLAINTIFFS' FACTUAL ALLEGATIONS

76.     Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiffs individually as follows:

### Efrain Danilo Mendez a/k/a Efrain D. Mendez-Rivera (Mendez)

77.     Plaintiff Mendez was employed as a worker at the Defendants' factory located in Brentwood, New York from on or about May 2012 until November 2012.

78.     At times during his employment with the Defendants Plaintiff Mendez worked a spread of hours in excess of 10.

79.     During his employment with the Defendants, Plaintiff Mendez regular rate was $7.25 per hour.

80.     Defendants did not pay Plaintiff Mendez spread of hours pay as required by 12 NYCRR §§142-2.4 and 142-2.18.

81.     During his employment with the Defendants, Plaintiff Mendez regularly worked in excess of 40 hours per week.

82.     The Defendants regularly failed to pay Mendez for all overtime hours worked.

83.     Upon complaining of the underpayment to his supervisors, the overtime hours would *sometimes* be paid in a later pay period.

### Aldraily Alberto Coiscou (Coiscou)

84.     Plaintiff Coiscou was employed by Defendants from August 2012 until September 2012.

85.     During his employment with the Defendants, Plaintiff Coiscou regularly worked a spread of hours in excess of 10.

86.     At times during his employment with the Defendants, Plaintiff Coiscou worked a spread of hours in excess of 10.

87.     During his employment with the Defendants, Plaintiff Coiscou's regular rate was $7.25 per hour.

88.     Defendants did not pay Plaintiff Coiscou spread of hours pay as required by 12 NYCRR §§142-2.4 and 142-2.18.

<u>Fernando Molina a/k/a Jorge Luis Flores Larios</u>

89.     Plaintiff Fernando Molina a/k/a Jorge Luis Flores Larios (Molina) was employed by Defendants from August 10, 2010 until October 14, 2012.

90.     From August 2010 until January 2011 Plaintiff Molina earned the minimum wage as a forklift operator.   In approximately January 2011 Mr. Molina's regular rate was increased to $9.0 per hour.  In approximately March or April 2011 he was promoted to "Production Supervisor", and his regular rate was increased to $12.00/hour.  In September 2012 my title was changed to Warehouse Manager but he did not receive an increase in salary.

91.     During his employment with the Defendants Plaintiff Molina regularly worked a spread of hours in excess of 10.

92.     Defendants did not pay Plaintiff Molina spread of hours pay as required by 12 NYCRR §§142-2.4 and 142-2.18.

93.     During his employment with the Defendants, Plaintiff Molina regularly worked in excess of 40 hours per week.

94.     Throughout the course of his employment with U.S. Nonwovens there were consistently one or two overtime hours "missing" from Mr. Molina's paycheck.

95.     Mr. Molina would regularly complain about the missing hours to his supervisor. Despite repeated complaints regarding the defendants failure to pay for all overtime hours worked, these conditions continued until the defendant's termination in October 2012.

96.     In December 2011 Plaintiff Molina worked 96 hours during one week. At the end of the week he was only paid for 70 hours.    He continued to complain about not being paid for this overtime until he was fired in October 2012.

97.     The Defendants failed to pay Molina for all overtime hours worked.

<u>Siryi Nayrobik Melendez (Melendez)</u>

98.     Plaintiff Melendez was employed as a worker at the Defendants' factory located in Brentwood, New York from on or about September 4, 2012 to September 18, 2012.

99.     During her first week she worked 50 hours.   She was only paid for 40 hours. During her second week she worked 50 hours.   She was only paid for 30 hours.

100.    Although she complained to her supervisor, she was never paid for these hours.

101.    During her employment with the Defendants Plaintiff Melendez worked a spread of hours in excess of 10.

102.    During her employment with the Defendants, Plaintiff Melendez' hourly rate was $7.25.

103.    Defendants did not pay Plaintiff Melendez spread of hours pay as required by 12 NYCRR §§142-2.4 and 142-2.18.

104.    The Plaintiff Melendez was required by Defendants to move caustic materials that caused a severe rash on her hands and forearms.   Upon handling her four month old baby, the baby suffered a severe allergic reaction.

105.    The Plaintiff Melendez requested protective gloves and was refused.

106.    After two weeks, Plaintiff Melendez resigned.

107.    The Defendants refused to pay the medical costs incurred by Plaintiff Melendez as a result of her child's allergic reaction.

<u>Rene Alberto Oliva (Oliva)</u>

108.    Plaintiff Oliva was employed by the Defendants from on or about August 20, 2012 to November 2012.

109.    During his employment with the Defendants, Plaintiff Oliva regularly worked a spread of hours in excess of 10.

110.    During his employment with the Defendants, Plaintiff Oliva's regular rate was $7.25 per hour.

111.    Defendants did not pay Plaintiff Oliva spread of hours pay as required by 12 NYCRR §§142-2.4 and 142-2.18.

112.    During his employment with the Defendants, Plaintiff Oliva regularly worked in excess of 40 hours per week.

113.    Several times during the course of Mr. Oliva's employment with the plaintiffs there were hours inexplicably missing from his paycheck.

114.    Despite complaints to his supervisor, the missing hours were not paid in the following pay period.

<u>Juan Flores-Larios (Flores-Larios)</u>

115.    The Plaintiff Flores-Larios was employed at the defendant's warehouse as a fork lift operator and material handler from on or about May 7, 2012 through August or September of 2012.

116.    During the course of his employment with U.S. Nonwovens, Plaintiff Flores-Larios' regular rate was $7.25 per hour.

117.    During his employment with the Defendants, Plaintiff Flores-Larios regularly worked a spread of hours exceeding 10.

118.    Defendants did not pay Plaintiff Flores-Larios' spread of hours pay as required by 12 NYCRR §§142-2.4 and 142-2.18.

<u>Ramiro Cordova (Cordova)</u>

119.    Ramiro Cordova was employed for U.S. Nonwovens from May 23, 2001 until January 11, 2013.

120.    From the very beginning of his employment in 2001 until he was fired in 2013, regardless of the method used by U.S. Nonwovens to record working hours, he heard continuous complaints from workers regarding overtime hours missing from their paychecks.

121.    From the very beginning of his employment in 2001 until he was fired in 2013, U.S. Nonwovens employees regularly worked a spread of hours in excess of 10.   Despite the fact that the overwhelming majority of these workers earned the minimum wage, they were not paid the spread of hours premium as required by 12 NYCRR §§142-2.4 and 142-2.18.

122.    In 2008 Mr. Cordova worked 57 ½ hours in one week.   He was only paid for 40 hours.   Despite repeated complaints to his supervisor he was never paid for this overtime.

123.    In  2010 he was again missing three hours from his paycheck.   Despite repeated complaints to his supervisor, this time was also never paid.

<u>Daniel Sante</u>

124.    Mr. Sante has worked for U.S. Nonwovens in various capacities from August 2010 until the present time.

125.    From August 2010 until April 2011 Mr. Sante earned $7.25 per hour.   During that time he regularly worked a spread of hours exceeding 10.   He was not paid the spread of hours premium.

126.    For the entire course of his employment with U.S. Nonwovens, he has heard weekly complaints about overtime hours being missing from checks.

127.    Since the lawsuit, the factory has reduced the spread of hours worked by employees so that the spread of hours does not exceed 10.

FIRST CAUSE OF ACTION

Fair Labor Standards Act — Untimely Payment of Overtime Wages

(Brought on behalf of Plaintiffs and the FLSA Collective)

128.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

129.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. § 201 et seq., and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the FLSA Collective.

130.    Defendants failed to pay Plaintiffs and the FLSA Collective overtime wages to which they are entitled under the FLSA in a timely manner consistent with the FLSA and the supporting regulations, and more specifically 29 C.F.R. § 778.106.

- 21 -

131.    Through their knowing or intentional failure to pay Plaintiff and the members of the FLSA Collective overtime wages in a timely manner, Defendants have willfully violated the Fair Labor Standards Act.

132.    Due to Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover from Defendants liquidated damages for all wages not paid in a timely manner, as provided for by FLSA, 29 U.S.C. § 216, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

SECOND CAUSE OF ACTION

Fair Labor Standards Act - Overtime Wages

(Brought on behalf of Plaintiffs and the FLSA Collective)

133.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

134.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. § 201 et seq., and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the FLSA Collective.

135.    Defendants have failed to pay Plaintiffs and the FLSA Collective overtime wages for all of the hours they worked in excess of 40 hours in a work week.

136.    As a result of Defendants' unlawful acts, Plaintiffs and the FLSA Collective have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

137.    Defendants' unlawful conduct, as described in this Class Action Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices

- 22 -

described in this Class Action Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

138.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

THIRD CAUSE OF ACTION

New York Labor Law Article 19— Unpaid Overtime

(Brought on behalf of Plaintiffs and the members of the Rule 23 Class)

139.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

140.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiffs and the members of the Rule 23 Class.

141.    Defendants have failed to pay Plaintiffs and the members of the Rule 23 Class overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

142.    Through their knowing or intentional failure to pay Plaintiff and the members of the Rule 23 Class overtime wages for hours worked in excess of 40 hours per week, Defendants have willfully violated the NYLL Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

143.    Due to Defendants' violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, as provided for by NYLL Article 6, § 198, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

FOURTH CAUSE OF ACTION

New York Labor Law Article 19— Untimely Payment of Wages

(Brought on behalf of Plaintiffs and the members of the Rule 23 Class)

144.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

145.    The wage provisions of Article 6 of the NYLL, specifically NYLL §191 and its supporting regulations apply to Defendants, and protect Plaintiffs and the members of the Rule 23 Class.

146.    Defendants have repeatedly failed to pay Plaintiffs and the members of the Rule 23 Class overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations in a timely manner consistent with NYLL §191.

147.    Through their knowing or intentional failure to pay Plaintiff and the members of the Rule 23 Class overtime wages in a timely manner, Defendants have willfully violated the NYLL Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

148.    Due to Defendants' violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendants liquidated damages for all wages not paid in a timely manner, as provided for by NYLL Article 6, § 198, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

FIFTH CAUSE OF ACTION

New York Labor Law — Spread of Hours Pay

(Brought on behalf of Plaintiffs and the members of the Rule 23 Class)

149.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

150.     Defendants have willfully failed to pay Plaintiffs and the members of the Rule 23 Class additional compensation of one hour's pay at the minimum hourly wage rate for each day during which the spread of hours exceeded10.

151.     By Defendants' failure to pay Plaintiff and the members of the Rule 23 Class spread of hours pay, Defendants have willfully violated the NYLL Article 19, §§ 650 et seq. and the supporting New York State Department of Labor regulations specifically 12 NYCRR §§142-2.4 and 142-2.18.

152.     Due to Defendants' violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid wages, liquidated damages, as provided for by NYLL Article 6, § 198, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

SIXTH CAUSE OF ACTION

New York Labor Law —Wage Notice Violations

(Brought on behalf of Plaintiffs and the members of the Rule 23 Class)

153.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

154.    The notice provisions of the Wage Theft Prevention Act, Article 6 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiffs and the members of the Rule 23 Class.

155.    Defendants have failed to comply with the notice provisions of the Wage Theft Prevention Act, and more specifically NYLL §195-1.

156.    Due to Defendants' violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendants the sum of $50 per week, up to a total of $2,500 per employee, as provided for by NYLL Article 6, § 198-1-b.

SEVENTH CAUSE OF ACTION

New York State Common Law Breach of Contract[5]

(Brought on behalf of Plaintiffs and the members of the Rule 23 Class)

157.    Plaintiffs reallege and incorporate by reference each allegation contained in the paragraphs above, and by reference replead and incorporate them as though fully set forth here.

158.    Plaintiffs and Defendants had a verbal employment contract.

159.    Specifically, Defendants agreed to pay Plaintiffs a for the first 40 hours worked at the regular rate of pay, and all hours worked in excess of 40 hours per week at the overtime rate.

160.    By failing to pay Plaintiffs for all hours worked at the agreed upon rates,  the Defendants breached their contract of employment with Plaintiffs.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situate persons, respectfully request that this Court grant the following relief:

---

[5] Plaintiffs seek only to the assert this Seventh Cause of Action to the extent that it is not duplicative of relief available to the plaintiffs under the FLSA.

a)     That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all present and former non-exempt factory workers who have been employed by U.S. Nonwovens in the State of New York at any time during the six years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice; Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

b)     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c)     Designation of Plaintiffs as representatives of the Rule 23 Class and counsel of record as Class Counsel;

d)     Issuance of a declaratory judgment that the practices complained of in this Class Action Complaint are unlawful under the FLSA, 29 U.S.C. 201 et seq.;

e)     Issuance of a declaratory judgment that the practices complained of in this Class Action Complaint are unlawful under NYLL Article 6, §§ 190 et seq., NYLL Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations;

f)     Unpaid overtime pay and an amount equal to unpaid overtime as liquidated damages under the FLSA;

g)     Liquidated damages permitted by law pursuant to the FLSA for untimely payment of wages;

h)     Unpaid overtime pay, spread of hours pay and 100% liquidated damages permitted by law pursuant to the NYLL;

- 27 -

       i)      Liquidated damages permitted by law pursuant to the NYLL for untimely

payment of wages;

       j)      Civil damages in the amount of $50 per week per employee for each violation of

the notice provisions of the Wage Theft Prevention Act, up to a total of $2,500.00 per employee.

       k)      An injunction requiring Defendants to pay all statutorily required wages and cease

the  unlawful activity described herein pursuant to the NYLL;

       l)      Reasonable attorneys' fees and costs of the action; and

       m)      Such other relief as this Court shall deem just and proper.

Dated: Glen Cove, New York
       August 28, 2013

              Respectfully Submitted,
              STEVEN J. MOSER, P.C.

              /s/  Steven John Moser
              3 School Street, Suite 207B
              Glen Cove, New York  11542
              (516) 671-1150 ● F (516) 882-5420
              stevenjmoserpc@gmail.com