ls/9376Stipulation.Settlement.wpd
Case 2:12-cv-05583-SIL   Document 28-3   Filed 09/30/13   Page 1 of 17 PageID #: 318
ORIGINAL

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

―――――――――――――――――――――――――X

SAMUEL MEHDIZADEH a/k/a
SOLOMON MEHDIZADEH and
SHERVIN MEHDIZADEH,

                           Plaintiffs,

           -against-

U.S. NONWOVENS CORP., YAHYA
GABAYZADEH, HELEN GABAYZADEH,
SHAHRAM GABAYZADEH,
EGAL GABAYZADEH, DAN GABAYZADEH,
ATLANTIC PAPER & FOIL CORP. and
ATLANTIC PAPER CORP.,

                          Defendants.

           -and-

MARVIN KAGAN (a/k/a Marvin Khaghan),

                        Intervenor.

           -and-

RODY MEHDIZADEH,

       Additional Defendant on the Counterclaims.

―――――――――――――――――――――――――X

**STIPULATION**
**OF SETTLEMENT**

Index No. 017441-02

Justice Assigned:
Hon. Leonard B. Austin

      This Stipulation of Settlement made by and between  SAMUEL MEHDIZADEH

a/k/a SOLOMON  MEHDIZADEH (hereinafter "SAMUEL"), SHERVIN  MEHDIZADEH

(hereinafter "SHERVIN"), U.S. NONWOVENS CORP. (hereinafter "NONWOVENS"), YAHYA

GABAYZADEH (hereinafter "YAHYA"), HELEN GABAYZADEH, (hereinafter "HELEN"),

SHAHRAM GABAYZADEH (hereinafter "SHAHRAM"), EGAL GABAYZADEH (hereinafter

Is/9376Stipulation.Settlement.wpd

"EGAL"), DAN GABAYZADEH (hereinafter "DAN"), ATLANTIC PAPER & FOIL CORP.,

ATLANTIC PAPER CORP., MARVIN KAGAN (a/k/a Marvin Khaghan) (hereinafter "MARVIN"),

and RODY MEHDIZADEH (hereinafter "RODY") ("Stipulation of Settlement"), provides for the

settlement and discontinuance, with prejudice, of the captioned action (hereinafter "Action") in

accordance with the terms and conditions as hereinafter provided.

WHEREAS, each of the parties to this Stipulation of Settlement are aware that (i)

the Appellate Division for the Second Judicial Department has yet to determine the appeal of the

Order on the plaintiffs' and MARVIN's Motion for Summary Judgment, argued on May 10, 2005;

(ii) the Action which is the subject of this Stipulation of Settlement would proceed to trial in the

ordinary course of the judicial process following the completion of discovery and all pre-trial

motions and proceedings, (iii) after the trial, all or one of the parties would probably file and perfect

an appeal, and that such activities would result in substantial additional expense to each of the

parties, (iv) the expense relating to such appeals would be incurred; and

WHEREAS, the parties hereto and each of their respective counsel engaged in

settlement conferences and have agreed to settle the Action without there being any admission or

acknowledgment on the part of any party to this Stipulation of Settlement as to the existence of any

improper or illegal conduct of one towards the other; and

WHEREAS, the parties hereto have carefully considered the terms of this Stipulation

of Settlement and have factored the risk of continued litigation, and the costs associated therewith

in determining whether to enter into this Stipulation of Settlement, and are satisfied that it is in their

best interests to enter into this Stipulation of Settlement; and

WHEREAS, SAMUEL and SHERVIN have commenced this Action requesting specific performance in the First Cause of Action by NONWOVENS of its obligation to deliver one-third (1/3) of the two hundred (200) authorized and issued no par Shares of Stock of NONWOVENS, forty (40) Shares to SAMUEL and twenty-six and two-thirds (26 2/3) Shares to SHERVIN (collectively the "OPTION SHARES") pursuant to the terms and conditions of certain "Employment Agreements" dated as of January 2, 1997, "Shareholder Agreement" dated as of January 2, 1997, "Minutes" dated August 13, 1997, "1997 Incentive Stock Option Plan", "Option Agreement" dated as of the 13th day of August, 1997 (collectively the "DOCUMENTS") and, seeking damages as requested in the Second Cause of Action against YAHYA, HELEN, SHAHRAM, EGAL, DAN, ATLANTIC PAPER & FOIL CORP. and ATLANTIC PAPER CORP., as a consequence of the said defendants' affirmative acts of preventing the proper and timely delivery to SAMUEL and SHERVIN of the required Shares of Stock of NONWOVENS pursuant to the provisions of the DOCUMENTS to which they claim entitlement since the Calendar Year 2002; and

WHEREAS, SAMUEL and SHERVIN allege in the Action that they are entitled to be paid an accumulated bonus pursuant to the provisions of the DOCUMENTS available to them for payment for the purchase of the OPTION SHARES, calculated upon the gross business conducted by NONWOVENS from 1997 to 2002 ("Bonus"); and

WHEREAS, the Bonus achieved by SAMUEL and SHERVIN was in sufficient amounts in each of the calendar years , 1998, 1999, 2000 and 2001 so as to permit each of them to purchase the OPTION SHARES in the respective calendar years less than One Hundred Thousand and 00/100 ($100,000.00) Dollars worth of Shares of Stock of NONWOVENS in each of the

3

respective years so as to have purchased one-third (1/3) of the Shares of Stock of NONWOVENS as provided hereafter in Paragraph "8" of this Stipulation of Settlement; and

WHEREAS, the Intervenor, MARVIN, has been granted leave to intervene as a party in this Action, requesting that the Court direct compliance by all of the parties with the terms and conditions of the DOCUMENTS so as to cause SAMUEL and SHERVIN to acquire the OPTION SHARES of NONWOVENS contracted to be provided to SAMUEL and SHERVIN pursuant to the terms and conditions of the DOCUMENTS; and

WHEREAS, under separate agreement between SAMUEL, SHERVIN and RODY, it was agreed that SAMUEL and SHERVIN after acquiring any number of shares at any given time each would give a portion of their acquired shares to RODY upon RODY becoming a full-time employee of NONWOVENS; and

WHEREAS, discovery in the Action has proceeded and all of the defendants and non-party, STUART STEIN, former counsel to NONWOVENS and the GABAYZADEHS, and the Intervenor, MARVIN KAGAN, having been examined at depositions; and

WHEREAS, it is further anticipated that a Trial of the Action shall be conducted within the immediate future; and

WHEREAS, the sum of Three Hundred Thirty-Three Thousand Three Hundred Thirty-Three and 00/100 ($333,333.00) Dollars was previously paid by NONWOVENS to YAHYA, HELEN, SHAHRAM, EGAL and DAN (collectively the "GABAYZADEH Down Payment"), on account of the purchase of their shares, as provided in Paragraph "15(a)" below; and

WHEREAS, the sum of Three Hundred Thirty-Three Thousand Three Hundred Thirty-Three and 00/100 ($333,333.00) Dollars has heretofore been distributed to KAGAN and a

like sum was conditionally paid by NONWOVENS to SAMUEL and SHERVIN ( "S&S Escrow").

The S&S Escrow plus accrued interest has been placed in Escrow under the joint control of (i)

Dollinger, Gonski & Grossman; (ii) Steven Cohn, P.C.; and (iii) Rosenberg, Calica & Birney, LLP

(collectively the "Escrow Agents"), subject to the direction of the parties to the Action or the Court

having jurisdiction over the Action; and

WHEREAS, the parties to this Stipulation of Settlement have each evaluated the

respective positions in which they each find themselves and have determined to settle the Action,

as well as to alter, to the extent hereinafter provided, the ownership of Shares of Stock of

NONWOVENS, the identity of the elected Officers and Directors, as well as to make provision for

the future and continued business activities of NONWOVENS as an active manufacturing

corporation and the modification of the Restrictive Covenant provision of the Shareholders

Agreement.

NOW, THEREFORE, for good and valuable consideration, the sufficiency of which

is agreed to exist by and between the parties hereto, it is hereby stipulated and agreed, by and

between the parties hereto as follows:

1.     The parties to this Stipulation of Settlement agree that all of the

DOCUMENTS were duly executed on the same day, to wit: August 13, 1997, and that all of said

DOCUMENTS are enforceable in accordance with all of the terms and conditions provided for

therein.

2.     The parties acknowledge that by document entitled "Shareholders Agreement"

dated as of the 2nd day of January, 1997, each of YAHYA, HELEN, SHAHRAM, EGAL, DAN,

MARVIN and David Kagan, a non-party to this Stipulation of Settlement, evidenced the terms and

5

conditions under which each of the Shareholders would own their respective interest in NONWOVENS, as well as the rights and obligations afforded to each of said parties ("Shareholders Agreement").

        3.      The Shareholders Agreement at Paragraph "4" therein established that each of YAHYA, HELEN, SHAHRAM, EGAL and DAN constituted one Group known collectively as the "GABAYZADEH Shareholders."

        4.      The Shareholders Agreement at Paragraph "4" therein further established that each of MARVIN and David Kagan (no longer a Shareholder of NONWOVENS having assigned his shares to MARVIN) constituted one Group known as the "KAGAN Shareholders."

        5.      Pursuant to the further provisions of the Shareholders Agreement, the parties thereto further agreed in Paragraph designated "4" that:

> If Samuel Mehdizadeh and Shervin Mehdizadeh acquire shares of the Company under any Incentive Stock Option Plan that may be adopted by the Company, they shall be one Group.

        6.      The parties to this Stipulation of Settlement acknowledge their awareness that all of the authorized and issued Shares of Stock of NONWOVENS were originally equally distributed, one-half (1/2) (100 Shares of Stock) to the GABAYZADEH Shareholders and the other one-half (1/2) (100 Shares of Stock) to the KAGAN Shareholders.

        7.      It is acknowledged that pursuant to the provisions of the DOCUMENTS that SAMUEL and SHERVIN are the owners collectively of the OPTION SHARES, being one-third (1/3) of the authorized and issued Shares of Stock of NONWOVENS nunc pro tunc as of the dates referred to in Paragraph "8" hereof.

8.      In order to memorialize the ownership of the OPTION SHARES by SAMUEL and SHERVIN, within five (5) business days of the Entry of this "So Ordered" signed Stipulation of Settlement (the "Effective Date"), an Amendment to the Certificate of Incorporation of U.S. NONWOVENS CORP. shall be signed by all of the shareholders of NONWOVENS, retroactive to January 1, 2001 so as to increase the authorized and issued Shares of Stock of NONWOVENS as of January 1, 2001 from two hundred (200) Shares of no par value common stock to three hundred (300) Shares and that simultaneously therewith, the additional issued one hundred (100) Shares of no par value common stock of the then to be authorized three (300) Shares shall be delivered sixty (60) Shares to SAMUEL and forty (40) Shares to SHERVIN nunc pro tunc as follows:

(a)     as of January 1, 2001:        40 Shares to SAMUEL
                                       26.666 Shares to SHERVIN

(b)     As of January 1, 2002:        20 Shares to SAMUEL
                                       13.34 Shares to SHERVIN

9.      If the IRS determines that SAMUEL and/or SHERVIN owed taxes for any year from 2001 to December 31, 2004, relating to the transfer of the OPTION SHARES referred to in Paragraph "8" hereof, the GABAYZADEH Shareholders and MARVIN agree in such event that if either or both of them receive any refunds from the IRS for the referenced years relating to the OPTION SHARES, that up to the amount of any taxes determined by the IRS to be owed by SAMUEL and/or SHERVIN referable to the years 2001 through 2004 relating to the OPTION SHARES, such refunds issued to the GABAYZADEH Shareholders and/or KAGAN Shareholders shall be paid to SAMUEL and SHERVIN.  No obligation is imposed hereby on any of the parties hereto to file any amended individual or NONWOVENS tax returns.  Any such refund shall be held in an interest-bearing escrow account to be established by counsel for the parties until the statute of

7

limitations for the applicable tax years giving rise to such refunds shall have expired, following which the refunds shall be paid over to SAMUEL and/or SHERVIN.

10.   The GABAYZADEH Shareholders and MARVIN acknowledge that SAMUEL and SHERVIN had duly attempted to purchase portions of the OPTION SHARES in each year from 1999 through 2002 in annual amounts less than $100,000.00 per year.

11.   The GABAYZADEH Shareholders, MARVIN, SAMUEL and SHERVIN shall execute such documents required so as to evidence the admission of SAMUEL and SHERVIN as owners of the OPTION SHARES on all required Internal Revenue Service Subchapter "S" documents relating to NONWOVENS nunc pro tunc to the respective dates established in Paragraph "8" hereof.

12.   Simultaneous with the "Closing" as hereafter established to occur, the Escrow Agents shall pay the S&S Escrow plus interest accrued thereon, if any, to SAMUEL and SHERVIN.

13.   Simultaneous with the delivery of the OPTION SHARES required to be delivered to SAMUEL and SHERVIN pursuant to Paragraph "8" hereof, YAHYA, HELEN, SHAHRAM, EGAL and DAN shall sell to NONWOVENS all of the remaining one hundred (100) Shares of Stock of NONWOVENS owned by them (collectively the GABAYZADEH SHARES") for the sum of Three Million Nine Hundred Fifty Thousand and 00/100 ($3,950,000.00) Dollars ("Purchase Price") with payment being made as provided in Paragraph "15" hereof.

14.   NONWOVENS does hereby irrevocably agree to purchase the GABAYZADEH SHARES simultaneously with the "Closing."

8

15.     Payment of the Purchase Price by NONWOVENS to YAHYA, HELEN, SHAHRAM, EGAL and DAN for the purchase of the GABAYZADEH SHARES by NONWOVENS shall be as follows:

(a)     The GABAYZADEH Down Payment in the amount of Three Hundred Thirty-Three Thousand Three Hundred Thirty-Three and 00/100 ($333,333.00) Dollars has previously been paid on account of the Purchase Price.

(b)     One Million Seven Hundred Sixteen Thousand Six Hundred Sixty-Seven and 00/100 ($1,716,667.00) Dollars on the date of the closing.

(c)     Two Hundred Fifty Thousand ($250,000.00) Dollars without interest on the anniversary of the eighth (8th) month after the Closing.

(d)     The balance of the Purchase Price in the amount of One Million Six Hundred Fifty Thousand ($1,650,000.00) Dollars shall be payable with interest calculated at the rate of 4.01% percent per annum computed from the date of Closing and payable in fifty-four (54) equal monthly payments commencing one (1) month subsequent to the Closing and a like sum on the same date of each month thereafter for fifty-three (53) additional months with each payment in the amount of Thirty-Three Thousand Four Hundred Forty-Six and 19/100 ($33,446.19) Dollars including interest.

(e)     SAMUEL, SHERVIN, MARVIN and RODY, if he becomes a Shareholder, do hereby agree and shall guaranty to YAHYA, HELEN, SHAHRAM, EGAL and DAN the timely payment by NONWOVENS of the first twenty-seven (27) monthly installments of principal and interest required to be paid pursuant to Paragraph "15(d)" as stated above.

(f)     As collateral security for the payment of the sums due pursuant to Paragraph "15(d)" above to the GABAYZADEH Shareholders, NONWOVENS shall provide a subordinate mortgage upon the premises 100 Emjay Boulevard, Brentwood, New York 11717. NONWOVENS shall have the right to refinance the existing mortgage and to increase the total mortgage debt amount up to the amount of $1,400,000.00, provided all payments to the GABAYZADEH Shareholders are then current. The GABAYZADEH Shareholders, as mortgagees, shall execute such further subordination documents as may be required by the title company or new lender evidencing the continued subordination of the mortgage to be provided by NONWOVENS to the GABAYZADEH Shareholders.

16.     Simultaneous with the refinance of the mortgage which is a lien against the premises, 100 Emjay Boulevard, NONWOVENS shall pay to the GABAYZADEH GROUP the sum of One Hundred Thirty-Two Thousand and 00/100 ($132,000.00) Dollars, a sum equal to and in satisfaction of the Loan Account balance due to the GABAYZADEH GROUP from NONWOVENS. Interest shall continue to be paid monthly on said obligation as heretofore paid until payment of the principal is completed.  The Loan Account is to be paid in addition to the Purchase Price no later than June 3, 2006.

17.     (a)     It is further agreed by each of the signatories to this Stipulation of Settlement that the "Restrictive Covenant" provisions of the Shareholders Agreement shall remain fully enforceable against the GABAYZADEH Shareholders, ATLANTIC PAPER & FOIL CORP. and ATLANTIC PAPER CORP., as well as any and all corporate entities in which the GABAYZADEH Shareholders have any direct or indirect interest or control for a period of seven (7) years from the date of the execution of this Stipulation of Settlement.  In addition to all the

10

nonwoven manufactured products identified in the Shareholders Agreement, the "Restrictive Covenant" shall additionally include scented air fresheners, detergents, fabric softener, steel wool soap pads, and Swiffer Flicker-type products. At the end of the seventh (7th) year, the "Restrictive Covenant" and Covenant restricting the GABAYZADEH Shareholders shall no longer be in effect and shall be null and void.

(b)     It is further agreed by each of the signatories to this Stipulation of Settlement that SAMUEL, SHERVIN, NONWOVENS, MARVIN and/or RODY as well as any and all corporate entities in which the foregoing parties have any direct or indirect interest or control shall not compete with the GABAYZADEHS, ATLANTIC PAPER & FOIL CORP. and ATLANTIC PAPER CORP. and sell, manufacture or otherwise deal in the products currently manufactured and/or sold by the foregoing two (2) corporations, which products are aluminum foil, plastic food wrap, all paper and tissue products including, but not limited to, through-air-dried paper ("TAD"), tissue, paper toweling, toilet paper products and foam and/or plastic food containers and foam and/or plastic packaging as of the date hereof. The non-compete provisions shall exist for a period of seven (7) years from the date of the execution of this Stipulation of Settlement. At the end of the seventh (7th) year, the "Restrictive Covenant" provided in this Paragraph 17(b) shall no longer be in effect.

18.     The selling GABAYZADEH Shareholders shall represent at the time of delivery of the Shares of Stock being purchased by NONWOVENS that they have not pledged, hypothecated, or otherwise encumbered any of the GABAYZADEH SHARES being sold pursuant to the provisions of this Stipulation of Settlement and that said Shares of Stock shall be delivered to NONWOVENS free of any lien or encumbrance.

11

19.     Simultaneous with the Closing on the sale of the GABAYZADEH SHARES, the GABAYZADEH Shareholders shall resign as Officers and Directors of NONWOVENS, surrendering any and all rights and control in and to the business activities and assets of NONWOVENS.

20.     At the Closing on the purchase of the GABAYZADEH SHARES by NONWOVENS (i) MARVIN, SAMUEL and SHERVIN shall deliver General Releases to YAHYA, HELEN, SHAHRAM, EGAL, DAN, ATLANTIC PAPER & FOIL CORP. and ATLANTIC PAPER CORP. and (ii) YAHYA, HELEN, SHAHRAM, EGAL, DAN, ATLANTIC PAPER & FOIL CORP. and ATLANTIC PAPER CORP. shall execute General Releases in favor of NONWOVENS, MARVIN, SAMUEL, SHERVIN and RODY.

21.     The terms and conditions of this Stipulation of Settlement shall remain confidential in all respects.  No party to this Stipulation of Settlement either directly or indirectly shall be permitted to divulge any of the contents of this Stipulation to any party for any purpose unless required to do so as a matter of law.  No comment of any kind relating to the terms of this Stipulation can be expressed to any party other than to state the fact that "I am pleased to say that all of the litigation involving U.S. NONWOVENS CORP. and its Officers, Directors and Shareholders has been resolved."  Any violation of the provisions of the confidentiality provision may be further prohibited by the issuance of an appropriate injunction.

22.     Each of the parties to this Stipulation of Settlement agree to promptly execute and deliver any and all other or further documents or take the steps necessary or appropriate to implement or to effectuate the terms of this Stipulation of Settlement and to discontinue and/or

12

withdraw any and all claims, counterclaims, defenses, allegations and/or complaints relating to the subject matter as alleged in the Action or otherwise.

23.     Each of the parties declare that in executing this Stipulation of Settlement they, and each of them, have not relied on any promises, statements or representations made to any of them by any other person or entity except any representations contained herein, and that each of them are doing so of their own free will and with knowledge of the facts and upon the advice of counsel of their own selection.

24.     This Stipulation of Settlement may be executed in one or more counterparts and/or by facsimile, each of which shall be for all purposes deemed to be an original and all of which shall constitute one and the same agreement and shall become effective when all parties have signed, and the counterparts are delivered to the attorneys for the parties as set forth in this Stipulation of Settlement.

25.     This Stipulation of Settlement shall be binding upon and inure to the benefit of, and shall be enforceable by, the heirs, representatives, successors and assigns of the parties to this Stipulation of Settlement.

26.     This Stipulation of Settlement shall be construed in accordance with the internal laws of the State of New York.

27.     This Stipulation of Settlement sets forth the entire agreement and understanding between the parties hereto and may not be amended, modified, altered or waived, except in writing, signed by the party, or their duly appointed agent, against whom such amendment, modification, alteration or waiver is to be enforced.

13

28.     On the date of delivery of the OPTION SHARES to SAMUEL and SHERVIN and the GABAYZADEH Shares to NONWOVENS, counsel for the respective parties in this Action shall execute a Stipulation of Discontinuance of the Action with prejudice and without costs or attorney fees for filing with the Nassau County Clerk in the form annexed hereto.

29.     This Stipulation of Settlement and all of the documents required to be executed by the respective parties pursuant to this Stipulation of Settlement collectively evidence the entire agreement between and amongst the parties hereto and may only be modified in writing signed by the parties or their duly appointed agents.

30.     Each of the parties, by and through their respective counsel, acknowledges that they have read all of the terms of this Stipulation of Settlement and entered into those terms voluntarily and without duress and further agree that except as modified herein, all documents previously executed by and between the parties shall remain in full force and effect.

31.     The parties consent to this Stipulation of Settlement being executed in counterparts and by facsimile, all of which when taken together will constitute a completed Stipulation of Settlement.

32.     The Supreme Court of the State of New York, County of Nassau, shall retain jurisdiction to determine any claims arising under the specific provisions of this Stipulation of Settlement.

33.     In the event any action or proceeding is brought to enforce this Stipulation of Settlement, the prevailing party or parties shall be entitled to recover their reasonable attorneys' fees and costs against the defaulting party or parties.

34.     The balance of the Purchase Price due to the GABAYZADEH Shareholders for the purchase of their shares shall immediately become due and payable upon any sale of the assets of NONWOVENS or the sale of any of its shares, other than a sale to an immediate family member or a sale or transfer of shares by operation of law.

Dated: Carle Place, New York
        October 3, 2005

_____
SAMUEL MEHDIZADEH a/k/a/
SOLOMON MEHDIZADEH

_____
SHERVIN MEHDIZADEH


U.S. NONWOVENS CORP.

By: _____
MARVIN KAGAN, President

_____
YAHYA GABAYZADEH

_____
HELEN GABAYZADEH

_____
SHAHRAM GABAYZADEH

_____
EGAL GABAYZADEH

_____
DAN GABAYZADEH

ATLANTIC PAPER & FOIL CORP.

By: _____
YAHYA GABAYZADEH, President

15

ATLANTIC PAPER CORP.

By: _____
YAHYA GABAYZADEH, President

_____
MARVIN KAGAN (a/k/a Marvin Khaghan)

_____
RODY MEHDIZADEH


DOLLINGER, GONSKI & GROSSMAN
Attorneys for SAMUEL MEHDIZADEH a/k/a
SOLOMON MEHDIZADEH and SHERVIN
MEHDIZADEH

By: _____
MATTHEW DOLLINGER, ESQ.
One Old Country Road, Suite 102
P.O. Box 9010
Carle Place, New York 11514
(516) 747-1010


STEVEN COHN, P.C.
Attorney for Defendants, U.S. NONWOVENS
CORP., YAHYA GABAYZADEH, HELEN
GABAYZADEH, SHAHRAM
GABAYZADEH, EGAL GABAYZADEH,
DAN GABAYZADEH, ATLANTIC PAPER
& FOIL CORP. and ATLANTIC PAPER
CORP.,

By: _____
STEVEN COHN, ESQ.
One Old Country Road
Carle Place, New York 11514
(516) 294-6410


16

ROSENBERG, CALICA & BIRNEY, LLP
  Attorneys for Intervenor, MARVIN KAGAN
a/k/a MARVIN KHAGHAN

By:                               

ROBERT M. CALICA, ESQ.
100 Garden City Plaza
Garden City, New York 11530
(516) 747-7400



DANIEL J. BROWNSTEIN, Esq.
Co-Counsel for Intervenor, MARVIN KAGAN
 a/k/a MARVIN KHAGHAN
98 Cutter Mill Road
Great Neck, New York 11021
(516) 466-1100


So Ordered this _11th_ day of October, 2005

HON. LEONARD B. AUSTIN

ENTERED

OCT 1 4 2005

NASSAU COUNTY
COUNTY CLERK'S OFFICE

17