**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
EFRAIN DANILO MENDEZ a/k/a EFRAIN D.
MENDEZ-RIVERA, ALDRAILY ALBERTO
COISCOU, FERNANDO MELINA a/k/a JORGE     **MEMORANDUM OF**
LUIS FLORES LARIOS, SIRYI NAYROBIK         **DECISION AND ORDER**
MELENDEZ and RENE ALEXANDER OLIVIA,    12-CV-5583 (ADS) (WDW)
individually and on behalf of all other similarly situated,

                Plaintiffs,

      v.

U.S. NONWOVENS CORP., SAMUEL MEHDIZADEH
a/k/a SOLOMON MEHDIZADEH, SHERVIN
MEHDIZADEH, and RODY MEHDIZADEH,

                Defendants.
------------------------------------------------------------X

<u>**APPEARANCES:**</u>

**Steven John Moser, Esq.**
*Attorney for the Plaintiffs*
3 School Street, Suite 207B
Glen Cove, NY 11542

**Cozen O'Connor**
*Attorneys for the Defendants*
277 Park Avenue
New York, NY 10172
    By:   Michael Craig Schmidt, Esq., of Counsel

**SPATT, District Judge.**

On November 13, 2012, the Plaintiffs Efrain Danilo Mendez a/k/a Efrain D.

Mendez-Rivera ("Mendez"); Aldraily Alberto Coiscou ("Coiscou"); Fernando Molina

a/k/a Jorge Luis Flores Larios ("Molina"); Siryi Nayrobik Melendez ("Melendez"); and

Rene Alexander Oliva ("Oliva," and collectively, the "Original Plaintiffs") commenced

this action by filing a Complaint (the "Original Complaint") against the Defendants U.S.

Nonwovens Corp. ("U.S. Nonwovens"); Samuel Mehdizadeh a/k/a Solomon Mehdizadeh

("Samuel"); Shervin Mehdizadeh ("Shervin") and Rody Mehdizadeh ("Rody," and collectively the "Defendants).

In their Original Complaint, the Original Plaintiffs asserted the following causes of action: (1) a collective action claim pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA"), and specifically 29 U.S.C. § 216(b), alleging that the Defendants failed to pay the Original Plaintiffs overtime compensation for the hours they worked in excess of a forty hour work week; (2) a class action claim pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23 and New York Labor Law ("NYLL") Article 19 alleging that the Defendants failed to pay the Original Plaintiffs and putative class members overtime compensation for the hours they worked in excess of a forty hour work week; (3) a class action claim pursuant to Fed. R. Civ. P. 23 and NYLL Article 19 alleging that the Defendants failed to pay the Original Plaintiffs and putative class members overtime compensation in a timely manner; (4) a class action claim pursuant to Fed. R. Civ. P. 23 and NYLL Article 19 alleging that the Defendants failed to pay the Original Plaintiffs and putative class members additional compensation of one hour's pay at the minimum hourly wage rate for each day during which the spread of hours exceeded ten hours; and (5) a class action claim pursuant to Fed. R. Civ. P. 23 and the NYLL alleging that the Defendants failed to comply with the notice provisions of the Wage Theft Prevention Act ("WTPA"), Article 6 of the NYLL, and more specifically NYLL § 195-1.

Presently before the Court is a motion by the Original Plaintiffs, together with Juan Flores-Larios ("Flores-Larios"); Ramiro Cordova ("Cordova") and Daniel Sante ("Sante," and collectively with the Original Plaintiffs, the "Plaintiffs") to amend the

Original Complaint under Fed. R. Civ. P. 15(a). In this regard, the Plaintiff seeks to (1) add Flores-Larios; Cordova and Sante as named Plaintiffs and class representatives; (2) insert a first cause of action asserting a collective action claim pursuant to FLSA 29 U.S.C. 201 et seq., and 29 C.F.R. § 778.106, alleging that the Defendants failed to pay the Plaintiffs overtime compensation in a timely manner; (3) renumber the first through fifth causes of action as the second through sixth causes of action; (4) add a Fed. R. Civ. P. 23 class action claim for New York State common law breach of contract, alleging that the Defendants failed to play the Plaintiffs and the putative class members promised wages; and (5) supplement the "Nature of the Action" and "Summary of Causes of Action" portions of the Original Complaint accordingly. The Plaintiffs included with their motion a Proposed First Amended Complaint (the "Amended Complaint"). In addition, with their reply papers, the Plaintiffs have submitted a Revised Proposed First Amended Complaint (the "Revised Amended Complaint") in order to accommodate concerns raised by the Defendants in their opposition to the Plaintiffs motion to amend.

The Court pauses here to note that the Plaintiffs' Amended Complaint, Revised Amended Complaint, motion papers and reply use footnotes, which is contrary to this Court's Individual Rule II.A. Notwithstanding this infraction, the Court will consider the Plaintiffs' papers in rendering its decision. However, the Court advises the Plaintiffs' counsel that any future filings that contain footnotes will not be considered by this Court.

For the reasons that follow, the Court grants the Plaintiffs' motion.

# I. BACKGROUND

The following facts are derived from the Original Complaint, the Amended Complaint and the Revised Amended Complaint and are construed in the light most favorable to the Plaintiffs.

The Defendant U.S. Nonwovens, a domestic business corporation that is organized and existing under New York State law, manufacturers a wide variety of products, such as household cleaning products; disposable cleaning wipes for personal hygiene and other cleaning uses; other non-woven products; and laundry cleaning and care products. U.S. Nonwovens clients include Wal-Mart, K-Mart, Sears, CVS and Walgreens. In addition to operating three factories located in Brentwood, New York, U.S. Nonwovens also maintains a warehouse and distribution center located in Hauppauge, New York. U.S. Nonwovens is considered a covered employer within the meaning of the FLSA and NYLL and has a gross volume of sales made or business done that is not less than $500,000 per year.

The individual Defendants Samuel, Shervin and Rody Mehdizadeh (collectively, the "Individual Defendants") are shareholders in U.S. Nonwovens and together own one hundred percent of the outstanding shares of stock of U.S. Nonwovens. Shervin and Rody are brothers, while Samuel is their father. According to the Revised Amended Complaint, the Individual Defendants obtained a controlling interest in U.S. Nonwovens in 2005.

Prior to becoming a shareholder in U.S. Nonwovens in October of 2005, on January 2, 1997, Samuel was hired by U.S. Nonwovens to serve as the General Manager. In that role, he was responsible for the U.S. Nonwovens day-to-day operations. Since

then, Samuel has served as the U.S. Nonwovens General Manager, President, Chairman and Chief Executive Officer. Although the Original Complaint identifies Samuel as the President of U.S. Nonwovens, the Revised Amended Complaint does not state what his current role is in the company beyond asserting that he is a shareholder.

Also on January 2, 1997, U.S. Nonwovens hired Shervin as Assistant Manager. Shervin has served U.S. Nonwovens in various capacities and is currently the company's Chief Executive Officer. In addition, Rody is the Chief Operating Officer of U.S. Nonwovens. The Revised Amended Complaint does not contain any factual allegations as to when Rody began his involvement with U.S. Nonwovens.

According to the Plaintiffs, the Individual Defendants are actively involved in managing U.S. Nonwovens day-to-day operations. Of relevance here, the Plaintiffs claim that the Individual Defendants have power over payroll decisions, including the power to retain time and/or wage records, as well as the power to stop any illegal practices in violation of the FLSA and/or the NYLL. The Individual Defendants also allegedly have power over personnel decisions, including the power to hire and fire employees, set wages and otherwise control the terms and conditions of an employee's employment.

The Plaintiffs who bring this action are all residents of Suffolk County, New York, and are current or former factory workers that were employed by U.S. Nonwovens. The Revised Amended Complaint describes them as "part of an immigrant workforce." (Rev. Amend. Compl., ¶ 3.) In this regard, according to the Revised Amended Complaint, Mendez was employed by the Defendants from May of 2012 to November of 2012; Coiscou was employed by the Defendants from August 20, 2012 to September 25, 2012; Molina was employed by the Defendants from August 13, 2010 to October 11, 2012;

Melendez was employed by the Defendants from September 4, 2012 to September 18, 2012; and Oliva was employed by the Defendants from August 20, 2012 to November of 2012. The Revised Amended Complaint also adds the Plaintiffs Flores-Larios, who was employed by the Defendants from May 7, 2012 to August or September of 2012; Cordova, who was employed by the Defendants from May 23, 2001 to January 11, 2013; and Sante, who was employed by the defendants from August of 2010 to at least the time that the Revised Amended Complaint was filed.

On behalf of themselves and other factory workers employed by U.S. Nonwovens in the State of New York, the Plaintiffs allege that they were not paid premium overtime compensation for all the hours they worked beyond the standard forty hour work week. According to the Plaintiffs, the Defendants "intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy" that involved (1)"willfully failing to properly record all hours worked"; (2) "willfully failing to pay overtime earned on the regular pay day for the period in which such workweek ends"; (3) willfully delaying the payment of overtime for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due"; (4) "willfully failing to pay its employees . . . premium overtime wages for hours that they worked in excess of 40 hours per workweek"; (5) "[w]illfully failing to record all of the time that its employees . . . have worked for the benefit of the Defendants"; (6) [f]ailing to establish and/or implement procedures to assure the proper recording of hours worked . . . despite a history of complaints spanning over 12 years"; (7) "[f]ailing to establish and/or implement procedures to assure the proper recording and payment of overtime"; (8) "[f]ailing to establish and/or implement procedures to assure payment of overtime

earned on the regular pay day for the period in which such workweek ends"; and (9) "[f]ailing to establish and/or implement procedures to assure prompt payment of overtime, and instead implementing procedures that resulted in the delay of payment of overtime for a period longer than reasonably necessary." (Rev. Amend. Compl., ¶ 57.)

The Revised Amended Complaint contains specific factual allegations with respect to each of the Plaintiffs. First, concerning Mendez, the Plaintiffs allege that he was employed as a "pallet loader" at the Defendants' Brentwood factory and earned a regular rate of $7.25 per hour, which is the minimum wage. During the course of his approximately six-month employment with the Defendants in 2012, Mendez, with rare exception, worked shift hours from 4:30 p.m. to 3:00 a.m. the following morning, with a half-hour break for lunch. Generally, Mendez worked five days per week, Monday through Friday, for a total of fifty hours per week. However, occasionally he worked a sixth day during the week, in which case his total hours per week was sixty.

Although Mendez daily worked a "spread of hours" in excess of ten hours during his employment with the Defendants, he allegedly did not receive a spread of hours pay. In addition, apparently, "[i]ntermittently throughout his employment," his paycheck did not include overtime hours to which he was entitled. (Rev. Amend. Compl., ¶ 83.) After complaining about the supposed underpayment of overtime wages to his supervisors, Mendez would receive payment for the overtime hours approximately one month after he earned them.

Mendez claims that he cannot precisely remember the amount of overtime wages that the Defendants delayed paying him, but he estimates that during the course of his employment, wages for five to ten overtime hours were delayed. Further, Mendez alleges

that he was not paid for three overtime hours during the course of his employment with the Defendants, even though he made complaints to his supervisor. Nevertheless, Mendez does not know with precision the total amount of overtime wages that allegedly remain unpaid. However, the Plaintiffs allege that the Defendants know the precise amount of overtime wages that were paid to Mendez on a delayed basis, as well as the length of the delays. The Defendants also apparently know the amount of overtime wages that are owed by the Defendants to Mendez. According to the Plaintiffs, the amount of overtime wages owed to Mendez can be calculated by examining the Defendants' shift records, payroll records and computerized timekeeping records. In addition, the Defendants allegedly failed to provide Mendez with a wage notice in compliance with NYLL § 195.

As to the Plaintiff Coiscou, he was employed by the Defendants for a period of about one month in the late summer of 2012 at the regular rate of $7.25 per hour, which is the minimum wage. He started his employment with the Defendants as a machine operator, before being assigned to moving boxes of pallets, wrapping the pallets and moving the pallets to another area. During the first two weeks of his employment, Coiscou worked at least four days a week, from 4:30 p.m. to 3:00 a.m. the following morning. During the last two weeks of his employment, Coiscou worked at least four days a week, from 4:30 p.m. to 5:00 a.m. the next morning. As such, Coiscou worked a spread of hours in excess of ten hours. However, the Defendants allegedly did not pay Coiscou spread of hours pay. The Defendants also apparently never provided Coiscou with a wage notice, as required by NYLL § 195.

With respect to the Plaintiff Molina, he was employed by the Defendants for nearly two years. From August of 2010, when he started with the Defendants, until January of 2011, Molina was a forklift operator and was paid the regular rate of $7.25 per hour, which is the minimum wage. In January of 2011, Molina's salary rose to $9 per hour. Three or four months later, in either March or April of 2011, Molina was promoted to "Production Supervisor," and his salary increased again, this time to $12 per hour. Thereafter, in September of 2012, Molina's title was changed to "Warehouse Manager." However, the change in job title was not accompanied by an additional raise.

Molina does not provide details with respect to the hours he typically worked, but claims that he "consistently worked a spread of hours in excess of 10," for which the Defendants never paid him. (Rev. Amend. Compl., ¶ 99.) He also claims that he "consistently worked in excess of 40 hours per week" and that "[t]hroughout the entire course of his employment with U.S. Nonwovens there were consistently one or two overtime hours 'missing' from [ ] [his] paycheck." (Rev. Amend. Compl., ¶ 102.) Molina asserts that although he regularly complained about the missing overtime wages to his supervisor, the Defendants continued to fail to pay him for all the overtime hours he worked until his employment with the Defendants was terminated in October of 2012.

In this regard, Molina alleges that on one occasion, in December of 2011, he worked ninety-six hours during one week, but was only paid for seventy hours. He complained about not being paid for these twenty-six overtime hours until October of 2012, when his employment with the Defendants was terminated. At the time of the filing of the Revised Amended Complaint, Molina had still not been paid for the twenty-six overtime hours he allegedly worked in December of 2011.

Except for the December of 2011 incident, Molina provides no additional details with respect to other occasions when he was not paid overtime wages to which he was entitled. However, while Molina cannot precisely remember the total amount of overtime wages that remain unpaid, the Plaintiffs allege that the Defendants know the amount and that it can be determined by examining the Defendants' shift records, payroll records and computerized timekeeping records. Molina also claims that the Defendants never provided him with a wage notice in accordance with the NYLL § 195 requirements.

Concerning the Plaintiff Melendez, she was only employed by the Defendants for a period of two weeks in September of 2012. Her employment ended when she decided to resign on or about September 18, 2012.

During her two weeks of employment with the Defendants, Melendez worked at the Defendants' Brentwood factory and packed into boxes containers of "wipes" that were coming off the production line. She received a regular rate of $7.25, which was minimum wage, and worked a scheduled shift of 4:30 p.m. to 3:00 a.m. the next morning. Thus, every day she worked for the Defendants, Melendez worked a spread of hours of more than ten, but she allegedly never received spread of hours pay from the Defendants.

Further, during her first week of employment, she worked for five days for a total of approximately fifty hours, but was allegedly only paid for forty hours. Similarly, during her second week of employment, she again worked five days for a total of approximately fifty hours, but was allegedly only paid for thirty hours. According to the Plaintiffs, despite Melendez's complaints to her supervisor, she was never paid for the thirty missing hours, ten of which were regular, or "straight," hours and twenty of which

were overtime hours.  Melendez also purportedly never received a wage notice from the Defendants, as required by NYLL § 195.

As to the Plaintiff Oliva, he was employed by the Defendants for a two to three month period in the late summer and fall of 2012.  His salary was a regular rate of $7.25 per hour, which was minimum wage.

During his first two weeks of employment with the Defendants, Oliva worked a scheduled shift of 4:00 p.m. until 5:00 a.m. the next morning, for a spread of hours of approximately thirteen hours.  For the rest of his employment, his scheduled shift was from 4:00 p.m. until 3:30 a.m. the following morning, for a spread of hours of approximately 11.5.  The Plaintiffs claim that the Defendants never paid Oliva spread of hours pay.

Further, according to the Plaintiffs, Oliva regularly worked in excess of forty hours per week while employed by the Defendants, but that on several occasions, overtime wages were inexplicably missing from his paycheck.  Apparently, Oliva complained to the night manager, Mike Ortiz ("Ortiz"), who provided no explanation for the omission and simply said that the missing overtime wages would be included in his next paycheck.  Nevertheless, the Plaintiffs allege that when Oliva received his next paycheck, wages for overtime hours were still missing.  When Oliva again brought the issue to Ortiz's attention, Ortiz simply repeated that the overtime wages would be included in the next paycheck.  As such, the Plaintiffs claim that Oliva's overtime payments were delayed for up to one month.

However, the Plaintiffs do not provide any additional specifics with regard to Oliva's overtime wages, and Oliva is unable to recall with precision the amount of

overtime that was delayed, except that he estimates the Defendants delayed paying him wages for about five to ten hours of overtime during the course of his employment. Also, the Plaintiffs allege that Oliva was not paid wages for two hours of overtime he works while employed by the Defendants. Nevertheless, the Plaintiffs claim that the Defendants know the amount of overtime wages that Oliva was paid on a delayed basis, as well as the amount of overtime wages that are owed to Oliva, which can be determined by examining the Defendants' shift records, payroll records and computerized timekeeping records. Lastly, the Plaintiff assert that the Defendants failed to comply with the wage notice requirements of NYLL § 195, in that they never provided Oliva with a wage notice.

With respect to the Plaintiff Flores-Larios, he was employed at the Defendants' Hauppauge warehouse as a fork lift operator for approximately four months in the late spring and summer of 2012. While employed by the Defendants, he earned a regular rate of $7.25 per hour, which was the minimum wage. He also allegedly worked a spread of hours exceeding ten hours, but the Plaintiffs provide no details concerning the hours he generally worked. The Plaintiffs also claim Flores-Larios never received a wage notice from the Defendants in violation of NYLL § 195.

Concerning the Plaintiff Cordova, he was employed by the Defendants for almost eleven years and eight months, until his employment was terminated in January of 2013. Initially, Cordova was hired as a Machine Operator, but thereafter worked in various capacities for the Defendants. From the beginning of his employment in 2001 until his employment ended in early 2013, Cordova allegedly heard complaints from colleagues regarding wages for overtime hours missing from their paychecks.

In addition, Cordova himself often was missing wages for one or two hours of overtime from his paycheck.  While Cordova complained to his supervisors, he was told that an employee in payroll, only identified as "Malik" in the Revised Amended Complaint, did not have time to address the issue.  On one occasion, on an unspecified date, Cordova went directly to Malik and said "I'm not so new here that you can be doing this to me."  (Rev. Amend. Compl., ¶ 144.)  A week later, Cordova was paid the overtime wages that had been missing from his previous paycheck.

At some point in 2008, Cordova worked 57.5 hours in one week, but was only paid for forty hours.  Cordova complained to his supervisor, Rafael Bobea ("Bobea").  However, Bobea responded "Man does not live by bread alone," referring apparently to Matthew 4:4, which states "But he answered and said, It is written, Man shall not live by bread alone, but by every word that proceedeth out of the mouth of God."  (Rev. Amend. Compl., ¶ 146.)  The Plaintiffs allege that although Cordova repeatedly complained to Bobea about not being paid for his overtime hours, he never received those wages.

Similarly, at some point in 2010, Cordova's paycheck was missing wages for three overtime hours that he had worked.  Cordova complained to Ortiz, who told Cordova that he would mention the issue to Shervin.  However, Ortiz also told Cordova "that he 'wasn't sure' whether Shervin would 'approve' the overtime or not."  (Rev. Amend. Compl., ¶ 149.)  According to the Plaintiffs, the wages for these three overtime hours were never paid.  Allegedly, Ortiz told Cordova that the reason for this was because Cordova's request to be paid the overtime was made "too late."  (Rev. Amend. Compl., ¶ 150.)

The Plaintiffs claim that the supervisors at the Defendants' factories and warehouse often blamed employees for the missing overtime wages in their paychecks. In this regard, the supervisors supposedly stated that employees "had not 'punched' correctly." (Rev. Amend. Compl., ¶ 151.) However, contrary to the supervisors' theory, during his nearly twelve years of employment with the Defendants, Cordova allegedly heard complaints regarding missing overtime wages notwithstanding the time clock or time recording method that was used.

Although Cordova cannot recall the amount of overtime wages that are still owed to him or the amount of overtime wages that were unreasonably delayed, the Plaintiffs allege the Defendants know this information and that it can be determined through an examination of the Defendants' shift records, payroll records and computerized timekeeping records. Further, the Defendants allegedly failed to provide Cordova with a wage notice in accordance with NYLL § 195's requirements.

Finally, the Plaintiff Sante worked in various capacities for the Defendants for approximately three years and was still presently employed by the Defendants at the time the Revised Amended Complaint was filed. From August 2010 until April 2011, Sante earned the regular rate of $7.25 per hour, which was the minimum wage. Without giving details, the Plaintiffs allege he regularly worked a spread of hours exceeding ten hours and that he was not paid spread of hours pay. However, after the commencement of the instant action, the Defendants have apparently reduced the spread of hours worked by employees like Sante so that the spread of hours does not exceed ten hours.

## II. DISCUSSION

### A. Legal Standard Under Fed. R. Civ. P. 15(a)

Fed. R. Civ. P. 15(a) governs a motion to amend a complaint and states, in

relevant part, as follows:

> A party may amend the party's pleading once as a matter of
> course at any time before a responsive pleading is
> served . . . . Otherwise a party may amend the party's
> pleadings only by leave of court or by written consent of
> the adverse party; and leave shall be freely given as justice
> so requires.

See also Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002).  Leave to

amend should be denied only because of undue delay, bad faith, futility or prejudice to

the non-moving party, and the decision to grant or deny a motion to amend rests within

the sound discretion of the district court.  Aetna Cas. And Su. Co. v. Aniero Concrete Co.,

Inc., 404 F.3d 566, 603–04 (2d Cir. 2005); Zahra v. Town of Southold, 48 F.3d 674, 685

(2d Cir. 1995).

"An amendment to a pleading is futile if the proposed claim could not withstand a

motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  Lucente, 310 F.3d at 258; see

also Dougherty v. North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir.

2002).  The test then with respect to futility is whether or not the proposed amendment

states a claim upon which relief can be granted.  Lucente, 310 F.3d at 258.

Therefore, an amended complaint is futile when it does not contain enough

allegations of fact to state a claim for relief that is "plausible on its face."  Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  In

deciding whether an amended complaint meets this threshold, the Court is required to

accept the material facts alleged in the amended complaint as true and draw reasonable

inferences in the plaintiffs favor.  Ashcroft v. Iqbal, 556 U.S. 662, 678–79, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009).

**B. Legal Standard Under the FLSA and the NYLL**

"The FLSA requires compensation at one and one-half times the minimum wage for every hour worked over forty hours per week."  Palacios v. Z & G Distributors, Inc., 11 CIV. 2538 AT FM, 2013 WL 4007590, at *2 (S.D.N.Y. Aug. 6, 2013) (citing 29 U.S.C. § 207(a)(1)).  Similarly, the NYLL provides resident domestic employees a right to be paid at least one and a half times the minimum wage for each hour worked over forty hours in a week.  See Guadalupe v. Tri-State Employment, Mgmt. & Consulting, Inc., 10-CV-3840 NG CLP, 2013 WL 4547242, at *7 (E.D.N.Y. Aug. 28, 2013) ("Like the FLSA, the NYLL establishes certain minimum wage rates and mirrors the FLSA's requirement that employees be compensated at an overtime rate of one-and-one-half times their regular hourly pay for time worked in excess of 40 hours in a week.") (citing NYCCR § 142–2.2).

Further, pursuant to the NYLL, an employee must "receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which:  (a) the spread of hours [defined as the time from the start of the work day to the end of the work day] exceeds 10 hours."  NYCCR § 142-2.4; see also Guadalupe, 2013 WL 4547242, at *7 ("[U]nder the NYLL, an employer is required to provide one hour's pay at the basic minimum hourly wage rate on days in which the employee works a spread of hours greater than 10 hours (spread of hours wages).") (citations and internal quotation marks omitted); Palacios, 2013 WL 4007590, at *3

("Under the NYLL, an employer must pay an employee who works more than ten hours in one day an additional hour at the minimum wage.").

In addition, under NYLL § 195, "an employer must 'provide his or her employees, in writing . . . at the time of hiring, and . . . each subsequent year of the employee's employment with the employer, a notice containing [inter alia] the rate or rates of pay and basis thereof' and 'the regular hourly rate and overtime rate of pay.'" D'Arpa v. Runway Towing Corp., 12-CV-1120, 2013 WL 3010810, at *24 (E.D.N.Y. June 18, 2013) (quoting NYLL § 195(1)) (ellipses and internal brackets in original). Moreover, "[e]ach time the employer provides such notice to an employee," the employer is required to "obtain from the employee a signed and dated written acknowledgement, . . . of receipt of this notice, which the employer shall preserve and maintain for six years." NYLL § 195(1); see also D'Arpa, 2013 WL 3010810, at *24. NYLL § 195 further "mandates that an employer 'furnish each employee with a statement with every payment of wages, listing [inter alia] the dates of work covered by that payment of wages; . . . rate or rates of pay and basis thereof . . . ; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.'" D'Arpa, 2013 WL 3010810, at *24 (quoting NYLL § 195(3)) (ellipses and internal brackets in original).

"Although the FLSA does not explicitly require that [overtime] wages be paid on time, courts, including the Second Circuit, have long interpreted the statute to include a prompt payment requirement." Conzo v. City of New York, 667 F. Supp. 2d 279, 288 (S.D.N.Y. 2009) (citing Rogers v. City of Troy, 148 F.3d 52, 55 (2d Cir. 1998)); see also Edwards v. City of New York, 08 CIV. 3134 DLC, 2011 WL 3837130, at *11 (S.D.N.Y.

Aug. 29, 2011) ("Although the FLSA is silent as to when overtime compensation must be paid, 'courts have long interpreted the statute to include a prompt payment requirement.'") (quoting <u>Rogers</u>, 148 F.3d at 55).  Further, "[t]he Second Circuit has held that . . . it is appropriate to consider the [ ] views [of the Department of Labor (the "DOL")] on when overtime must be paid under the FLSA."  <u>Parker v. City of New York</u>, 04 CV 4476 BSJDCF, 2008 WL 2066443, at *11 (S.D.N.Y. May 13, 2008) (citing <u>Rogers</u>, 148 F.3d at 57).

In this regard, the DOL has provided the following guidance:

> [t]he general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends.  When the correct amount of overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of the [FLSA] will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable.  Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made.

<u>Edwards</u>, 2011 WL 3837130, at *11 (quoting 29 CFR § 778.106) (emphasis removed) (brackets in the original).  In similar fashion, under the NYLL, "[i]f the employer fails to make timely payment, an employee can seek to recover unpaid or underpaid wages, and unpaid overtime for hours worked in excess of forty per week, by either filing a complaint with the Commissioner, or commencing an action."  <u>Hinterberger v. Catholic Health</u>, 08-CV-380S, 2009 WL 4042718, at *3 (W.D.N.Y. Nov. 19, 2009) (citations omitted).

With respect to the pleading requirements for stating an FLSA overtime claim, the Second Circuit has held that "to survive a motion to dismiss, [p]laintiffs must allege sufficient factual matter to state a plausible claim that they worked compensable overtime in a workweek longer than 40 hours." Lundy v. Catholic Healthy System of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013). Specifically, "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." Id. Where "[p]laintiffs have not alleged a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours," the Second Circuit has found that there was "no plausible claim that FLSA was violated." Id. See also Bustillos v. Acad. Bus, LLC, 13 CIV. 565 AJN, 2014 WL 116012, at *2 (S.D.N.Y. Jan. 13, 2014).

Following Lundy, in Nakahata v. New York-Presbyterian Healthcare System, Inc., 723 F.3d 192 (2d Cir. 2013), the Second Circuit again affirmed the Fed. R. Civ. P. 12(b)(6) dismissal of claims for unpaid overtime, because like the complaint in Lundy, "[t]he complaints currently before [the Second Circuit] contain[ed] no similar specificity." Id. at 200–01. Rather the "[p]laintiffs [ ] merely alleged that they were not paid for overtime hours worked." Id. at 201. While acknowledging that the plaintiffs allegations "raise[d] the possibility that [the] [p]laintiffs were undercompensated in violation of the FLSA and NYLL," the Second Circuit nevertheless concluded that "absent any allegation that [the] Plaintiffs were scheduled to work forty hours in a given week, these allegations do not state a plausible claim for such relief." Id.

In this regard, the Second Circuit emphasized "[t]o plead a plausible FLSA overtime claim, [p]laintiffs must provide sufficient detail about the length and frequency

of their unpaid work to support a reasonable inference that they worked more than forty

hours in a given week." Id. However, the Second Circuit also added that "[w]hat aspects

of [the] [p]laintiffs' position, pay, or dates of employment are necessary to state a

plausible claim for relief consistent with this decision and Lundy is a case-specific

inquiry for the trial court" and that "generalized allegations that may prove false at trial

are not necessarily the basis for dismissal at the pleadings stage." Id. (emphasis

removed). See also Bustillos, 2014 WL 116012, at *3.

Most recently, in Dejesus v. HF management Services, LLC, 726 F.3d 85, (2d

Cir. 2013), the Second Circuit affirmed the dismissal of another plaintiff's FLSA and

NYLL claims. Id. at 89. The Second Circuit explained that the plaintiff's allegations

were inadequate because "[s]he did not estimate her hours in any or all weeks or provide

any other factual context or content." Id. Further, "her complaint was devoid of any

numbers to consider beyond those plucked from the statute," as "[s]he alleged only that

in 'some or all weeks' she worked more than 'forty hours' a week without being paid

'1.5' times her rate of compensation." Id. (citation omitted). In other words, the

plaintiff's FLSA and NYLL claims were insufficient because her "complaint [only]

tracked the statutory language of the FLSA, lifting its numbers and rehashing its

formulation, but alleg[ed] no particular facts sufficient to raise a plausible inference of an

FLSA overtime violation." Id.

The Second Circuit noted that "Lundy's requirement that plaintiffs allege

overtime without compensation in a 'given' workweek . . . was designed to require

plaintiffs to provide some factual context that will 'nudge' their claim 'from conceivable

to plausible.'" Id. at 90 (citations and internal quotation marks omitted.) While plaintiffs

are "not required [ ] to keep careful records and plead their hours with mathematical precision, [the Second Circuit] [has] recognized that it is employees' memory and experience that lead them to claim in federal court that they have denied overtime in violation of the FLSA in the first place."  Id.  Therefore, the Second Circuit's "standard requires that plaintiffs draw on those resources in providing complaints with sufficiently developed factual allegations."  Id.  See also Bustillos, 2014 WL 116012, at *3.

**C.  As to Whether the Plaintiff's Proposed Seventh Cause of Action for New York State Common Law Breach of Contract Fails to State a Claim as a Matter of Law**

First, the Defendants oppose the Plaintiffs' Fed. R. Civ. P. 15 motion to amend on the ground that the common law breach of contract claim that the Plaintiffs seek to add is duplicative of their FLSA and NYLL claims.  Thus, according to the Defendants, the Plaintiffs' amendment is futile.

The Plaintiffs' proposed seventh cause of action alleges that the Plaintiffs and the Defendants "had a verbal contract" under which "[the] Defendants agreed to pay [the] Plaintiffs [ ] for the first 40 hours worked at the regular rate of pay, and all hours worked in excess of 40 hours per week at the overtime rate."  (Rev. Amend. Compl., ¶¶ 189, 190.)  According to the Plaintiffs, "[b]y failing to pay [them] for all non-overtime hours worked at the agreed upon rates, the Defendants breached their contract of employment with [the] Plaintiffs."  (Rev. Amend. Compl., ¶ 192.)  Further, the Plaintiffs include the caveat that they only bring the breach of contract claim "to the extent that it is not duplicative of relief available to the [P]laintiffs under the FLSA or the NYLL, in that this cause of action seeks unpaid straight wages," rather than compensation for underpayment and/or delayed payment of overtime wages.  (Rev. Amend. Compl., ¶ 191.)

While the Defendants argue that the Plaintiffs' proposed seventh cause of action is identical to their proposed first and second causes of action under the FLSA and their third and fourth causes of action under the NYLL, the Court finds that the Defendants fail to acknowledge the nature of the Plaintiffs' breach of contract claim.  In this regard, the FLSA and NYLL claims only concern overtime compensation.  In contrast, the proposed common law breach of contract claim explicitly states that it only concerns unpaid straight wages, not overtime wages.

District courts in this Circuit have permitted plaintiffs to proceed on such breach of contract claims for straight wages in conjunction with FLSA and NYLL overtime claims.  See, e.g., Wilk v. VIP Health Care Servs., Inc., 10 CIV. 5530 ILG JMA, 2012 WL 560738, at *4 n.3 (E.D.N.Y. Feb. 21, 2012) ("Although whether common law claims for overtime pay are preempted by the FLSA is an open question that the Second Circuit has not addressed, it is clear that the FLSA does not preempt common law claims [including breach of contract claims] for 'straight time,' i.e., non-overtime hours, for which a plaintiff was paid at least minimum wage." (citations omitted); DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc., 770 F. Supp. 2d 497, 530 (E.D.N.Y. 2011) ("[T]he Court finds that the FLSA preempts the state common law claims [including breach of contract claims] that are based upon [the] defendants' alleged failure to fully compensate plaintiffs for all overtime hours worked.  However, the common law claims [including breach of contract claims] that are based upon the alleged failure to properly compensate plaintiffs for 'straight time' wages are not duplicative of the FLSA cause of action, and therefore are not preempted.").  As such, the Court does not find this to be a valid basis upon which to deny the Plaintiffs' motion to amend.

**D. As to Whether the Plaintiffs Have Stated Plausible Claims For Underpaid and Untimely Overtime Wages Under the FLSA**

Also in opposition to the Plaintiffs motion to amend pursuant to Fed. R. Civ. P. 15, the Defendants contest the Plaintiffs' proposed first and second FLSA causes of action, which allege a failure to pay overtime wages and a failure to timely pay overtime wages respectively, as inadequate under the pleading requirement set forth by the Second Circuit in <u>Lundy</u>, <u>Nakahta,</u> and <u>Dejesus</u>.  As such, the Defendants argue that the Plaintiff's proposed Amended Complaint is futile and therefore should be rejected by the Court.

However, in reply to the Defendants' opposition, the Plaintiffs have submitted a Revised Amended Complaint, which includes more specific factual allegations than either the Original Complaint or the Amended Complaint.  The Court recognizes that some of these new factual allegations still seemingly rely on the sort of generalizations that were disapproved of by the Second Circuit, such as using terms like "intermittently," "typically," "consistently," "regularly" and "often."  <u>See</u> <u>Bustillos</u>, 2014 WL 116012 at *3 ("[The plaintiff's] bare allegation that his schedule 'varied' and he 'would regularly work from 60 to 90 hours per week' is equivalent to the allegations in DeJesus and Nakahata in which the plaintiffs claimed they 'regularly worked' in excess of forty hours per week or did so during 'some or all weeks.'  Specifically, each of these allegations boils down to a conclusory assertion, without any supporting factual context, that the defendants violated the FLSA overtime provision because the plaintiff worked some number of excess hours in some unidentified week.") (citing <u>Nakahata</u>, 723 F.3d at 199; <u>Lundy</u>, 711 F.3d at 87).  Nevertheless, the Court finds that the case before it is distinguishable from the Second Circuit's cases in at least two significant ways.

First, the issue in Lundy was that the three plaintiffs alleged that they typically

worked under forty hours per week, but occasionally they may have worked more than

forty hours per week due to missing meal breaks, working before or after scheduled shifts

and training or staff meetings. 711, F.3d at 114–15. However, the Lundy court found

that these allegations were not sufficient, explaining as follows:

> [T]he [plaintiff Wolman] has not alleged that she
> ever completely missed all three meal breaks in a week, or
> that she also worked a full 15 minutes of uncompensated
> time around every shift; but even if she did, she would have
> alleged a total 39 hours and 45 minutes worked. A monthly
> 30–minute staff meeting, an installment of the ten yearly
> hours of training, or an additional or longer shift could
> theoretically put her over the 40–hour mark in one or
> another unspecified week (or weeks); but her allegations
> supply nothing but low-octane fuel for speculation, not the
> plausible claim that is required.
>     . . . . Maybe the [plaintiff Iwasiuk] missed all of her
> meal breaks, and always worked an additional 30 minutes
> before and two hours after her shifts, and maybe some of
> these labors were performed in a week when she worked
> more than her four shifts. But this invited speculation does
> not amount to a plausible claim under FLSA.
>     [T]he [plaintiff] Lundy worked between 22.5 and 30
> hours per week and Plaintiffs conceded below—and do not
> dispute on appeal—that he never worked over 40 hours in
> any given week.

Id. at 115 (citations omitted).

Similarly, the Second Circuit in Nakahata reached a similar conclusion and

provided the following reasoning:

> Plaintiffs have merely alleged that they were not
> paid for overtime hours worked. These allegations—that
> Plaintiffs were not compensated for work performed during
> meal breaks, before and after shifts, or during required
> trainings—raise the possibility that Plaintiffs were
> undercompensated in violation of the FLSA and NYLL;
> however, absent any allegation that Plaintiffs were
> scheduled to work forty hours in a given week, these

> allegations do not state a plausible claim for such relief. To
> plead a plausible FLSA overtime claim, Plaintiffs must
> provide sufficient detail about the length and frequency of
> their unpaid work to support a reasonable inference that
> they worked more than forty hours in a given week. For
> these reasons, the District Court properly dismissed the
> FLSA and NYLL overtime claims.

723 F.3d at 201.

Lastly, in <u>Dejesus</u>, the Court found that the plaintiff "provided less factual specificity than did the plaintiffs in <u>Lundy</u> or <u>Nakahata</u>," in that "[s]he did not estimate her hours in any or all weeks or provide any other factual context or content." 726 F.3d at 89. Rather, the plaintiff "alleged only that in 'some or all weeks' she worked more than 'forty hours' a week without being paid '1.5' times her rate of compensation," and thus "no more than rephras[ed] the FLSA's formulation specifically set forth in section 207(a)(1)." <u>Id.</u> (citation omitted).

Conversely, in this case, all the Plaintiffs who are bringing the overtime causes of action under the FLSA claim that they were regularly scheduled by the Defendants to work more than forty hours per week. To this end, the Plaintiffs include specifics with respect to their shift hours and the numbers of days they worked per week. For example, the Revised Amended Complaint alleges that the Plaintiffs Mendez, Melendez and Oliva worked nighttime shifts of 10.5 hours or more at least five days a week. Based on these factual allegations, it is clear that these Plaintiffs were routinely scheduled by the Defendants to work more than forty hour per work week. This differs from the plaintiffs in the cases before the Second Circuit, who alleged that they generally worked forty hours a week or less but then speculated that there might have been some weeks in which

they worked more than forty hours because there were occasions when they worked additional time outside of their regularly scheduled shifts.

Moreover, unlike the complaints before the Second Circuit in Lundy, Nakahata and Dejesus, the Revised Amended Complaint does in fact include detailed, non-conclusory factual allegations that, if true, would state a violation of the FLSA overtime requirements.  For example, Molina alleges that in December of 2011, he worked ninety-six hours in one week, but was only paid for seventy hours and, thus, the Defendants owe him wages for twenty-six overtime hours.  In similar fashion, Melendez alleges that in September of 2012, she worked approximately fifty hours for one week, but was only paid for forty hours.  She also alleges that she worked fifty hours for a second week, but was only paid for thirty hours.  As such, she asserts that she is owed wages for ten regular hours and for twenty overtime hours.  Further, Oliva asserts that during the narrow period of time that he worked for the Defendants, which was only two to three months in the late summer and fall of 2012, overtime wages were missing from his paycheck and that it would take him up to one month before he received those payments.

The Court finds that these specific factual allegations are sufficient to sustain the FLSA overtime claims contained in the Plaintiffs' Revised Amended Complaint.  Applying the reasoning of the court in Perry v. City of New York, 13 CIV. 1015 JMF, 2013 WL 6641893 (S.D.N.Y. Dec. 17, 2013), "[t]he fact that the [Revised] Amended Complaint does not set forth specific allegations for each [p]laintiff does not warrant dismissal either.  Lundy does not . . . mandate that where multiple plaintiffs are joined in an FLSA action, each plaintiff must make individualized factual allegations.  Instead,

<u>Lundy</u> merely sets forth the pleading standard for FLSA overtime claims, which . . .[the] [p]laintiffs have met." <u>Id.</u> at *4.

Accordingly, in the Court's view, the Plaintiffs' have stated FLSA claims for unpaid and untimely overtime wages. The Court therefore rejects the Defendants argument that the Plaintiffs' proposed first and second causes of action are futile.

**E.  As to Whether the Plaintiffs Have Stated a Wage Notice Violation Claim Under the NYLL**

In addition, the Defendants contend that the Plaintiffs' proposed sixth cause of action for wage notice violations under NYLL § 195-1 fails to provide notification of the precise nature of the alleged violations and is therefore futile. In this regard, according to the Defendants, because NYLL § 195-1 contains several obligations, the Plaintiffs were required to include in their Amended Complaint specifics with respect to which obligations the Defendants allegedly failed to meet.

The Court first notes that the Plaintiffs' proposed sixth cause of action is the same as the fifth cause of action contained in the Original Complaint, which the Defendants answered. Nevertheless, the Court will address the Defendants' argument here and finds that it is without merit.

As stated above, NYLL § 195 requires "an employer [to] 'provide his or her employees, in writing . . . at the time of hiring, and . . . each subsequent year of the employee's employment with the employer, a notice containing [inter alia] the rate or rates of pay and basis thereof' and 'the regular hourly rate and overtime rate of pay.'" <u>D'Arpa</u>, 2013 WL 3010810, at *24 (quoting NYLL § 195(1)) (ellipses in original). The Plaintiffs' Revised Amended Complaint clearly states that no such notice was given to the named Plaintiffs. Indeed, the Revised Amended Complaint specifically alleges that

the "Defendants never provided" the Plaintiffs with a wage notice. (Rev. Amend. Compl,
¶¶ 88, 96, 107, 117, 133. 138, 153.) In the Court's view, this puts the Defendants on
notice, without ambiguity, that the Plaintiffs are alleging that the Defendants failed to
provide them with a wage notice, either at the time of each Plaintiff's hiring or during
any subsequent year in which they may have been were employed by the Defendants.

## F.  As to Whether the Plaintiffs Have Stated Claims Against the Individual Defendants

The Defendants also oppose the Plaintiffs' motion to amend by suggesting that
the Plaintiffs' Amended Complaint improperly lumps all of the Defendants together and
provides no specific factual allegations concerning each Defendant's involvement in the
alleged FLSA and NYLL violations. The Court disagrees.

"Individual liability under the FLSA is premised upon 'personal responsibility for
making decisions about the conduct of the business that contributed to the violations of
the Act.'" Schear v. Food Scope Am., Inc., 12 CIV. 594 AT, 2014 WL 123305, at *18
(S.D.N.Y. Jan. 10, 2014) (quoting Baystate Alt. Staffing, Inc. v. Herman, 163 F.3d 668,
678 (1st Cir. 1998)). In this regard, in order to determine whether an individual is an
employer under the FLSA, the Second Circuit employs an "economic reality" test under
which "the relevant factors include 'whether the alleged employer (1) had the power to
hire and fire the employees, (2) supervised and controlled employee work schedules or
conditions of employment, (3) determined the rate and method of payment, and
(4) maintained employment records.'" Herman v. RSR Sec. Services Ltd., 172 F.3d 132,
139 (2d Cir. 1999 (quoting Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d
Cir. 1984)); see also Irizarry v. Catsimatidis, 722 F.3d 99, 104–05 (2d Cir. 2013). "These
four factors are not exhaustive, however, as there are others that bear upon the

overarching concern of whether the alleged employer possessed the power to control the workers in question." Magnuson v. Newman, 10 CIV. 6211 JMF, 2013 WL 5380387, at *8 (S.D.N.Y. Sept. 25, 2013) reconsideration denied, 10 CIV. 6211 JMF, 2013 WL 5942338 (S.D.N.Y. Nov. 6, 2013) (citing Irizarry, 722 F.3d at 105) (internal brackets and quotation marks omitted).

While "[t]he New York Court of Appeals has not answered the question of whether the employer test under the NYLL is the same as under the FLSA[,] . . . district courts in this Circuit have interpreted the definition of employer under the [NYLL] coextensively with the definition used by the FLSA." Schear, 2014 WL 123305, at *18 (citing Sethi v. Narod, No. 11 Civ. 2511, 2013 WL 5453320, at *23 (E.D.N.Y. Sept. 30, 2013)) (internal brackets omitted).   For this reason, "[t]his Court will analyze whether the individual Defendants qualify as 'employers' under the FLSA and NYLL together, using the FLSA standard, because 'any difference [between the two definitions] would be immaterial to the facts of this case.'" Id. (quoting Kalloo v. Unlimited Mech. Co. of NY, Inc., No. 11–CV–6215 (NG)(RLM), 2013 WL 5574774, at *10 (E.D.N.Y. 2013)).

Of importance, "the remedial nature of the [FLSA] . . . warrants an expansive interpretation of its provisions so that they will have the widest possible impact in the national economy." Irizarry, 722 F.3d at 110 (quoting RSR, 172 F.3d at 139) (internal quotation marks omitted) (ellipse in original).   Further, the Second Circuit has found that the FLSA does not "require[ ] an individual to have been personally complicit in FLSA violations; the broad remedial purposes behind the statute counsel against such a requirement." Id.   In this regard,

> [t]he statute provides an empty guarantee absent a financial
> incentive for individuals with control, even in the form of

delegated authority, to comply with the law, and courts have continually emphasized the extraordinarily generous interpretation the statute is to be given. Nor is "only evidence indicating [an individual's] direct control over the [plaintiff employees] [to] be considered." Instead, "evidence showing [an individual's] authority over management, supervision, and oversight of [a company's] affairs in general" is relevant to "the totality of the circumstances in determining [the individual's] operational control of [the company's] employment of [the plaintiff employees]."

Id. (quoting RSR, 172 F.3d at 140) (internal quotation marks and brackets in the original).

In this case the Plaintiffs' allege that the Individual Defendants are immediate family; they together own one hundred percent of the outstanding shares of stock of U.S. Nonwovens; and they exercise the power to hire and fire employees, set their wages and otherwise control the terms and conditions of their employees. Their power includes managing the day-to-day operations of U.S. Nonwovens and having control over payroll decisions, such as retaining time and/or wage records. Given these factual allegations, the Court finds that the Plaintiffs have satisfactorily stated claims for individual liability against all three Individual Defendants. See, e.g., Apolinar v. Global Deli & Grorcery, Inc., 12 CV 3446 RJD VMS, 2013 WL 5408122, at *4 (E.D.N.Y. Sept. 25, 2013) ("The allegation that [the individual] [d]efendant [ ] was a principal of Global suggests that he possessed control over it and its employees. The Complaint also alleges that [the individual] [d]efendant [ ] authorized Global's pay policies and controlled the terms and conditions of [the] [p]laintiffs' work. Taking into consideration the totality of the circumstances . . . under Irizzary, [the individual] [d]efendant [ ] was an 'employer' of [the] [p]laintiffs under the FLSA."); Salomon v. Adderley Indus., Inc., 11 CIV. 6043

PAC, 2013 WL 4308569, at *5 (S.D.N.Y. Aug. 16, 2013) ("[The] [p]laintiffs [ ] allege that the proposed individual defendants were owners and corporate officers of Adderley and ACI, and had authority over matters including payroll, personnel, and the supervision and hiring and firing of employees of both companies. . . . Under the FLSA, these allegations are sufficient to plausibly allege employer status.").

## G. As to Whether the Plaintiffs' Revised Amended Complaint Contains Inappropriate Allegations

To the extent the Defendants argue in opposition to the Plaintiffs' motion to amend that the Amended Complaint contained allegations that were inappropriate for a pleading, the Court finds that the Revised Amended Complaint addresses these concerns. In this regard, the Revised Amended Complaint removes all of the allegedly offensive paragraphs. Therefore, the Court need not explore the Defendants' arguments as they are now moot.

## III. CONCLUSION

In sum, the Defendants have presented the Court with no reason as to why the Plaintiffs' motion to amend their Original Complaint pursuant to Fed. R. Civ. P. 15 should not be granted. Moreover, having reviewed the Plaintiffs' Revised Amended Complaint, the Court finds neither undue delay, bad faith, futility or prejudice exist in this case so as to warrant the denial of the Plaintiffs' motion. Thus, for the foregoing reasons, it is hereby

**ORDERED,** that the motion by the Plaintiffs' to amend their Original Complaint pursuant to Fed. R. Civ. P. 15 is granted; and it is further

**ORDERED**, that the Plaintiffs are directed to file the Revised Amended Complaint that was included with their reply papers within ten days of the date of this

31

Order.  Further, to the extent the Revised Amended Complaint contains footnotes, the

Plaintiffs are directed to remove these footnotes in accordance with this Court's

Individual Rule II.A, but may incorporate the substance of the footnotes into the text of

the Revised Amended Complaint.  However, the Plaintiffs shall not make any other

changes to the Revised Amended Complaint without first seeking court approval

pursuant to Fed. R. Civ. P. 15.

**SO ORDERED.**
Dated: Central Islip, New York
March 5, 2014

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge
