UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Case No.: 12-CV-5583

Efrain Danilo Mendez a/k/a Efrain D. Mendez-Rivera, Aldraily
Alberto Coiscou, Fernando Molina a/k/a Jorge Luis Flores Larios,
Siryi Nayrobik Melendez, Rene Alexander Oliva, Juan Flores-
Larios, Ramiro Cordova, and Daniel Sante, individually and on
behalf of all others similarly situated,

**FIRST AMENDED
COMPLAINT**

                                          Plaintiffs,

                    *-against-*

U.S. Nonwovens Corp., Samuel Mehdizadeh a/k/a Solomon
Mehdizadeh,  Shervin Mehdizadeh Mehdizadeh, and Rody
Mehdizadeh,

                                          Defendant.

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Efrain Danilo Mendez a/k/a Efrain D. Mendez-Rivera, Aldraily Alberto

Coiscou, Fernando Molina a/k/a Jorge Luis Flores Larios, Siryi Nayrobik Melendez, Rene

Alexander Oliva, Juan Flores Larios, Ramiro Cordova and Daniel Sante ("Plaintiffs"),

individually and on behalf of all others similarly situated, as class representatives, upon personal

knowledge as to themselves and upon information and belief as to other matters, allege as

follows:

NATURE OF THE ACTION

1.       U.S. Nonwovens Corp. (U.S. Nonwovens) manufactures a wide range of products

that include household cleaning products, disposable cleaning wipes for personal hygiene and

other cleaning uses, other non-woven products, and laundry cleaning and care products.   Its

clients in the past six years have included Wal-Mart, K-Mart, Sears, CVS, Walgreens and other

large retailers.

2.      The Defendants operate three factories in the shadow of the Central Islip Courthouse, which are located at 100 Emjay Blvd., 105 Emjay Blvd., and 110 Emjay Blvd, Brentwood, New York.  In addition to the Brentwood, New York locations, U.S. Nonwovens maintains a warehouse and distribution center in Hauppauge, New York.

3.      Named Plaintiffs are part of an immigrant workforce that have been victims of U.S. Nonwovens' policies of failing to pay overtime, delaying in the payment of overtime, imposing a workday of over 10 hours, failing to pay the New York spread of hours premium, and in some instances refusing to even pay straight wages to employees.

4.      By this Second Amended Complaint, the plaintiffs assert the following causes of action against U.S. Nonwovens and the defendants:

(a)     A *First Cause of Action* for failure to timely pay overtime under the FLSA, 29 U.S.C. 201 *et seq.* and the supporting regulations;

(b)     A *Second Cause of Action* for failure to pay overtime under the FLSA, 29 U.S.C. 201 *et seq.* and the supporting regulations;

(c)     A *Third Cause of Action* for unpaid overtime under the NYLL;

(d)     A *Fourth Cause of Action* for untimely payment of wages under the NYLL;

(e)     A *Fifth Cause of Action* for failure to pay spread of hours pay as required by the NYLL and the supporting regulations of 12 NYCRR §§142-2.4 and 142-2.18;

(f)     A *Sixth Cause of Action* for failure to provide wage notices under Section 195.1 of the NYLL; and

(g)     A *Seventh Cause of Action* for common law breach of contract for failure to pay agreed-upon straight wages under the New York Common Law.

*Plaintiffs*

5.      Each named plaintiff herein is an adult individual who is a resident of Suffolk County, New York.

6.      Each named plaintiff herein was employed by the Defendants during the relevant time period.

7.      Each named plaintiff herein is a covered employee within the meaning of the FLSA and the NYLL.

8.      A written consent form for each named plaintiff has been filed with this Court.

*Defendants*

9.      Defendants U.S. Nonwovens Corp., Samuel Mehdizadeh a/k/a Solomon Mehdizadeh,  Shervin Mehdizadeh Mehdizadeh, and Rody Mehdizadeh jointly employed the Plaintiffs and similarly situated employees during the relevant time period.  Each Defendant has had substantial control over Plaintiffs working conditions, and over the unlawful policies and practices alleged herein.

### U.S. Nonwovens Corp.

10.      U.S. Nonwovens Corp. ("U.S. Nonwovens") has operated warehouses and factories located in Brentwood, and Hauppauge, Long Island during the relevant period.

11.      U.S. Nonwovens is a domestic business corporation, organized and existing under the laws of New York.

12.      Upon information and belief, U.S. Nonwovens' principal executive office is located at 100 Emjay Blvd., Brentwood, New York.

13.     U.S. Nonwovens is a covered employer within the meaning of the FLSA and the NYLL, and at all during the relevant time period employed and/or jointly employed the Plaintiffs and similarly situated employees.

14.     During the relevant time period, U.S. Nonwovens maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

15.     Upon information and belief, U.S. Nonwovens applies the same employment policies, practices, and procedures to all non-exempt factory workers, including policies, practices, and procedures with respect to payment of overtime compensation, and spread of hours pay.

16.     Upon information and belief, for each calendar year within the relevant time period and up to the present time, U.S. Nonwoven Corp's annual gross volume of sales made or business done was not less than $500,000.00.

*Individual Defendants*

17.     The defendants Samuel Mehdizadeh a/k/a Solomon Mehdizadeh (Samuel Mehdizadeh), Shervin Mehdizadeh Mehdizadeh (Shervin Mehdizadeh), and Rody Mehdizadeh (collectively the "Individual Defendants") are shareholders in U.S. Nonwovens.

18.     Shervin Mehdizadeh and Rody Mehdizadeh are brothers.   Samuel Mehdizadeh is their father.

19.     The Individual Defendants together own 100% of the outstanding shares of stock of U.S. Nonwovens.

20.     The Individual Defendants obtained a controlling interest in U.S. Nonwovens in

2005.  *See Stipulation of Settlement Dated October 3, 2005*, a copy of which is annexed hereto

as Exhibit A.

<u>Samuel Mehdizadeh</u>

21.     Upon information and belief Samuel Mehdizadeh is a resident of the State of New

York.

22.     Upon information and belief, Samuel Mehdizadeh has been a shareholder of U.S.

Nonwovens since October 2005.

23.     By agreement dated January 2, 1997, US Nonwovens hired Samuel Mehdizadeh

as the General Manager to be responsible for its day-to-day operations

24.     Samuel Mehdizadeh has served in various capacities since January 2, 1997,

including General Manager, President, Chairman, and Chief Executive Officer.

25.     Upon information and belief, at all relevant times, Samuel Mehdizadeh has had

power over personnel decisions at U.S. Nonwovens, including the power to hire and fire

employees, set their wages, and otherwise control the terms and conditions of their employment.

26.     Upon information and belief, at all relevant times, Samuel Mehdizadeh has had

power over payroll decisions at U.S. Nonwovens, including the power to retain time and/or wage

records.

27.     Upon information and belief, Samuel Mehdizadeh is actively involved in

managing the day to day operations of U.S. Nonwovens.

28.     Upon information and belief, at all times relevant, Samuel Mehdizadeh has also

had the power to stop any illegal pay practices that harmed Plaintiffs.

29.     Samuel Mehdizadeh is an employer within the meaning of the FLSA and the NYLL, and at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

Rody Mehdizadeh

30.     Upon information and belief Rody Mehdizadeh is a resident of the State of New York.

31.     Upon information and belief, at all relevant times, Rody Mehdizadeh has been a shareholder of U.S. Nonwovens.

32.     Rody Mehdizadeh is the Chief Operating Officer of U.S. Nonwovens.

33.     Upon information and belief, at all relevant times, Rody Mehdizadeh has had power over personnel decisions at U.S. Nonwovens, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

34.     Upon information and belief, at all relevant times, Rody Mehdizadeh has had power over payroll decisions at U.S. Nonwovens, including the power to retain time and/or wage records.

35.     Upon information and belief, Rody Mehdizadeh is actively involved in managing the day to day operations of U.S. Nonwovens.

36.     Upon information and belief, at all times relevant, Rody Mehdizadeh has also had the power to stop any illegal pay practices that harmed Plaintiffs.

37.     Rody Mehdizadeh is an employer within the meaning of the FLSA and the NYLL, and at all times relevant, employed and/or jointly employed Plaintiff and similarly situated employees.

<u>Shervin Mehdizadeh</u>

38.     Upon information and belief Shervin Mehdizadeh is a resident of the State of New York.

39.     Upon information and belief Shervin Mehdizadeh is an Officer of U.S. Nonwovens.

40.     Upon information and belief, at all relevant times, Shervin Mehdizadeh has been a shareholder of U.S. Nonwovens.

41.     By agreement dated January 2, 1997, US Nonwovens hired Shervin Mehdizadeh as the Assistant Manager.

42.     Since becoming the Assistant Manager of U.S. Nonwovens in January 2007, Shervin Mehdizadeh has served in various capacities for U.S. Nonwovens.

43.     Shervin Mehdizadeh is the Chief Executive Officer of U.S. Nonwovens.

44.     Upon information and belief, at all relevant times, Shervin Mehdizadeh has had power over personnel decisions at U.S. Nonwovens, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

45.     Upon information and belief, at all relevant times, Shervin Mehdizadeh has had power over payroll decisions at U.S. Nonwovens, including the power to retain time and/or wage records.

46.     Upon information and belief, Shervin Mehdizadeh is actively involved in managing the day to day operations of U.S. Nonwovens.

47.     Upon information and belief, at all times relevant, Shervin Mehdizadeh has also had the power to stop any illegal pay practices that harmed Plaintiffs.

48.     Shervin Mehdizadeh is an employer within the meaning of the FLSA and the NYLL, and at all times relevant, employed and/or jointly employed Plaintiff and similarly situated employees.

## JURISDICTION AND VENUE

49.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1337 and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

50.     This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

51.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and 2202.

52.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## COLLECTIVE ACTION ALLEGATIONS

53.     Plaintiffs bring the First and Second Causes of Action, on behalf of themselves and all similarly situated persons – non-exempt factory workers employed by U.S. Nonwovens in New York - who elect to opt-in to this action (the "FLSA Collective") pursuant to 29 U.S.C. 216.

54.     Consistent with the Defendants' policy and practice, the Plaintiffs and the FLSA Collective were not paid overtime promptly as required by the FLSA and the supporting regulations.

55.     Consistent with Defendants' policy and pattern or practice, Plaintiffs and the FLSA Collective were not paid premium overtime compensation for all hours worked beyond 40 per workweek.

56.     All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

57.     As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

    (a)  willfully failing to properly record all hours worked;

    (b)  willfully failing to pay overtime earned on the regular pay day for the period in which such workweek ends;

    (c)  willfully delaying the payment of overtime for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due;

    (d)  willfully failing to pay its employees, including Plaintiffs and the FLSA Collective, premium overtime wages for hours that they worked in excess of 40 hours per workweek; and

    (e)  Willfully failing to record all of the time that its employees, including Plaintiffs and the FLSA Collective, have worked for the benefit of Defendants.

- 9 -

58.     Defendants' unlawful conduct, as described in this Class Action Complaint, is pursuant to a corporate policy or practice of:

(a) Failing to establish and/or implement procedures to assure the proper recording of hours worked by members of the collective despite a history of complaints spanning over 12 years;

(b) Failing to establish and/or implement procedures to assure the proper recording and payment of overtime;

(c) Failing to establish and/or implement procedures to assure payment of overtime earned on the regular pay day for the period in which such workweek ends;

(d) Failing to establish and/or implement procedures to assure prompt payment of overtime, and instead implementing procedures that resulted in the delay of payment of overtime for a period longer than reasonably necessary.

59.     Defendants are aware or should have been aware that federal law required them to properly record all hours worked by the collective;

60.     Defendants are aware or should have been aware that federal law required them to properly pay for all employees performing non-exempt duties an overtime premium for hours worked in excess of 40 per workweek.

61.     Defendants are or should have been aware that federal law required them to promptly pay the collective overtime premiums.

62.     Plaintiffs and the FLSA Collective perform or performed the same primary duties.

63.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

- 10 -

CLASS ACTION ALLEGATIONS

64.     Plaintiffs bring the Third, Fourth, Fifth, Sixth and Seventh Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of all non-exempt workers employed by U.S. Nonwovens in New York for the six year period prior to the filing of this complaint and up to the date of final judgment in this matter (the "Rule 23 Class").

65.     Excluded from the Rule 23 Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

66.     The members of the Rule 23 Class are so numerous that joinder of all members is impracticable.

67.     Upon information and belief, the size of the Rule 23 Class is at least 250 individuals. Although the precise number of such employees is unknown, the facts on which the calculation of that number depends are presently within the sole control of Defendants.

68.     Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

69.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)  whether Defendants violated NYLL Articles 6 and 19, and the supporting New York State Department of Labor regulations;

(b)  whether Defendants correctly compensated Plaintiffs and the Rule 23 Class for hours worked in excess of 40 hours per workweek;

(c)  whether Defendants failed to timely pay Plaintiffs and the Rule 23 Class wages and overtime premiums as required by Section 191 of the NYLL;

(d)  whether Defendants failed to provide Plaintiffs and the Rule 23 Class spread-of-hours pay;

(e)  whether Defendants failed to provide Plaintiffs and the Rule 23 Class with wage notices as required by Section 195.1 of the NYLL;

(f)  whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiff and the Rule 23 Class, and other records required by the NYLL;

(g)  whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

(h)  The nature and extent of class-wide injury and the measure of damages for those injuries.

70.    The claims of Plaintiffs are typical of the claims of the Rule 23 Class they seek to represent. Plaintiffs and all of the Rule 23 Class members work, or have worked, for Defendants as factory workers in the State of New York.  Plaintiffs and the Rule 23 Class members enjoy the same statutory rights under the NYLL to be paid for all hours worked, to be paid overtime wages, to be paid in a timely manner, to be paid spread of hours pay, to receive the notice prescribed by NYLL §195, and to be provided with an accurate statement of wages.  Plaintiffs

and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL. Plaintiffs and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

71.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Classes. Plaintiffs understand that as class representatives, they assume a fiduciary responsibility to the class to represent its interests fairly and adequately. Plaintiffs recognize that as class representatives, they must represent and consider the interests of the class just as they would represent and consider their own interests. Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interests over the class. Plaintiffs recognize that any resolution of a class action must be in the best interest of the class. Plaintiffs understand that in order to provide adequate representation, they must be informed of developments in litigation, cooperate with class counsel, and testify at depositions and/or trial. Plaintiffs have retained counsel competent and experienced in complex class actions and employment litigation. There is no conflict between Plaintiffs and the Rule 23 members.

72.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' violations of the NYLL, as well as their common and uniform policies, practices, and procedures. Although the relative damages suffered by individual Rule 23 Class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. The individual Plaintiffs lack the financial resources to conduct a thorough examination of Defendants' timekeeping and

- 13 -

compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such

damages. In addition, class litigation is superior because it will obviate the need for unduly

duplicative litigation that might result in inconsistent judgments about Defendants' practices.

73.     This action is properly maintainable as a class action under Federal Rule of Civil

Procedure 23(b)(3).

74.     This action is properly maintainable as a class action under Federal Rule of Civil

Procedure 23(b)(2) in that the defendants have acted or refused to act on grounds that apply

generally to the class, so that final injunctive relief or corresponding declaratory relief is

appropriate respecting the class as a whole.

75.     This action is properly maintainable as a class action under Federal Rule of Civil

Procedure 23(b)(1)(B) in that prosecuting separate actions by individual class members would

create a risk of adjudications with respect to individual class members that, as a practical matter,

would be dispositive of the interests of the other members not parties to the individual

adjudications or would substantially impair or impede their ability to protect their interests.

PLAINTIFFS' FACTUAL ALLEGATIONS

76.     Consistent with their policies and patterns or practices as described herein,

Defendants harmed Plaintiffs individually as follows:

Efrain Danilo Mendez a/k/a Efrain D. Mendez-Rivera (Mendez)

(Overtime, Delayed Payment of Overtime, Spread of  Hours Pay & Wage Notice Violations)

77.     Plaintiff Mendez was employed as a "pallet loader" at the Defendants' factory

located in Brentwood, New York from on or about May 2012 until November 2012.

78.     Plaintiff Mendez' shift hours were from 4:30 PM until 3:00 AM the following

morning, with a ½ hour break for lunch.

79.     With rare exceptions, Plaintiff Mendez worked his shift hours for the entire course of his employment with Defendants.

80.     Plaintiff Mendez typically worked five days per week (Monday-Friday), but on occasion worked six days per week.   On those weeks that he worked five days, he worked approximately 50 hours per week.  On those weeks that he worked six days per week, he worked approximately 60 hours per week.

81.     During his employment with the Defendants, Plaintiff Mendez' regular rate was $7.25 per hour.

82.     Despite the fact that Plaintiff Mendez worked a "spread of hours" in excess of ten for virtually every day that he was employed by the Defendants, Defendants did not pay Plaintiff Mendez spread of hours pay as required by 12 NYCRR §§142-2.4 and 142-2.18.

83.     Intermittently throughout his employment, overtime hours were missing from the Plaintiff Mendez' paycheck.   Upon complaining of the underpayment to his supervisors, the overtime hours would be paid approximately one month after the overtime earnings were earned.

84.     Plaintiff Mendez cannot recall precisely the amount of overtime that was delayed. Plaintiff Oliva estimates that the defendants delayed in paying him between 5-10 hours of overtime during the course of his employment.

85.     The precise amount of overtime that was paid on a delayed basis and the length in delay of payment is known to the defendants.

86.     In addition, Plaintiff Mendez was not paid approximately 3 hours of overtime during the course of his employment with Defendants, despite the fact that repeated complaints were made to his supervisor.

87.     Plaintiff Mendez cannot recall with precision the amount of overtime that remains unpaid.  However, the amount of overtime that is owed by Defendants to Plaintiff Mendez is known to the Defendants and can be determined through an examination of the defendant's shift records, payroll records, and computerized timekeeping records.

88.     Defendants never provided Plaintiff Mendez a wage notice in conformity with the requirements of NYLL §195.

<u>Aldraily Alberto Coiscou (Coiscou)</u>

(Spread of Hours Pay and Wage Notice Violation)

89.     Plaintiff Coiscou was employed by Defendants from August 2012 until September 2012.

90.     Plaintiff Coiscou started as a machine operator, and then was assigned to moving boxes to pallets, wrapping the pallets, and moving them to another area.

91.     For approximately the first two weeks of his employment with the Defendants, Plaintiff Coiscou worked from approximately 4:30 PM until 3:00 AM the following morning, at least four days per week.

92.     During the last two weeks of Plaintiff Coiscou's employment with the Defendants he worked from approximately 4:30 PM until 5:00 AM, at least four days per week.

93.     With rare exceptions, Plaintiff Cosicou always worked a spread of hours in excess of 10.

94.     During his employment with the Defendants, Plaintiff Coiscou's regular rate was $7.25 per hour.

95.     Defendants did not pay Plaintiff Coiscou spread of hours pay as required by 12 NYCRR §§142-2.4 and 142-2.18.

96.     Defendants never provided Plaintiff Coiscou a wage notice in conformity with the requirements of NYLL §195.

Fernando Molina a/k/a Jorge Luis Flores Larios (Molina)

(Unpaid Overtime, Spread of Hours Pay & Wage Notice Violations)

97.     Plaintiff Fernando Molina a/k/a Jorge Luis Flores Larios (Molina) was employed by Defendants from August 10, 2010 until October 14, 2012.

98.     From August 2010 until January 2011 Plaintiff Molina earned the minimum wage ($7.25/hour) as a forklift operator.   In approximately January 2011 Mr. Molina's regular rate was increased to $9.0 per hour.  In approximately March or April 2011 he was promoted to "Production Supervisor", and his regular rate was increased to $12.00/hour.  In September 2012 his title was changed to "Warehouse Manager" but he did not receive an increase in pay.

99.     During his employment with the Defendants Plaintiff Molina consistently worked a spread of hours in excess of 10.

100.     Defendants never paid Plaintiff Molina spread of hours pay as required by 12 NYCRR §§142-2.4 and 142-2.18.

101.     During his employment with the Defendants, Plaintiff Molina consistently worked in excess of 40 hours per week.

102.     Throughout the entire course of his employment with U.S. Nonwovens there were consistently one or two overtime hours "missing" from Mr. Molina's paycheck.

103.     Mr. Molina would regularly complain about the missing hours to his supervisor. Despite repeated complaints regarding the defendants failure to pay for all overtime hours worked, these conditions continued until the defendant's termination in October 2012.

- 17 -

104.    Plaintiff Molina cannot recall with precision the amount of overtime that remains unpaid.  However, the amount of overtime that is owed by Defendants to Plaintiff Molina is known to the Defendants and can be determined through an examination of the defendant's shift records, payroll records, and computerized timekeeping records.

105.    In addition, in December 2011 Plaintiff Molina worked 96 hours during one week. At the end of the week he was only paid for 70 hours.    He continued to complain about not being paid for this overtime until he was fired in October 2012.

106.    These 26 overtime hours earned in December 2011 are still unpaid.

107.    Defendants never provided Plaintiff Molina a wage notice in conformity with the requirements of NYLL §195.

<u>Siryi Nayrobik Melendez (Melendez)</u>

(Unpaid Overtime, Unpaid Straight Wages & Spread of Hours Pay)

108.    Plaintiff Melendez was employed as a worker at the Defendants' factory located in Brentwood, New York from on or about September 4, 2012 to September 18, 2012.   She packed containers of "wipes" that were coming off of the production line into boxes.

109.    Plaintiff Melendez' regular rate of pay for the entire course of her employment was $7.25/hour.

110.    Plaintiff Melendez' scheduled shift was from 4:30 PM-3:00 AM.

111.    Every day that the Plaintiff Melendez worked for the defendants, she worked a spread of hours of more than 10.

112.    During her first week she worked five days and approximately 50 hours.   She was only paid for 40 hours.   During her second week she worked five days and approximately 50 hours.   She was only paid for 30 hours.

113.    Although she complained to her supervisor, she was never paid for the 30 missing hours.  Approximately 10 of these hours were "regular hours", and 20 were "overtime hours."

114.    Defendants did not pay Plaintiff Melendez spread of hours pay as required by 12 NYCRR §§142-2.4 and 142-2.18.

115.    After two weeks, Plaintiff Melendez resigned.

116.    The precise amount of overtime and regular wages that are owed by Defendants to Plaintiff Melendez is known to the Defendants and can be determined through an examination of the defendant's shift records, payroll records, and computerized timekeeping records.

117.    Defendants never provided Plaintiff Melendez a wage notice in conformity with the requirements of NYLL §195.

<u>Rene Alberto Oliva (Oliva)</u>

(Unpaid Overtime, Delayed Payment of Overtime, and Spread of Hours Pay)

118.    Plaintiff Oliva was employed by the Defendants from on or about August 20, 2012 to November 2012.

119.    During the first two weeks of his employment, Plaintiff Oliva worked from approximately 4:00 PM until 5:00 AM the following morning.   During these two weeks Plaintiff Oliva's spread of hours was approximately 13.

120.    For the remainder of his employment, Plaintiff Oliva's scheduled shift was from 4:00 PM until 3:30 AM the following morning, and his spread of hours was approximately 10.5.

121.    During the entire course of his employment, Plaintiff Oliva's scheduled shift encompassed a spread of hours in excess of 10.

122.    During his employment with the Defendants, Plaintiff Oliva's regular rate was $7.25 per hour.

123.    Defendants did not pay Plaintiff Oliva spread of hours pay as required by 12 NYCRR §§142-2.4 and 142-2.18.

124.    During his employment with the Defendants, Plaintiff Oliva regularly worked in excess of 40 hours per week.

125.    Several times during the course of Mr. Oliva's employment with the plaintiffs there were overtime hours inexplicably missing from his paycheck.

126.    Mr. Oliva complained to Mike Ortiz, his manager.   Mike Ortiz had no explanation as to why this was happening, and just said "we'll put it in your check next week."

127.    The next week would come and hours would still be missing from the paycheck, and Mr. Ortiz would again say the same thing.

128.    These overtime payments were delayed for up to one month.

129.    Plaintiff Oliva cannot recall precisely the amount of overtime that was delayed. Plaintiff Oliva estimates that the defendants delayed in paying him between 5-10 hours of overtime during the course of his employment.

130.    The precise amount of overtime that was paid on a delayed basis, the length in delay of payment is known to the defendants.

131.    In addition, Plaintiff Oliva was not paid approximately 2 hours of overtime during the course of his employment with Defendants.

132.    Plaintiff cannot recall with precision the amount of overtime that remains unpaid. However, the amount of overtime that is owed by Defendants to Plaintiff Oliva is known to the Defendants and can be determined through an examination of the defendant's shift records, payroll records, and computerized timekeeping records.

133.     Defendants never provided Plaintiff Oliva a wage notice in conformity with the requirements of NYLL §195.

<u>Juan Flores-Larios (Flores-Larios)</u>

(Spread of Hours Pay & Wage Notice Violations)

134.     The Plaintiff Flores-Larios was employed at the defendant's warehouse as a fork lift operator and material handler from on or about May 7, 2012 through August or September of 2012.

135.     During the course of his employment with U.S. Nonwovens, Plaintiff Flores-Larios' regular rate was $7.25 per hour.

136.     During his employment with the Defendants, Plaintiff Flores-Larios worked a spread of hours exceeding 10.

137.     Defendants did not pay Plaintiff Flores-Larios' spread of hours pay as required by 12 NYCRR §§142-2.4 and 142-2.18.

138.     Defendants never provided Plaintiff Flores-Larios a wage notice in conformity with the requirements of NYLL §195.

<u>Ramiro Cordova (Cordova)</u>

(Overtime, Delay in Payment of Overtime and Wage Notice Violations)

139.    Ramiro Cordova was employed for U.S. Nonwovens from May 23, 2001 until January 11, 2013.

140.    He was initially hired as a Machine Operator, but worked in various capacities until his termination on January 11, 2013.

141.    From the very beginning of his employment in 2001 until January 11, 2013, regardless of the method used by U.S. Nonwovens to record working hours, Ramiro Cordova heard complaints from co-workers regarding overtime hours missing from their paychecks.

142.    Plaintiff Cordova was often was missing one or two hours of overtime from his paychecks.

143.    Upon complaining to his supervisors, he was often told "Malik [in payroll] doesn't have time."

144.    Once Plaintiff Cordova went directly to "Malik" and told him "I'm not so new here that you can be doing this to me."   The next week he was paid the hours that had been missing from his check during the prior pay-period.

145.    In 2008 Mr. Cordova worked 57 ½ hours in one week.   He was only paid for 40 hours.

146.    When he complained to Rafael Bobea (his supervisor), Mr. Bobea responded "Man does not live by bread alone."

147.    Despite repeated complaints to his supervisor he has not been paid for this overtime.

148.    In  2010 he was again missing three overtime hours from his paycheck.

149. He made repeated complaints to the night manager, Mike Ortiz, who responded that he would bring it to Shervin Mehdizadeh's attention, but that he "wasn't sure" whether Shervin Mehdizadeh would "approve" the overtime or not.

150. This overtime was also never paid. The excuse given by Mike Ortiz was that the request to be paid overtime was made "too late."

151. Supervisors at U.S. Nonwovens often blamed the missing overtime hours on employees, saying that they had not "punched" correctly. However, Ramiro Cordova heard complaints regarding missing overtime hours regardless of the time clock or time recording method used for the entire twelve year period that he was employed by US Nonwovens.

152. Plaintiff cannot recall with precision the amount of overtime that remains unpaid, or the amount of overtime wages that were unreasonably delayed. However, this information is known to the Defendants and can be determined through an examination of the defendant's shift records, payroll records, and computerized timekeeping records.

153. Defendants never provided Plaintiff Cordova a wage notice in conformity with the requirements of NYLL §195.

<u>Daniel Sante</u>

(Spread of Hours Premium)

154. Mr. Sante has worked for U.S. Nonwovens in various capacities from August 2010 until the present time.

155. From August 2010 until April 2011 Mr. Sante earned $7.25 per hour. During that time he regularly worked a spread of hours exceeding 10.

156. He was not paid the spread of hours premium.

157.    Since the commencement of this lawsuit, the factory has reduced the spread of hours worked by employees so that the spread of hours does not exceed 10.

FIRST CAUSE OF ACTION

Fair Labor Standards Act — Untimely Payment of Overtime Wages

(On behalf of Plaintiffs *Mendez, Oliva, Cordova* and the FLSA Collective)

158.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

159.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. § 201 et seq., and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the FLSA Collective.

160.    Defendants failed to pay Plaintiffs and the FLSA Collective overtime wages to which they are entitled under the FLSA in a timely manner consistent with the FLSA and the supporting regulations, and more specifically 29 C.F.R. § 778.106.

161.    Through their knowing or intentional failure to pay Plaintiff and the members of the FLSA Collective overtime wages in a timely manner, Defendants have willfully violated the Fair Labor Standards Act.

162.    Due to Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover from Defendants liquidated damages for all wages not paid in a timely manner, as provided for by FLSA, 29 U.S.C. § 216, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

SECOND CAUSE OF ACTION

Fair Labor Standards Act - Overtime Wages

(Brought on behalf of Plaintiffs *Mendez, Molina, Melendez, Oliva, Cordova*

and the FLSA Collective)

163.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

164.     The overtime wage provisions set forth in the FLSA, 29 U.S.C. § 201 et seq., and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the FLSA Collective.

165.     Defendants have failed to pay Plaintiffs and the FLSA Collective overtime wages for all of the hours they worked in excess of 40 hours in a work week.

166.     As a result of Defendants' unlawful acts, Plaintiffs and the FLSA Collective have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

167.     Defendants' unlawful conduct, as described in this Class Action Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Class Action Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

168.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

THIRD CAUSE OF ACTION

New York Labor Law Article 19— Unpaid Overtime

(Brought on behalf of Plaintiffs *Mendez, Molina, Melendez, Oliva, Cordova*

and the members of a Rule 23 Class)

169.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

170.     The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiffs and the members of the Rule 23 Class.

171.     Defendants have failed to pay Plaintiffs and the members of the Rule 23 Class overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

172.     Through their knowing or intentional failure to pay Plaintiff and the members of the Rule 23 Class overtime wages for hours worked in excess of 40 hours per week, Defendants have willfully violated the NYLL Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

173.     Due to Defendants' violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, as provided for by NYLL Article 6, § 198, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## FOURTH CAUSE OF ACTION

### New York Labor Law Article 19— Untimely Payment of Wages

**(Brought on behalf of Plaintiffs *Mendez, Oliva, Cordova* and the members of a Rule 23 Class)**

174.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

175.     The wage provisions of Article 6 of the NYLL, specifically NYLL §191 and its supporting regulations apply to Defendants, and protect Plaintiffs and the members of the Rule 23 Class.

176.     Defendants have repeatedly failed to pay Plaintiffs and the members of the Rule 23 Class overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations in a timely manner consistent with NYLL §191.

177.     Through their knowing or intentional failure to pay Plaintiff and the members of the Rule 23 Class overtime wages in a timely manner, Defendants have willfully violated the NYLL Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

178.     Due to Defendants' violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendants liquidated damages for all wages not paid in a timely manner, as provided for by NYLL Article 6, § 198, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

FIFTH CAUSE OF ACTION

New York Labor Law — Spread of Hours Pay

(Brought on behalf of Plaintiffs *Mendez, Coiscou, Molina, Melendez, Oliva, Flores-Larios, Sante*

and the members of a Rule 23 Class)

179.    Plaintiffs reallege and incorporate by reference all allegations in all preceding

paragraphs.

180.    Defendants have willfully failed to pay Plaintiffs and the members of the Rule 23

Class additional compensation of one hour's pay at the minimum hourly wage rate for each day

during which the spread of hours exceeded 10.

181.    By Defendants' failure to pay Plaintiff and the members of the Rule 23 Class

spread of hours pay, Defendants have willfully violated the NYLL Article 19, §§ 650 et seq. and

the supporting New York State Department of Labor regulations specifically 12 NYCRR §§142-

2.4 and 142-2.18.

182.    Due to Defendants' violations of the NYLL, Plaintiff and the members of the Rule

23 Class are entitled to recover from Defendants their unpaid wages, liquidated damages, as

provided for by NYLL Article 6, § 198, reasonable attorneys' fees, costs, and pre-judgment and

post-judgment interest.

SIXTH CAUSE OF ACTION

New York Labor Law —Wage Notice Violations

(Brought on behalf of Plaintiffs *Mendez, Coiscou, Molina, Melendez, Oliva, Flores-Larios,*

*Cordova,* and the members of a Rule 23 Class)

183.    Plaintiffs reallege and incorporate by reference all allegations in all preceding

paragraphs.

- 28 -

184.    The notice provisions of the Wage Theft Prevention Act, Article 6 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiffs and the members of the Rule 23 Class.

185.    NYLL §195-1(a) requires an employer to "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article…"

186.    Defendants have failed to comply with the notice provisions of the Wage Theft Prevention Act, and more specifically NYLL §195-1.

187.    Due to Defendants' violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendants the sum of $50 per week, up to a total of $2,500 per employee, as provided for by NYLL Article 6, § 198-1-b.

SEVENTH CAUSE OF ACTION

New York State Common Law Breach of Contract

(Brought on behalf of Plaintiff *Melendez* and the members of a Rule 23 Class)

188.    Plaintiffs reallege and incorporate by reference each allegation contained in the paragraphs above, and by reference replead and incorporate them as though fully set forth here.

189.    Plaintiffs and Defendants had a verbal employment contract.

190.    Specifically, Defendants agreed to pay Plaintiffs a for the first 40 hours worked at the regular rate of pay, and all hours worked in excess of 40 hours per week at the overtime rate.

191.    Plaintiffs assert this Seventh Cause of Action to the extent that it is not duplicative of relief available to the plaintiffs under the FLSA or the NYLL, in that this cause of action seeks unpaid straight wages.

192.    By failing to pay Plaintiffs for all non-overtime hours worked at the agreed upon rates,  the Defendants breached their contract of employment with Plaintiffs.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situate persons, respectfully request that this Court grant the following relief:

a)    That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all present and former non-exempt factory workers who have been employed by U.S. Nonwovens in the State of New York at any time during the six years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice; Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

b)    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c)    Designation of Plaintiffs as representatives of the Rule 23 Class and counsel of record as Class Counsel;

d)    Issuance of a declaratory judgment that the practices complained of in this Class Action Complaint are unlawful under the FLSA, 29 U.S.C. 201 et seq.;

e)      Issuance of a declaratory judgment that the practices complained of in this Class Action Complaint are unlawful under NYLL Article 6, §§ 190 et seq., NYLL Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations;

f)      Unpaid overtime pay and an amount equal to unpaid overtime as liquidated damages under the FLSA;

g)      Liquidated damages permitted by law pursuant to the FLSA for untimely payment of wages;

h)      Unpaid overtime pay, spread of hours pay and 100% liquidated damages permitted by law pursuant to the NYLL;

i)      Liquidated damages permitted by law pursuant to the NYLL for untimely payment of wages;

j)      Civil damages in the amount of $50 per week per employee for each violation of the notice provisions of the Wage Theft Prevention Act, up to a total of $2,500.00 per employee.

k)      An injunction requiring Defendants to pay all statutorily required wages and cease the  unlawful activity described herein pursuant to the NYLL;

l)      Reasonable attorneys' fees and costs of the action; and

m)      Such other relief as this Court shall deem just and proper.

Dated: Glen Cove, New York
       March 12, 2014

Respectfully Submitted,
STEVEN J. MOSER, P.C.

/s/  Steven John Moser
3 School Street, Suite 207B
Glen Cove, New York  11542
(516) 671-1150 ● F (516) 882-5420
stevenjmoserpc@gmail.com

- 31 -