UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Efrain Danilo Mendez a/k/a Efrain D. Mendez-Rivera, Aldraily Alberto Coiscou, Fernando Molina a/k/a Jorge Luis Flores Larios, Siryi Nayrobik Melendez, Rene Alexander Oliva, Juan Flores-Larios, Ramiro Cordova, and Daniel Sante, individually and on behalf of all others similarly situated, | Case No.: 12-CV-5583 (ADS) (SIL) |

Plaintiffs,

*-against-*

U.S. Nonwovens Corp., Samuel Mehdizadeh a/k/a
Solomon Mehdizadeh,  Shervin Mehdizadeh Mehdizadeh,
and Rody Mehdizadeh,

Defendants.

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION PURSUANT TO Fed. R. Civ. P. 23

Steven John Moser (SM1133)
STEVEN J. MOSER, P.C.
3 School Street, Suite 207B
Glen Cove, New York  11542
(516) 671-1150
F (516) 882-5420
smoser@moseremploymentlaw.com

*Attorneys for Plaintiffs and the FLSA Collective*

# TABLE OF CONTENTS

PROCEDURAL HISTORY .................................................................................................... 1

INTRODUCTION................................................................................................................... 3

CLASS DEFINITION ........................................................................................................... 4

ARGUMENT ......................................................................................................................... 4

I.   THE FACTS SHOW THAT US NONWOVENS' POLICIES VIOLATED NEW
     YORK LAW REGARDING THE PAYMENT OF THE SPREAD OF HOURS
     PREMIUM, THE TIMELY PAYMENT OF WAGES, AND FAILED TO
     COMPENSATE EMPLOYEES FOR ALL STRAIGHT/OVERTIME HOURS
     WORKED............................................................................................................... 4

     a.   The Class is Entitled to Spread of Hours Pay (7th Cause of Action) ..................... 4

          (i)   Under the N.Y. LAB. LAW, an employer must pay an employee who works
                more than ten hours in one day an additional hour at the minimum wage .... 4

          (ii) US Nonwovens had a Policy of Not Paying the Spread of Hours Premium. ... 5

     b.   The Defendants' Policies Resulted in Widespread Violations of the Timely
          Payment Provisions of  N.Y. LAB. LAW § 191 (4th Cause of Action) ................. 7

          (i)   New York Law requires that "[a] manual worker shall be paid weekly and
                not later than seven calendar days after the end of the week in which the
                wages are earned." N.Y. Lab. Law § 191............................................................. 7

          (ii) Defendants' Policies of failing to verify hours worked prior to generating
                paychecks, and only addressing payment issues after employees complained
                that they had not been paid for all hours worked resulted in the delayed
                payment of wages by US Nonwovens under N.Y. Lab. Law § 191................... 8

     c.   The Defendant's policies with regard to (1) an automatic ½ hour meal deduction,
          and (2) refusal to pay employees for hours recorded as having been worked, and
          instead paying employees based upon their scheduled shifts resulted in
          widespread failure to pay overtime and/or straight hours (3rd Cause of Action
          for Unpaid Overtime and 7th Cause of Action for Unpaid Straight Hours)....... 10

          (i)   The New York Labor Law requires payment for all hours worked, all hours
                required to be "on duty" and for meal periods of less than ½ hour. ............. 10

          (ii) US Nonwovens had a uniform policy of (1) disregarding employee's time
                clock records (2) deducting a ½ hour for meal periods that lasted less than 20
                minutes (3) paying employees only for shift hours and (4) refusing to
                compensate for pre-shift work ........................................................................ 12

**II.** **THE SECOND CIRCUIT HAS EMPHASIZED THAT RULE 23 IS TO BE GIVEN A "LIBERAL" RATHER THAN A "RESTRICTIVE" CONSTRUCTION** ........... 16

**III.** **PLAINTIFFS HAVE ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE THE IMPLIED REQUIREMENT OF ASCERTAINABILITY, AS WELL AS THE FOUR BASIC ELEMENTS OF A CLASS ACTION UNDER FED. R. CIV. P. 23(A) – NUMEROSITY, COMMONALITY, TYPICALITY, AND ADEQUACY OF REPRESENTATION** .......................................................................... 17

    **a. Ascertainability** ........................................................................ 17

    **b. Numerosity** ............................................................................... 18

    **c. Commonality** ............................................................................ 18

    **d. Typicality** ................................................................................. 20

    **e. Adequacy** .................................................................................. 20

**V.** **PLAINTIFFS HAVE ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE RULE 23(B)'S REQUIREMENTS OF PREDOMINANCE AND SUPERIORITY** ........................................................................................... 21

    **a. Predominance** ........................................................................... 21

        **(i) Where the central issue is whether the Defendant's policies complied with the New York Labor Law, predominance is satisfied.** ........................................... 22

        **(ii) In the wage and hour context, individualized calculations of damages do not defeat the predominance requirement.** ............................................... 23

    **b. Superiority** ............................................................................... 24

**VI.** **PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL UNDER RULE 23(G)** ................................................................................. 24

**CONCLUSION** ........................................................................................ 25

# TABLE OF AUTHORITIES

**Supreme Court Opinions**

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S. Ct. 1187 (1946) .............................. 20

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013) .............................. 16, 23

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) ............. 16, 23

**Second Circuit Opinions**

*Ackerman v. Coca-Cola Co.*, No. 09 CV 395 (DLI)(RML), 2013 U.S. Dist. LEXIS 184232, 2013 WL 7044866 (E.D.N.Y. July 17, 2013) ...................................................................... 17

*Butto v. Collecto Inc.*, 290 F.R.D. 372 (E.D.N.Y. 2013) ............................................................ 16

*Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943 (2d Cir. 1959) ............................................. 19

*Colozzi v. St. Joseph's Hosp. Health Ctr.*, 275 F.R.D. 75 (N.D.N.Y. 2011) ............................... 17

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ..................................... 18

*Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194 (E.D.N.Y. 2005) ............... 16

*Dial Corp. v. News Corp.*, No. 13cv6802, 2015 U.S. Dist. LEXIS 79686 (S.D.N.Y. June 18, 2015) ......................................................................................................................... 19, 20

*Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327 (S.D.N.Y. 2005) ....................................... 5

*Ellis v. Common Wealth Worldwide Chaueffuered Transp. of NY, LLC*, No. 10-CV-1741 (DLI)(JO), 2012 U.S. Dist. LEXIS 40288 (E.D.N.Y. Mar. 23, 2012) ......................................... 4

*Fermin v. Las Delicias Peruanas Rest., Inc.*, No. 14-CV-0559 (RRM) (VMS), 2015 U.S. Dist. LEXIS 34457 (E.D.N.Y. Feb. 27, 2015) ................................................................................ 4

*Flores v. Anjost Corp.*, 284 F.R.D. 112 (S.D.N.Y. 2012) ......................................... 8, 17, 18, 22

*Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176 (S.D.N.Y. 2005) ................................................... 21

*Garcia v. Pancho Villa's of Huntington Vill.*, 281 F.R.D. 100 (E.D.N.Y. 2011) ........................ 22

*Gortat v. Capala Bros.*, 257 F.R.D. 353 (E.D.N.Y. 2009) ........................................................ 16

*Guadalupe v. Tri-State Empl.*, No. 10 CV 3840 (NG)(CLP), 2013 U.S. Dist. LEXIS 123951 (E.D.N.Y. July 31, 2013) ............................................................................................................ 4

*Guan Ming Lin v. Benihana N.Y. Corp.*, No. 10 Civ. 1335 (RA) (JCF), 2012 U.S. Dist. LEXIS 186526, 2012 WL 7620734 (S.D.N.Y. Oct. 23, 2012) ............................................................. 22

*Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG)(RER), 2008 U.S. Dist. LEXIS 15821, 2008 WL 597186 (E.D.N.Y. Mar. 2, 2008) ............................................................................................. 23

*He v. Home on 8th Corp.*, No. 09 Civ. 5630 (GBD), 2014 U.S. Dist. LEXIS 114605, 2014 WL 3974670 (S.D.N.Y. Aug. 13, 2014) ........................................................................................ 12

*In re Cablevision*, No. 10-CV-4992(JS)(AKT), 2014 U.S. Dist. LEXIS 44983 (E.D.N.Y. Mar. 31, 2014) ............................................................................................................................... 24

*In re Gentiva*, 281 F.R.D. 108 (E.D.N.Y. 2012) ...................................................................... 24

*In re Rezulin Prods. Liab. Litig.*, 224 F.R.D. 346 (S.D.N.Y. 2004) ............................................ 24

*Jacob v. Duane Reade, Inc.*, 602 F. App'x 3 (2d Cir. 2015) ...................................................... 23

*Keun-Jae Moon v. Joon Gab Kwon*, 248 F. Supp. 2d 201 (S.D.N.Y. 2002) .............................. 11

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011) ...................................................... 19

*Loftin v. Bande* (*In re Flag Telecom Holdings, Ltd. Sec. Litig.*), 574 F.3d 29 (2d Cir. 2009) .... 20

*Luo v. L&S Acupuncture, P.C.*, No. 14 Civ. 1003 (BMC), 2015 U.S. Dist. LEXIS 33102
(E.D.N.Y. Jan. 23, 2015) ............................................................................................................ 5

*Marisol A. by Forbes v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ................................................ 16

*Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442 (E.D.N.Y. 2014) ...................................... 5

*Morris v. Alle Processing Corp.*, No. 08-CV-4874 (JMA), 2013 U.S. Dist. LEXIS 64534, 2013
WL 1880919 (E.D.N.Y. May 6, 2013) ............................................................................ 22, 23, 24

*Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330 (S.D.N.Y. 2004) .............................................. 18

*Owens v. Local No. 169*, 971 F.2d 347 (2d Cir. 1992) .............................................................. 11

*Pagan v. Abbott Labs.*, 287 F.R.D. 139 (E.D.N.Y. 2012) .......................................................... 16

*Pecere v. Blue Cross & Blue Shield*, 194 F.R.D. 66 (E.D.N.Y. 2000) ........................................ 18

*Perez v. Allstate Ins. Co.*, No. 11-CV-1812 (JFB)(AKT), 2014 U.S. Dist. LEXIS 130214, 2014
WL 4635745 (E.D.N.Y. Sept. 16, 2014) .............................................................................. 18, 23

*Roach v. T.L. Cannon Corp.*, 778 F.3d 401 (2d Cir. 2015) ........................................................ 16

*Roach v. T.L. Cannon Corp.*, Civil Action No. 3:10-CV-0591 (TJM/DEP), 2013 U.S. Dist.
LEXIS 47268, 2013 WL 1316397 (N.D.N.Y. Mar. 4, 2013) ................................................ 17, 22

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ...................................................................... 20

*Saca v. Dav-El Reservation Sys.*, 600 F. Supp. 2d 483 (E.D.N.Y. 2009) .................................... 5

*Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114 (S.D.N.Y. 2014) ............................................ 24

*Sec. Servs.*, 61 F. Supp. 3d 336 (S.D.N.Y. 2014) ...................................................................... 23

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 293 F.R.D. 287 (E.D.N.Y. 2013) ........... 17

*Shim v. Millennium Group*, No. CV-08-4022 (FB)(VVP), 2009 U.S. Dist. LEXIS 124107
(E.D.N.Y. Oct. 2, 2009) ............................................................................................................ 11

*Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457 (E.D.N.Y. 2011) .................................... 4

*Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323 (ALC) (AJP), 2013 U.S. Dist. LEXIS
36357, 2013 WL 1040052 (S.D.N.Y. Mar. 15, 2013) .......................................................... 18, 22

*Spread Enters. v. First Data Merch. Servs. Corp.*, 298 F.R.D. 54 (E.D.N.Y. 2014) ................. 18

*Stinson v. City of N.Y.*, 282 F.R.D. 360 (S.D.N.Y. 2012) ............................................................ 17

*Suvill v. Bogopa Serv. Corp.*, No. 11-cv-3372 (SLT) (RER), 2014 U.S. Dist. LEXIS 141095
(E.D.N.Y. Sept. 30, 2014) .......................................................................................................... 17

*Tackie v. Keff Enters.*, No. 14-CV-2074 (JPO), 2014 U.S. Dist. LEXIS 130148 (S.D.N.Y. Sept.
16, 2014) .................................................................................................................................... 7

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196 (2d Cir. 2008) ................................................................................................................ 16

*Tiro v. Pub. House Invs., L.L.C.*, 288 F.R.D. 272 (S.D.N.Y. 2012) ........................... 23

*Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476 (S.D.N.Y. 2012) ........................ 8

*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193 (S.D.N.Y. 2011) ........................... 22

*Yu Y. Ho v. Sim Enters.*, No. 11 Civ. 2855 (PKC), 2014 U.S. Dist. LEXIS 66408 (S.D.N.Y. May 13, 2014) ................................................................................................................ 5

## Federal Court Opinions

*Glenn L. Martin Neb. Co. v. Culkin*, 197 F.2d 981 (8th Cir. 1952) ........................... 11

## United States Code

29 U.S.C. § 201 (2012) .............................................................................................. 1

## State Court Opinions

*Bynog v. Cipriani Group, Inc.*, 298 A.D.2d 164, 748 N.Y.S.2d 9 (N.Y. App. Div. 2002) ........... 8

## State Statutes

N.Y. Lab. Law § 2 .................................................................................................... 11

N.Y. Lab. Law § 190 ................................................................................................ 7

N.Y. Lab. Law § 191 ............................................................................................ 7, 8, 9, 19, 23

N.Y. Lab. Law § 162(1) ............................................................................................ 11

## Rules

Fed. R. Civ. P. 23 ...................................................................................................... 1

Fed. R. Civ. P. 23(A) .............................................................................................. 17

Fed. R. Civ. P. 23(a) ............................................................................................... 17

Fed. R. Civ. P. 23(a)(2) ........................................................................................... 19

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 24

## Other

29 C.F.R. § 785.18 (2013) ........................................................................................ 12

29 C.F.R. § 778.223 (2013) ...................................................................................... 11

## PROCEDURAL HISTORY

Plaintiffs Efrain Danilo Mendez a/k/a Efrain D. Mendez-Rivera, Aldraily Alberto Coiscou, Fernando Molina a/k/a Jorge Luis Flores Larios, Siryi Nayrobik Melendez, Rene Alexander Oliva, Juan Flores-Larios, Ramiro Cordova, and Daniel Sante and opt-in Plaintiffs (collectively referenced hereinafter as "Plaintiffs") submit this memorandum in support of their motion for class certification of certain of their state law claims under Fed. R. Civ. P. 23 ("Rule 23".)

On November 13, 2012, Plaintiffs filed this Action on behalf of themselves and others similarly situated.  Defendants have vigorously defended all claims, including opposing plaintiffs' motions for conditional certification (ECF No. 22) and motion to amend the complaint (ECF 18).

After conditional certification of Plaintiff's Federal Claims under the FLSA (ECF No 38, 11/15/2013) was granted, the Defendants provided a list of all non-exempt workers employed by U.S. Nonwovens in the State of New York from November 14, 2009 until November 15, 2013. A copy of the FLSA class mailing list, which contains 1,238 members, is annexed to the Declaration of Steven J. Moser as Exhibit 2.  Aside from the 7 named plaintiffs, 78 individuals filed "opt-in" forms (*See* ECF Nos. 72-74, 79-97, 101-113, 115-153, and 155-159).

On March 5, 2014 the Court granted Plaintiffs' Motion to Amend the Complaint.   ECF No. 67.   The operative pleading, Plaintiffs' First Amended Complaint, was filed on March 12, 2014.  ECF No. 70. The First Amended Complaint seeks to recover unpaid wages and liquidated damages for delayed wages from Defendants U.S. Nonwovens Corp., Samuel Mehdizadeh a/k/a Solomon Mehdizadeh, Shervin Mehdizadeh Mehdizadeh, and Rody Mehdizadeh (collectively referenced hereinafter as "Defendants" or "US Nonwovens") pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 (2012) *et seq*. (FLSA) and New York Labor Law (N.Y. Lab. Law)

1

Specifically, Plaintiffs assert four claims under the New York Labor Law: (1) US Nonwovens failed to pay its non-exempt employees a spread of hours premium in contravention of N.Y. Comp. Codes R. & Regs. tit. 12 §§ 142-2.4 and 142-2.18 (5th Cause of Action); (2) Defendants failed to pay its employees for all overtime hours worked in contravention of N.Y. Lab. Law §§ 198 and 663 (3rd Cause of Action); (3) Defendants failed to timely pay wages to its non-exempt workers in contravention of N.Y. Lab. Law § 191 (4th Cause of Action); (4) Defendants failed to provide wage notices under N.Y. Lab. Law § 195 (6th Cause of Action); and (5) defendants failed to pay the plaintiffs agreed upon wages (Common Law Breach of Contract, 7th Cause of Action).

By this Motion, Plaintiffs seek Class Certification of their *5th Cause of Action* (for spread of hours pay), *4th Cause of Action* (untimely payment of wages); *3rd Cause of Action* (for failure to pay overtime) and *7th Cause of Action* (for failure to pay straight wages).

**Plaintiffs respectfully request that the Court enter an Order**: (1) certifying the 3rd, 4th, 5th and 7th claims for relief as class actions pursuant to Rule 23 on behalf of all non-exempt workers employed by U.S. Nonwovens in the State of New York at any time from November 14, 2006 until the present; (2) appointing Plaintiffs Efrain Danilo Mendez a/k/a Efrain D. Mendez-Rivera, Aldraily Alberto Coiscou, Fernando Molina a/k/a Jorge Luis Flores Larios, Siryi Nayrobik Melendez, Rene Alexander Oliva, Juan Flores-Larios, Ramiro Cordova, and Daniel Sante as Class Representatives; (3) appointing Steven J. Moser, P.C. as Class Counsel; (4) directing the Plaintiffs to submit a proposed notice consistent with the Court's Order regarding certification and (5) directing the Defendants to provide a computer readable file containing the following information for all class members within 20 days of this Court's Order: (i) name (ii) last known address, (iii) telephone number, (iv) dates of employment with US Nonwovens, and (v) regular rate(s) of pay during employment with US Nonwovens.

## INTRODUCTION

U.S. Nonwovens, is owned and operated by the Samuel Mehdizadeh and his sons Shervin Mehdizadeh and Rody Mehdizadeh.   The Mehdizadeh "built" US Nonwovens.  (Samuel M. Dep. at 107)

US Nonwovens manufactures household cleaning products, disposable cleaning wipes, and other personal care products at three locations in Brentwood, New York.  The company employs a work force of approximately 600, most of whom are immigrants who do not speak English and are paid at the New York State minimum wage, working long hours in factories that lack proper heating and cooling infrastructure as well as adequate lavatories.  Workers at U.S. Nonwovens work on a shift rotation.  In order to meet demand, employees are often divided into two shifts, a day shift and a night shift, each lasting twelve hours. (Shervin M. Dep.  46:3-9; 75:9 -14; Awan Dep. 74:14-74:18; Cordova Decl. ¶¶ 5, 17; Mendez-Rivera Decl. ¶11; Molina Decl.¶ 9; Argueta Decl. ¶ 8; Lazo Decl. ¶ 7; Romero Decl. ¶6; De Zalaya Decl. ¶ 7.)

During the winter, workers complain of conditions so cold that they are forced to wear their winter coats underneath their uniforms and during the summer, workers are forced to endure stifling temperatures created by multiple powerful heat-radiating machines and the lack of any air conditioning or adequate ventilation.   (Alva Decl. ¶16; Del Cid Decl. ¶12; Cuadros Decl. ¶8-9; Mendez-Rivera Decl. ¶ 18; Ulloa Decl. ¶11-12 Vasquez Decl. ¶15.)  Despite the working conditions and long hours, employees were deprived of spread of hours pay.   In addition, the Defendants routinely deprived their non-exempt employees of straight and/or overtime wages, and delayed the payment of their wages.

The evidence submitted illustrates that during the Covered Period (from November 14, 2006 to the present), Defendants (1) failed to pay the spread-of-hours premium; (2) failed to timely pay wages; (3) failed to pay overtime and straight wages.

## CLASS DEFINITION

The proposed class consists of "all non-exempt workers employed by US Nonwovens within the state of New York at any time from November 14, 2006 to the present time."

## ARGUMENT

**I.    THE FACTS SHOW THAT US NONWOVENS' POLICIES VIOLATED NEW YORK LAW REGARDING THE PAYMENT OF THE SPREAD OF HOURS PREMIUM, THE TIMELY PAYMENT OF WAGES, AND FAILED TO COMPENSATE EMPLOYEES FOR ALL STRAIGHT/OVERTIME HOURS WORKED.**

**a.    The Class is Entitled to Spread of Hours Pay (7th Cause of Action)**

**(i)    Under the N.Y. LAB. LAW, an employer must pay an employee who works more than ten hours in one day an additional hour at the minimum wage**

The New York State Department of Labor's implementing regulations explicitly state that "an employee shall receive one hour's pay at the basic minimum hourly wage rate…for any day in which [] the spread of hours exceeds 10 hours. 12 NYCRR § 142-2.   "The spread of hours is the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off duty."  12 NYCRR § 142-2.

It is well settled that all hourly employees paid at the minimum hourly wage rate, who work a spread of hours of greater than 10, are entitled to the spread of hours premium.  *See Fermin v. Las Delicias Peruanas Rest., Inc.,* No. 14-CV-0559 (RRM) (VMS), 2015 U.S. Dist. LEXIS 34457, at *57 (E.D.N.Y. Feb. 27, 2015); *Guadalupe v. Tri-State Empl.*, No. 10 CV 3840 (NG)(CLP), 2013 U.S. Dist. LEXIS 123951, at *37-38 (E.D.N.Y. July 31, 2013); *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 47 (E.D.N.Y. 2011)3 (E.D.N.Y. 2011); *Ellis v. Common Wealth Worldwide Chaueffuered Transp. of NY, LLC*, No. 10-CV-1741 (DLI)(JO), 2012 U.S. Dist. LEXIS 40288, at *21, *162 (E.D.N.Y. Mar. 23, 2012).

In addition, there is significant authority within the Second Circuit District Courts for awarding spread of hours pay to workers earning above the minimum wage.

Judge Sand, in an early decision, granted spread of hours pay to workers earning above the minimum wage. *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 339 (S.D.N.Y. 2005). Judge Sand's interpretation continues to be followed. In a recent decision, Judge Cogan awarded spread of hours pay to an employee who earned between $12.07 and 24.38 per hour. *Luo v. L&S Acupuncture, P.C., No.* 14 Civ. 1003 (BMC), 2015 U.S. Dist. LEXIS 33102, at *21 (E.D.N.Y. Jan. 23, 2015) (Cogan, J.). Other Courts have not explicitly required that employee earn the minimum wage to be entitled to spread of hours pay. *See e.g. Yu Y. Ho v. Sim Enters.*, No. 11 Civ. 2855 (PKC), 2014 U.S. Dist. LEXIS 66408, at *22 (S.D.N.Y. May 13, 2014) Wage & Hour Cas. 2d (BNA) 1728 (S.D.N.Y. May 13, 2014)(Castel, J.)("New York law requires employers to pay covered employees an extra hour's compensation at the minimum wage rate for days on which they worked more than ten hours"); *Saca v. Dav-El Reservation Sys.*, 600 F. Supp. 2d 483, 487 (E.D.N.Y. 2009) (Mauskopf, J.) (denying Defendant's motion to dismiss Plaintiff's spread of hours claim, even though employee earned significantly above the minimum wage); *Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 452 (E.D.N.Y. 2014) (Spatt, J.) ("Under the N.Y. LAB. LAW, an employer must pay an employee who works more than ten hours in one day an additional hour at the minimum wage.").

### (ii) US Nonwovens had a Policy of <u>Not Paying</u> the Spread of Hours Premium.

Defendants did not pay employees who worked a spread-of hours greater than ten the spread-of-hours premium as required. (R. Mehdizadeh Dep. 50:8-15; Shervin Dep. 45:8 – 46:2, 75:15-75:25; Montanez Decl. ¶ 27.) Out of the entire workforce at US Nonwovens, the majority worked in the factory. (R. Mehdizadeh Dep. 27:21-28:20; Awan Dep. 11:3 - 11:8, 36:13-36:20, 37:9 - 37:16; Shervin Dep. 45:12-17; Muido Decl. ¶6.) The majority of whom, earn the

5

minimum wage. (Awan 37:17-38:21, 39:4 - 39:25; Samuel Dep. 53:7-22; Shervin Dep. 33:4-21, 45:18 - 46:2; Amaya Decl. ¶7-8; Del Cid Decl. ¶7; Muido Decl. ¶33; Sante Decl ¶7.)  Shervin Mehdizadeh estimated that "about 80 percent" earn just the minimum wage and at least 50 workers worked shifts longer than ten hours. (Shervin Dep. 45:18-46:2; 75:19-23.)  In their response to interrogatories, Defendants admitted that "at least forty individuals had (during the relevant time period) worked a spread of hours in excess of ten in at least one day and had not been paid a spread of hours premium for such day....[and] to the extent the Named Plaintiffs worked a spread of hours in excess of ten in at least one day prior to the commencement of this lawsuit, Defendants do not believe that such Named Plaintiffs were paid a spread of hours premium for such day." (Def. Suppl. Resp. Interrog. 16 and 17.)  When asked about his obligation to pay the spread-of-hours premium, Defendant Shervin Mehdizadeh admitted that U.S. Nonwovens "never knew about it" before November 2012. (Shervin Dep. 48: 6 – 11.)  Further, Defendant Rody Mehdizadeh similarly testified that although the pay practices of U.S. Nonwovens were "100 percent" compliant with the law, the first time that anyone at U.S. Nonwovens became aware of the obligation to pay the spread-of-hours premium was through the instant lawsuit. (R. Mehdizadeh Dep. 31:4-17; 30:3-6.) Defendant Rody Mehdizadeh further admitted that before the instant lawsuit was commenced, U.S. Nonwovens did not pay the spread of hours premium. (*Id*. at 50:8-15.)

US Nonwovens' payroll system was not even programmed to account for employees' spread of hours pay. (Muido Decl. ¶33; Awan Dep.  61:9-63:16.)  Only after U.S. Nonwovens became aware of the lawsuit did Malik Awan, the person in charge of payroll at U.S. Nonwovens, begin "working with ADP" to "implement [the spread-of-hours premium] in the system." (Awan Dep. 62:8-21.)  Defendants had a uniform practice of failing to pay the spread-

of-hours premium prior to the suit and it is unclear from the Defendant's depositions as to when the spread-of-hours premium was actually implemented after Defendants learned of their obligation. (*See* R. Mehdizadeh Dep. 50:23-52:11; Shervin Dep. 48:12-49:14; Awan Dep. 62:15-64:6.) .   However,  the payroll records obtained from former employees reveal that the defendants disregarded their obligation to pay the spread of hours premium even after they knew of their obligation to pay it.   A pay stub from February 2013 for class member Junior Euceda is attached as Exhibit 50 to the declaration of Steven John Moser.   During this particular week, Mr. Euceda worked a total of 71 hours.   He also earned the minimum wage.   Yet, he did not receive any spread of hours pay.   Needless to say, it is mathematically impossible that he did not work more than 10 hours on at least one day for this particular week.   Similarly, pay stubs from class member Walter E. Yanez for the periods ending April 7, 2013 and June 16, 2013 show that he worked 65.5 and 63 hours, respectively.   Again, assuming that the defendants did not disobey New York's one-day-rest-in-seven law, it is mathematically impossible that Mr. Yanez did not work more than 10 hours on at least one day for each of these pay periods.

### b.  The Defendants' Policies Resulted in Widespread Violations of the Timely Payment Provisions of  N.Y. Labor Law § 191 (4th Cause of Action)

#### (i)  New York Law requires that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." N.Y. Lab. Law § 191.

A manual worker is defined as a laborer who works for another for hire and spends more than 25% of his or her time engaged in "physical labor."  *See* N.Y. Lab. Law § 190; NY Dep't of Labor Counsel Opinion Letter RO-09-0121 (Dec. 11, 2009).  As a result,  diverse workers such as barbers and hairdressers (NY Dep't of Labor Counsel Opinion Letter RO-09-0115 (Dec. 2, 2009)), cooks, waiters (RO-08-0139 (Dec. 1, 2008)), seamstresses (*Tackie v. Keff Enters.*, No. 14-CV-2074 (JPO), 2014 U.S. Dist. LEXIS 130148, at *1 (S.D.N.Y. Sept. 16, 2014), retail

workers and bakers (*Flores v. Anjost Corp.*, 284 F.R.D. 112, 117 (S.D.N.Y. 2012)) are considered "manual workers" under N.Y. Lab. Law § 191.  All factory and warehouse employees at U.S. Nonwovens qualify as manual workers under N.Y. LAB. LAW § 191.

Claims for delayed payments under N.Y. LAB. LAW § 191 are viable.  *See Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 482 (S.D.N.Y. 2012) (Swain, J.) (denying defendant's motion to dismiss Rule 23 class action claims for delayed payment of wages to manual workers based upon biweekly pay); *Bynog v. Cipriani Group, Inc.*, 298 A.D.2d 164, 165, 748 N.Y.S.2d 9 (N.Y. App. Div. 2002) (reversing trial court's grant of summary judgment and allowing waiters to pursue claims that they were not paid on a weekly basis in violation of section 191), *rev'd on other grounds*, 1 N.Y.3d 193, 802 N.E.2d 1090, 770 N.Y.S.2d 692 (2003).

Pursuant to N.Y. Lab. Law § 191, "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned."

> **(ii) Defendants' Policies of failing to verify hours worked prior to generating paychecks, and only addressing payment issues after employees complained that they had not been paid for all hours worked resulted in the delayed payment of wages by US Nonwovens under N.Y. Lab. Law § 191.**

At US Nonwovens there were no systems in place for verifying hours prior to the issuance of paychecks.   Therefore, as a result, if an employee "missed a punch" they would not be paid for all hours worked within 7 days of the close of the pay period as required by N.Y. Lab. Law § 191.   U.S. Nonwovens relied on employees to keep track of their hours worked and pay for missing hours would be generated only after an employee complained.   At the end of each pay period, the payroll department obtained the time records directly from the biometric scanners and transferred the file, containing the raw date from the scanners to Paychex and/or ADP, which were the vendors used by U.S. Nonwovens to generate paychecks. (Awan Dep. 66:18-67:22.)   After the paychecks were distributed each Thursday, employees who had missing

8

hours or were underpaid were then expected to complain to their managers. (*Id.* at 67:2-8.)  The manager would then have to rely on his recollections to either verify or deny the employee's claims for accurate hours. (Muido Decl. ¶17.)  After the manager made the appropriate corrections to the timesheet, the manager would then submit the timesheet to the payroll department so that the payroll department could  process an additional check to compensate the employee for the correct amount of hours worked. (Awan Dep. 67:5-8; Shervin Dep. 93:12-97:9; Muido Decl. ¶18.)  Employees had no real opportunity to inspect or verify their time records before paychecks were generated. (Awan Dep. 99:12-101:12; Muido Decl. ¶21.)

After the lawsuit was commenced, Defendants instituted a series of "companywide, department wide...process improvements" designed to improve the payroll process (Shervin Dep. 89:9-91:17.)  In addition to paying the spread of hours pay, the Defendants also claim that they have implemented processes for *timely* wage payments, rather than waiting for employees to complain that hours are missing from their paychecks.

The pay period at US Nonwovens is from Monday to Sunday, and payday was the following Thursday.  (Awan Dep. 67:19-22.)  Therefore employees would have to wait a minimum of four days after the close of the pay period for the payment of wages.   Of course, if US Nonwovens was properly recording all hours worked by the employees, then there would be no violation of N.Y. Lab. Law § 191.  However, only after this lawsuit was commenced did US Nonwovens make sure that "everything is done the same week proactively instead of waiting next week."  (Awan Dep. 61:9-16, 130.)  US Nonwovens assures us that now employees are paid "in the same week" and that they "do[]n't have to wait a week or two…"  (*Id.* at 98:15-17.) Prior to this lawsuit,  however, an employee would only become aware of a missed punch when they received their paycheck.  (*Id.* 99:12-100:3.)

9

In fact, there were no edits or corrections performed to any employee's punch data before the information was transmitted to ADP. (*Id.* 115:6-116:6).   This means that initially, at least, employees were only paid for the hours recorded by the punch clocks, regardless of whether they had difficulty punching, or they forgot to punch, or the time clock was malfunctioning.

In fact, employees' wages for the missing hours were significantly delayed.  During his deposition, Shervin Mehdizadeh admitted that he was unaware of any requirement for timely payment of wages under New York State Law and that there had been cases where it took U.S. Nonwovens "two and a half to three weeks" to pay an employee for missing hours. (Shervin M. Dep. 87:8-10.)  Shervin further admitted that as a policy, after workers complain about missing hours, the payroll department would not generate the paycheck for the missing hours until the next pay cycle at the earliest. (*Id*. at 87:10-25.)  In his deposition, Daniel Sante testified that payment for missed overtime hours were "almost always...one, two, three weeks late. (Sante Dep. 38:8-20.)  Named and opt-in Plaintiffs similarly complained about delay in pay for missing hours. (Pl. Sante's Resp. to Def.'s Interrog. 5; Mendez-Rivera Dep. 19:15-23; Mendez-Rivera Decl. ¶¶ 15-16; Cordova Decl. ¶¶ 7, 9, Argueta Decl. ¶11-12; Del Cid Decl. ¶ 9; Marquez Decl. ¶13; Merlos Decl. ¶10; Romero ¶10; Sante Decl. ¶ 9; Salvador Decl. ¶11; Vasquez Decl. 12.)

**c.  The Defendant's policies with regard to (1) an automatic ½ hour meal deduction, and (2) refusal to pay employees for hours recorded as having been worked, and instead paying employees based upon their scheduled shifts resulted in widespread failure to pay overtime and/or straight hours (3rd Cause of Action for Unpaid Overtime and 7th Cause of Action for Unpaid Straight Hours)**

**(i)  The New York Labor Law requires payment for all hours worked, all hours required to be "on duty" and for meal periods of less than ½ hour.**

**General Principles.**  N.Y. Labor Law § 191, in addition to guaranteeing timely payment of wages, "fully compensates a plaintiff for all unpaid straight-time wages."   *Shim v. Millennium Group*, No. CV-08-4022 (FB)(VVP), 2009 U.S. Dist. LEXIS 124107, at *4 (E.D.N.Y. Oct. 2,

10

2009).   And like the FLSA, the New York Law requires the payment "for overtime at a wage rate of one and one-half times the employee's regular rate" 12 N.Y.C.R.R. § 142-2.2.

"[W]ork that is not requested by an employer, but is nevertheless 'suffered or permitted,' is compensable work time..." *Keun-Jae Moon v. Joon Gab Kwon*, 248 F. Supp. 2d 201, 228 (S.D.N.Y. 2002); *see* N.Y. Lab. Law § 2.

"An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him." *Glenn L. Martin Neb. Co. v. Culkin*, 197 F.2d 981, 987 (8th Cir. 1952), *cert. denied*, 344 U.S. 866, *reh'g denied*, 344 U.S. 888 (1952) (holding that working time amounting to $1 of additional compensation a week is "not a trivial matter to a working man," and thus not de minimis.) .

**Employees who are required to report to work five minutes before the beginning of their shift, or who actively work prior to the beginning of their shift, must be paid for this pre-shift time.** An employee must be paid for all time that such employee is "engaged to wait." *Keun-Jae Moon*, 248 F. Supp. 2d at 229 (citing *Skidmore v. Swift & Co., 32*3 U.S. 134, 137, 89 L. Ed. 124, 65 S. Ct. 161 (1944)); *see* 29 C.F.R. § 778.223 (2013) (stating that "hours worked" under § 207 include "(a) all time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace"). Time that an employee spends waiting for work assignments is compensable if the waiting time is spent "primarily for the benefit of the employer and his business." *Owens v. Local No. 169*, 971 F.2d 347, 350 (2d Cir. 1992) (quoting *Armour & Co. v. Wantock*, 323 U.S. 126, 132 (1944)).

**A minimum meal period under the N.Y. Labor Law is 30 minutes, and breaks of 5-20 minutes are compensable.** Pursuant to N.Y. Lab. Law § 162(1) "[e]very person employed in

or in connection with a factory shall be allowed at least sixty minutes for the noon day meal."

The New York State Department of Labor considers a "bona fide" meal period to at minimum a

½ hour.  http://www.labor.ny.gov/workerprotection/ laborstandards/employer/meals.shtm (last

visited 7/10/2015.)  A meal period of ten to fifteen minutes is entirely compensable.  *He v. Home

on 8th Corp.*, No. 09 Civ. 5630 (GBD), 2014 U.S. Dist. LEXIS 114605, at *28, 2014 WL

3974670 (S.D.N.Y. Aug. 13, 2014).  The New York State Department of Labor follows Federal

Regulation 29 C.F.R. § 785.18 which provides that rest periods of short duration, running from 5

minutes to about 20 minutes, are compensable.   https://labor.ny.gov/legal/counsel/pdf/meal-and-

rest-periods-frequently-asked-questions.pdf (last visited July 19, 2015).

> **(ii) US Nonwovens had a uniform policy of (1) disregarding employee's time clock records (2) deducting a ½ hour for meal periods that lasted less than 20 minutes (3) paying employees only for shift hours and (4) refusing to compensate for pre-shift work**

**US Nonwovens disregarded its employees records of hours worked.**  US Nonwovens

determined an employee's working hours using a time clock.  (Shervin M. Dep. 25:12-26:12.)

All employees were expected to record their "hours worked" by scanning their hands in

biometric scanners. (Awan Dep. 92:21-94:12; Muido Decl. ¶8; Montanez Decl. ¶12.)  Despite

this insistence that employees record their working hours using the time clock, defendants had a

policy of only paying for scheduled shift hours and only if the electronic records showed that the

employee was present.   This policy has been in effect ever since the company's inception.

(Awan Dep. 159: 20 - 160:16, 173:22 - 174:19; Samuel Dep. 137:3-137:14; Shervin Dep. 46:3-9;

R. Mehdizadeh Dep. 90:11-92:16, 94:1-95:15, 104:20 - 105:22, 106:16-107:7, 113:4 - 116:3;

Def. Resp. Pre-Cert. Interrog. 10.)  Defendant Shervin Mehdizadeh confirmed that "[n]o [pay]

practice has been changed because of this [lawsuit] except for spread of hours.  It's always been

the same." (Shervin M. Dep. 84:6-9.)  U.S. Nonwovens was so dependent on the recorded

punch-in records to record *attendance* that the company posted signs that said "No punch, no pay" next to each biometric scanner. (Sante Dep. 62:18-24; Montanez Decl. ¶18.)  Despite their reliance upon the scanners and an admitted concern that employees were not being paid properly, the biometric scanners regularly malfunctioned. (Awan Dep. 61:6-8; Muido Decl. ¶ 10, 14; Montanez Decl. ¶13-16, 26; Gonzalez Decl. ¶10; Melendez Decl. ¶ 12-13; Marquez Decl. ¶12.)

When employees were not timely paid, Shervin, Samuel and Rody Mehdizadeh would sometimes sign a check to "make-up" the deficiency.  These checks were necessary because "[t]he time clock didn't work at the time, and therefore the hours were not recorded properly." (R. Mehdizadeh Dep. 16:23-25.).

 Even after commencement of the lawsuit, there were still widespread complaints about missing hours. (Awan Dep. 129:4-130:3.)

**U.S. Nonwovens has a policy of automatically deducting 30 minutes of unpaid time for lunch regardless of whether the employee was actually able to take a bona fide meal period.** (R. Mehdizadeh Dep. 99:3 - 100:2; Coiscou Decl. ¶ 3, Gonzalez Decl. ¶13; Melendez Decl. ¶ 6; F. Molina Decl. ¶ 4, 8, 9.)  This policy deprived workers of payment for all hours worked who were forced to work through lunch or with a lunch break of less than ½ hour.  Rody Mehdizadeh admitted that Jesus Ramos, an employee who apparently punched out for only four minutes for lunch, still had his full lunch period of 30 minutes deducted from his pay. (R. Mehdizadeh Dep. 99:19 - 100:2.)  US Nonwovens also automatically deducted ½ hour from the putative class representative Fernando Molina, even when he punched out for a "meal period" of only 8 minutes, or didn't take a meal break at all.  (Molina Decl. ¶¶ 8-9.)  Plaintiffs Fernando Molina and Jesus Ramos are two examples of the uniform meal period deduction policy that was applied to all workers.

**Defendants had a long-standing policy of only paying wages according to scheduled shift hours despite requiring employees to show up earlier than their scheduled start time**. (Awan Dep. 166:18-24; R. Mehdizadeh Dep. 90:11-92:16, 94:1-95:15; Shervin Dep. 131:18-135:16; F. Molina Decl. ¶¶ 4, 8, 9; S. Melendez Decl. ¶¶ 3-4; A. Coiscou Decl. ¶¶ 3-6; J. Larios Decl. ¶¶ 5-6.)  During his deposition, Malik Awan pithily summarized U.S. Nonwovens' pay policy as "[i]f they have shift they are getting paid as shift." (Awan Dep. 166:23-24.)  In his deposition, Rody Mehdizadeh confirmed that Defendants paid for shift hours and not according to the times the workers actually punched in to work. (R. Mehdizadeh Dep. 91:21-23.)   When asked whether U.S. Nonwovens compensated workers who had to report earlier than their scheduled shift time to clean and set up their workstations so that they can begin working promptly at the scheduled start time, Rody Mehdizadeh confirmed that employees "can come to work, they can walk in and pick up garbage at 6:15 in the morning, but that's not really their work time.  And that wasn't our agreement with them, we never told them to come in at 6:15. It's 7:00 to 7:00." (*Id.* at 109:9-14.)

**Employees were told at the time of hiring that all factory employees had to arrive at least five minutes before their scheduled shift to ensure that production would not be interrupted due to the transition between shifts.** (Acosta Decl. ¶8; Amaya Decl. ¶12; Del Cid Decl. ¶8; Garcia Decl. ¶8; Lazo Decl. ¶10; Mendez Decl. ¶5; Mercado Decl. ¶8; Merlos Decl. ¶9; Ramos Decl. ¶9; Vasquez Decl. ¶11; F. Molina Decl. ¶ 5).  Workers were also told that lateness of even one minute would result in at least 30 minutes of pay docked from their wages. (Alva Decl. ¶ 13; Santiago Decl. ¶14; Mendez Decl. ¶5; Merlos Decl. ¶6; Vasquez Decl. ¶11.)  Because Defendants required employees to report to work at least five minutes prior to their scheduled

shift time but only paid employees according to their scheduled shift time, Defendant failed to compensate employees for all hours worked.

**Employees regularly complained about missing hours.** Due to the malfunctioning scanners as well as a defective pay policy, Defendants regularly underpaid its employees. During his deposition, Malik Awan admitted that factory employees commonly complained about missing hours. (Awan Dep. 54:16-19; 58:10-13.) The complaints were so widespread that Defendants found it necessary to change its payroll practices, despite claims by the Defendants that the pay practices were "100 percent" compliant with the law and even "exemplary." (R. Mehdizadeh Dep. 31:4-17; Shervin Dep. 50: 10-19.)

In approximately November 2013, Defendants "improved" the process by processing "the payroll proactively" which involved, *inter alia*, sending out weekly punch reports to managers to verify employee work times for missed punches. (Shervin Dep. 59:20-22; 59:20-60:17.) This "proactive process," while a change from the old system in which employees were only paid for missing hours if they complained, was flawed. In order to verify employee work times for missed punches, managers were expected to rely on their own recollections as to what time and for how long an employee was at work on any given day. (Muido Decl. ¶17.) The biometric scanners still malfunctioned regularly and complaints about missing hours remained. (Id. at ¶10-14; Montanez Decl. ¶17; Montoya Decl. ¶12.) Workers regularly waited in front of the payroll office to complain about missing hours and it was not unusual to see lines of at least five waiting employees each week. (Muido Decl. ¶25-26; Montanez Decl. ¶19.) When workers complained about their hours, they were either told that Malik Awan was too busy or to quit if they continued to have complaints. (Alva Decl. ¶11; Montanez ¶23.)

Many workers have never been compensated for their work despite making the proper complaints. (Sante Dep. 34:10-19; 63:3-14; Mendez-Rivera Dep. 21:8-19; Mendez-Rivera Decl. ¶16; Melendez Decl. ¶13; Cordova Decl. ¶16; Carbajal Decl. ¶9; Marquez Decl. ¶12; Merlos Decl. ¶9; Montoya Decl. ¶12; Ulloa Decl. ¶9; Vasquez Decl. ¶10.)

## II.   THE SECOND CIRCUIT HAS EMPHASIZED THAT RULE 23 IS TO BE GIVEN A "LIBERAL" RATHER THAN A "RESTRICTIVE" CONSTRUCTION

> The Second Circuit has emphasized that Rule 23 should be "given liberal rather than restrictive construction," *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997), and "it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." [362] *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 203 (E.D.N.Y. 2005) (Glasser, J.) (quoting *Leider v. Ralfe, 01 Civ. 3137 (HB)*, 2003 U.S. Dist. LEXIS 18270, 2003 WL 22339305, at *11 (S.D.N.Y. Oct. 10, 2003)).

*Gortat v. Capala Bros.*, 257 F.R.D. 353, 361-62 (E.D.N.Y. 2009)

In deciding a motion for class certification under rule 23, the court engages in a "rigorous analysis." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011)); *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015).  "However, in deciding certification, courts must still take a liberal rather than a restrictive approach in determining whether the plaintiff satisfies Rule 23's requirements and may exercise broad discretion when determining whether to certify a class." *Pagan v. Abbott Labs.*, 287 F.R.D. 139, 144 (E.D.N.Y. 2012) (Spatt, J.); *see also Butto v. Collecto Inc.*, 290 F.R.D. 372, 380 (E.D.N.Y. 2013) (Spatt, J.) (observing that "many courts have implicitly harmonized the idea of a liberal approach and a rigorous analysis").

Plaintiffs need only establish each of the Rule 23 requirements by a preponderance of the evidence. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 202-03 (2d Cir. 2008).

III. **PLAINTIFFS HAVE ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE THE IMPLIED REQUIREMENT OF ASCERTAINABILITY, AS WELL AS THE FOUR BASIC ELEMENTS OF A CLASS ACTION UNDER FED. R. CIV. P. 23(A) – NUMEROSITY, COMMONALITY, TYPICALITY, AND ADEQUACY OF REPRESENTATION.**

The claims in this case are suitable for resolution on a class-wide basis because,

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

a. **Ascertainability**

In addition to the explicit requirements of Rule 23(a), courts within the Second Circuit courts have implied a requirement that a class be "ascertainable." *See, e.g.*, *Suvill v. Bogopa Serv. Corp.*, No. 11-cv-3372 (SLT) (RER), 2014 U.S. Dist. LEXIS 141095, at *25 (E.D.N.Y. Sept. 30, 2014); *Roach v. T.L. Cannon Corp.*, Civil Action No. 3:10-CV-0591 (TJM/DEP), 2013 U.S. Dist. LEXIS 47268, at *45-47, 2013 WL 1316397 (N.D.N.Y. Mar. 4, 2013); *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 293 F.R.D. 287, 299 (E.D.N.Y. 2013); *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 (DLI)(RML), 2013 U.S. Dist. LEXIS 184232, at *62, 2013 WL 7044866 (E.D.N.Y. July 17, 2013); *Flores*, 284 F.R.D. at 122. An identifiable class exists if its members can be ascertained by reference to objective criteria, as opposed to subjective criteria such as state of mind. *Stinson v. City of N.Y.*, 282 F.R.D. 360, 373 (S.D.N.Y. 2012); *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 275 F.R.D. 75, 85 (N.D.N.Y. 2011); *In re Fosamax Prods. Liab. Litig*, 248 F.R.D. 389, 395 (S.D.N.Y. 2008)).

17

The ascertainability requirement "is designed only to prevent the certification of a class whose membership is truly indeterminable." *Flores*, 284 F.R.D. at 122.  Further, "[c]lass members need not be ascertained prior to certification, but must be ascertainable at some point in the case." *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004).

The class is defined by reference to objective, rather than subjective, criteria, and therefore is ascertainable.

### b.  Numerosity

Numerosity is presumed when a class comprises 40 members or more.  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citing 1 Newberg On Class Actions 2d, (1985 Ed.) § 3.05)); *Perez v. Allstate Ins. Co.*, No. 11-CV-1812 (JFB)(AKT), 2014 U.S. Dist. LEXIS 130214, at *39, 2014 WL 4635745 (E.D.N.Y. Sept. 16, 2014); *Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323 (ALC) (AJP), 2013 U.S. Dist. LEXIS 36357, at *47, 2013 WL 1040052 (S.D.N.Y. Mar. 15, 2013).

A precise quantification of the number of class members is not required.  *Spread Enters. v. First Data Merch. Servs. Corp.*, 298 F.R.D. 54, 67 (E.D.N.Y. 2014); *Spencer*, 2013 U.S. Dist. LEXIS 36357, at *60-61; *Flores*, 284 F.R.D. at 123.   Where the precise number of class members is not known, the Plaintiff may "show some evidence of or reasonably estimate the number of class members." *Pecere v. Blue Cross & Blue Shield, 19*4 F.R.D. 66, 70 (E.D.N.Y. 2000).  Furthermore,  "a court may make 'common sense assumptions' to support a finding of numerosity." *Id.* at 70 (citing *LeGrand v. New York City Transit Auth.*, 1999 U.S. Dist. LEXIS 8020, *8, No. 95- CV-0333, 1999 WL 342286, *3 (E.D.N.Y. May 26, 1999)).

Here, the Defendants have already provided an opt-out mailing list which names 1,238 non-exempt employees who were all subject to the Defendants employment policies.

### c.  Commonality

A party seeking certification must show "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). *Dial Corp. v. News Corp.*, No. 13cv6802, 2015 U.S. Dist. LEXIS 79686, at *7 (S.D.N.Y. June 18, 2015). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 131 S. Ct. at 2551. Because "the predominance criterion is far more demanding" than the commonality requirement, when plaintiffs move for certification of a class pursuant to Rule 23(b)(3), "Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement" of predominance. *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 609, 624, 11 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).

Here, answers to the following questions will resolve class-wide claims for relief: (1) whether US Nonwovens paid the spread of hours premium to workers who worked a spread of hours in excess of 10; (2) whether the class members are "manual workers" under N.Y. Lab. Law § 191 and therefore entitled to payment of all wages within 7 days of the end of the pay period; and (3) whether the Defendants policies of failing to verify electronic punch records prior to the generation of payroll checks resulted in delays in payment for any wages for a period of more than 7 days

An employer has a non-delegable duty to accurately record its employees' hours. *See* U.S.C. § 211(c); *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 944, 946 (2d Cir. 1959) (Friendly, J.); *Kuebel v. Black & Decker Inc., 64*3 F.3d 352, 363 (2d Cir. 2011). In light of this duty, the common questions regarding the Plaintiffs' unpaid wage claims which may be resolved on a class-wide basis are the following: (1) whether the Defendants, who admittedly record "hours worked" using an electronic time clock system, may disregard their own electronic time

records and instead pay employees for "shift hours" which is based upon an under-inclusive definition of work and results in the failure to pay wages; (2) whether the Defendants should be obligated to pay employees for the hours recorded as having been worked using the Defendants' own electronic time clock system; and (3) even if the Defendants argue that their own electronic time clock records are inaccurate, should the Plaintiffs be entitled to the "just and reasonable inference" burden of proof set forth in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 1192 (1946) and be permitted to submit representative testimony regarding class-wide damages.

### d. Typicality

"When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). In this case the uniform policies of the Defendants with regard to (1) spread of hours pay (2) delayed payment of wages and (3) failure to pay for all hours worked have been directed at the Class and the Named Plaintiffs.

### e. Adequacy

"Adequacy 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Loftin v. Bande* (*In re Flag Telecom Holdings, Ltd. Sec. Litig.*), 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Baffa v. Donaldson, Lufkin &amp; Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)); *Dial Corp.*, 2015 U.S. Dist. LEXIS 79686, at *10.

Here the plaintiffs' interests are not antagonistic to the class they seek to represent. There is no reason why the representatives are not qualified to represent the class. Plaintiffs'

application to appoint Steven J. Moser, P.C. as class counsel is addressed more fully in section

VI herein.

## IV.  PLAINTIFFS HAVE ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE RULE 23(B)'S REQUIREMENTS OF PREDOMINANCE AND SUPERIORITY.

> If plaintiffs can demonstrate that the proposed class satisfies the elements of Rule 23(a), they must then establish that the action is "maintainable" as defined by Rule 23(b)… Plaintiffs argue that these putative class actions are maintainable under subsection (b)(3), which requires "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3) thus has two elements: "predominance" and "superiority."

*Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176 (S.D.N.Y. 2005).

### a.  Predominance

A class action is *maintainable*  under Rule 23(b) if "questions of law or fact common to

class members predominate over any questions affecting only individual members."  With regard

to predominance "numerous courts have found that wage claims are especially suited to class

litigation — perhaps 'the most perfect questions for class treatment' — despite differences in

hours worked, wages paid, and wages due."  *Tiro v. Pub. House Invs., L.L.C.*, 288 F.R.D. 272,

280-81, 2012 WL 6053961 (S.D.N.Y. Dec. 4, 2012)(citing *Ramos v. SimplexGrinnell LP,* 796 F.

Supp. 2d 346, 359-60 (E.D.N.Y. 2011); *see also Iglesias-Mendoza v. La Belle Farm, Inc.*, 239

F.R.D. 363, 373 (S.D.N.Y. 2007).

In this case, the following uniform policies affecting the class are claimed to exist:

> i.  The Defendants failed to pay the spread of hours premium to any employee for the six year period prior to, and for at least one year after the commencement of this lawsuit;
>
> ii.  The Defendants had a policy of failing to verify the attendance of employees prior to the processing of payroll.  This resulted in the generation of payroll checks without verification or approval by a direct supervisor with knowledge of the employees' attendance.  This resulted in delays in payment of wages for more than seven days after the end of the pay period.

21

       iii.    The Defendants had a uniform policy of paying employees for "shift hours" rather than the hours recorded as having been worked by employees in the Defendants' own electronic timekeeping system, and automatically deducting ½ hour for lunch, even if the employee did not have the benefit of a "bona fide" meal period, resulting in the failure to pay employees for all hours worked.

"Although individualized determinations must be made as to the amount of wages, overtime, and spread of hours pay each Plaintiff is due based on the hours projected for their shift and the number of hours worked, common legal issues related to the members' entitlement to overtime wages and the proper measure of such wages clearly predominate over these relatively simple, mechanical calculations." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 200 (S.D.N.Y. 2011); *see Spencer*, 2013 U.S. Dist. LEXIS 36357, at *101-102

### (i)  Where the central issue is whether the Defendant's policies complied with the New York Labor Law, predominance is satisfied.

"The common issue here is whether Defendants had a policy of not paying a spread of hours premium. This question is amenable to class resolution." *Flores*, 284 F.R.D. at 127; *see Garcia v. Pancho Villa's of Huntington Vill.*, 281 F.R.D. 100, 108 (E.D.N.Y. 2011) (finding that predominance is satisfied "because the central issue is whether the defendants had a uniform policy or practice of denying overtime and spread-of-hours compensation to its employees."). Courts within this Circuit have consistently found that class-wide claims for spread of hours pay meet the predominance requirement of 23(b). *See, e.g.*, *Morris v. Alle Processing Corp.*, No. 08-CV-4874 (JMA), 2013 U.S. Dist. LEXIS 64534, at *36, 2013 WL 1880919 (E.D.N.Y. May 6, 2013); *Roach*, 2013 U.S. Dist. LEXIS 47268, at *40-41; *Guan Ming Lin v. Benihana N.Y. Corp.*, No. 10 Civ. 1335 (RA) (JCF), 2012 U.S. Dist. LEXIS 186526, at *28, 2012 WL 7620734 (S.D.N.Y. Oct. 23, 2012).

      Further, predominance is satisfied where, as here, the central issue is whether defendants had a uniform policy or practice of denying wages for all hours worked, and overtime wage.

*Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG)(RER), 2008 U.S. Dist. LEXIS 15821, 2008 WL 597186, at \*8 (E.D.N.Y. Mar. 2, 2008); *Morris*, 2013 U.S. Dist. LEXIS 64534, at \*36; *see also Tiro v. Pub. House Invs., L.L.C.*, 288 F.R.D. 272, 279 (S.D.N.Y. 2012) (certifying class of employees where the central issues involved the employer's failure to pay regular, overtime, and spread of hours wages).

The delayed payment claim similarly presents legal questions which predominate over all others:  Are the workers forming part of the class "manual workers" under N.Y. Lab. Law § 191 and thus entitled to payment no later than seven (7) days after the end of the pay period?   What are the plaintiff's damages for delayed payment of wages?  *See Belizaire v. Rav Investigative & Sec. Servs.*, 61 F. Supp. 3d 336, 353-54 (S.D.N.Y. 2014) (Freeman, M.J.) adopted by *Belizaire*, 61 F. Supp. 3d at 340 (Oetken, J.) (finding a violation of N.Y. Lab. Law § 191 where employer delayed in issuing payroll checks, and where certain payroll checks were returned for insufficient funds.).

### (ii) In the wage and hour context, individualized calculations of damages do not defeat the predominance requirement.

In *Comcast Corp.*, 133 S. Ct. at 1428, 185 L. Ed. 2d 515, the Supreme Court held that "a model for measuring class wide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury."  *Jacob v. Duane Reade, Inc.*, 602 F. App'x 3, 7 (2d Cir. 2015).  However, "neither *Comcast* nor any other binding authority holds that the need to calculate damages on an individualized basis necessarily defeats the predominance element of Rule 23(b)(3)."  *Perez*, 2014 U.S. Dist. LEXIS 130214, at \*59 (Bianco, J.).   Indeed, "the Second Circuit [post *Comcast*] has found that individualized calculations of damages do not defeat the predominance requirement."  *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014) (citing *In re U.S. Foodservice Inc. Pricing*

*Litig.*, 729 F.3d 108, 123 n.8 (2d Cir. 2013)); *see also In re Cablevision*, No. 10-CV-

4992(JS)(AKT), 2014 U.S. Dist. LEXIS 44983, at *42 (E.D.N.Y. Mar. 31, 2014) (accord).

### b.  Superiority

Rule 23(b)(3) also requires a class action "be superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). District courts in this Circuit "routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation and many potential class members are currently employed by Defendant." *In re Gentiva*, 281 F.R.D. 108, 108 (E.D.N.Y. 2012) (citing *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 200 (S.D.N.Y. 2011) (collecting cases)); Class members are significantly numerous and possess relatively small individual claims… Given these considerations, it is clear that a class action is superior to other available methods for fair and efficient adjudication. The interest of the class as a whole to litigate the predominant common questions substantially outweighs any interest of individual members to bring and prosecute separate actions. Accordingly, the Court [should] find[] that plaintiffs have satisfied the superiority element of Rule 23(b)(3) and class certification is warranted.

*Morris*, 2013 U.S. Dist. LEXIS 64534, at *40-42.

## V.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL UNDER RULE 23(G)

With respect to appointment of class counsel, Rule 23(g) now requires that an attorney

appointed to serve as class counsel must fairly and adequately represent the interests of the class

and that in appointing class counsel, the Court must consider the following:

- The work counsel has done in identifying potential claims in the action,
- Counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,
- Counsel's knowledge of the applicable law, and
- The resources counsel will commit to representing the class

A finding by the court that plaintiffs' counsel has diligently prosecuted the action, has

demonstrated sufficient litigation experience and familiarity with the applicable law, and has

adequate financial resources, is sufficient to warrant an appointment as class counsel under Rule

23(g). *See In re Rezulin Prods. Liab. Litig.*, 224 F.R.D. 346, 346 (S.D.N.Y. 2004).  Plaintiffs

respectfully submit that counsel Steven J. Moser, P.C. is qualified to handle wage and hour class and collective actions and, considering the work their counsel have performed in investigating their claims and pursuing this litigation, counsel's experience and knowledge of the applicable law, and the financial resources that counsel have already committed to this litigation, counsel is qualified to represent the class and will fairly and adequate represent the interests of the class.

Plaintiffs' counsel works almost exclusively in prosecuting wage and hour litigation in federal and state court on behalf of aggrieved workers. Steven Moser has litigated minimum wage, overtime, prevailing wage, and RICO claims in the Southern and Eastern Districts of New York. He was appointed class counsel in the hybrid FLSA/N.Y. LAB. LAW case of *Serrano v. Mamais Contracting Corp. and  Trustees of Columbia University in the City of New York, et al.*, 12-cv-06374 (LTS)(S.D.N.Y. October 15, 2013)(ECF No. 64), and is "an experienced FLSA attorney." *Chavez v. White Post Wholesale Growers, Inc.*, 12-cv-1348 (E.D.N.Y. December 18, 2012)(Seybert, J.). Plaintiffs' counsel has committed and is willing and able to continue to commit the necessary resources to represent the class and have already engaged in significant investigation, pleading, motion practice, and discovery. Plaintiffs' counsel therefore meets the adequacy requirement of Rule 23.

## CONCLUSION

Plaintiffs request that the instant motion certifying the certifying the 3rd, 4th, 5th and 7th claims for relief as class actions pursuant to Rule 23 on behalf of all non-exempt workers employed by U.S. Nonwovens in the State of New York at any time from November 14, 2006 until the present be granted in its entirety.

Dated:  Glen Cove, New York
       July 20, 2015

                  Respectfully submitted,
                  STEVEN J. MOSER P.C.

                  By:  Steven John Moser (SM1133)
                  3 School Street, Suite 207 B
                  Glen Cove, New York  11542
                  (516) 671-1150
                  F (516) 882-5420
                  smoser@moseremploymentlaw.com
                  *Attorney for Plaintiffs*

26