UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X
EFRAIN DANILO MENDEZ A/K/A EFRAIN D.
MENDEZ-RIVERA, ALDRAILY ALBERTO
COISCOU, FERNANDO MOLINA A/K/A
JORGE LUIS FLORES LARIOS, SIRYI
NAYROBIK MELENDEZ and RENE
ALEXANDER OLIVA, individually and on behalf
of all others similarly situated,

                                             12-CV-5583 (ADS) (SIL)

                            Plaintiffs,

      -against-

U.S. NONWOVENS CORP., SAMUEL
MEHDIZADEH A/K/A SOLOMON MEHDIZADEH,
SHERVIN MEHDIZADEH, and RODY
MEHDIZADEH,

                            Defendants.
--------------------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DECERTIFY THE "CONDITIONALLY CERTIFIED" FLSA COLLECTIVE ACTION

**COZEN O'CONNOR**
*Attorneys for Defendants*
277 Park Avenue
New York, New York 10172
(212) 453-3937

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................ii

TABLE OF EXHIBITS .....................................................................................................iii

INTRODUCTION ..............................................................................................................1

BRIEF FACTUAL BACKGROUND...................................................................................3

BRIEF PROCEDURAL BACKGROUND ..........................................................................4

GOVERNING LEGAL STANDARDS................................................................................4

ARGUMENT

      THE NAMED PLAINTIFFS CANNOT MEET THE "SIMILARLY
      SITUATED" REQUIREMENT WITH RESPECT TO ALL MEMBERS OF
      THE FLSA COLLECTIVE FOR PURPOSES OF AVOIDING
      DECERTIFICATION OF THE FLSA COLLECTIVE ACTION..............................................6

      A.  The FLSA Collective Is Not "Similarly Situated" With Respect To
          The Claim For Alleged Unpaid Overtime (2nd Cause Of Action) ........................6

      B.  The FLSA Collective Is Not "Similarly Situated" With Respect To
          The Claim For Alleged "Untimely" Overtime (1st Cause Of Action) ...................13

      C.  Fairness And Procedural Considerations Militate Against Proceeding
          By Collective Action In This Case ...................................................................17

CONCLUSION................................................................................................................18

# TABLE OF AUTHORITIES

*Bayles v. American Med. Response,* 950 F. Supp. 1053 (D. Col. 1996)....................................1

*Briggins v. Elwood TRI, Inc.,* 882 F.SUpp.2d 1256 (N.D. Ala. 2012) .....................................10

*Cameron-Grant v. Maxim Healthcare Serv., Inc.,* 347 F.3d 1240 (11th Cir. 2003)..................4

*Conzo v. City of New York,* 667 F. Supp.2d 279 (S.D.N.Y. 2009) ............................................14, 15

*Cuzco v. Orion Bldg., Inc.,* 477 F.Supp.2d 628 (S.D.N.Y. 2007) ............................................6

*Desilva v. North Shore-Long Island Jewish Health Sys., Inc.,* 27 F.Supp.3d 313
(E.D.N.Y. 2014)......................................................................................................5, 9, 12

*Edwards v. City of New York,* 2011 WL 3837130 (S.D.N.Y. Aug. 29, 2011) .........................15

*Espinoza v. County of Fresno,* 290 F.R.D. 494 (E.D. Ca. 2013)...............................................10

*Hinterberger v. Catholic Health,* 2009 WL 4042718 (W.D.N.Y. Nov. 19, 2009)..................10, 11, 15

*Holzapfel v. Town of Newburgh, N.Y.,* 145 F.3d 516 (2d Cir. 1998)........................................11

*Kuebel v. Black & Decker, Inc.,* 643 F.3d 352 (2d Cir. 2011)..................................................11

*Laroque v. Domino's Pizza, LLC,* 557 F.Supp.2d 346 (E.D.N.Y. 2008) ................................6

*Mendez v. Radec Corp.,* 232 F.R.D. 78 (W.D.N.Y. 2005) .......................................................12

*Myers v. Hertz Corp.,* 624 F.3d 537 (2d Cir. 2010)..................................................................5

*Neary v. Metropolitan Prop. & Cas. Ins. Co.,* 517 F.Supp.2d 606 (D. Conn. 2007) ...............5

*Rogers v. City of Troy,* 148 F.3d 52 (2d Cir. 1998) ..................................................................14

*Ruiz v. Citibank, N.A.,* 2015 WL 1254820 (S.D.N.Y. Mar. 19, 2015) .....................................10

*Scholtisek v. Eldre Corp.,* 229 F.R.D. 381 (W.D.N.Y. 2005) ..................................................6

*Seward v. International Bus. Mach. Corp.,* 2012 WL 860363 (S.D.N.Y. Mar. 8, 2012).........10

*Willoughby v. Youth Villages, Inc.,* 2015 WL 4127276 (N.D. Ga. June 26, 2015) .................12

*Zivali v. AT&T Mobility, LLC,* 784 F.Supp.2d 456 (S.D.N.Y. 2011).......................................5

**TABLE OF EXHIBITS**

**Letter**          **Exhibit**

A.          Excerpts from deposition transcript of Rody Mehdizadeh
B.          Excerpts from deposition transcript of Shervin (Zade) Mehdizadeh
C.          Excerpts from deposition transcript of Samuel Mehdizadeh
D.          Representative sample of Plaintiffs' paystubs showing regular practice of paying overtime
E.          Excerpts from deposition transcript of Plaintiff Efrain Mendez-Rivera
F.          Excerpts from deposition transcript of Plaintiff Daniel Sante
G.          Representative sample of paystubs from Plaintiff Daniel Sante
H.          Excerpts from deposition transcript of Plaintiff Aldraily Coiscou
I.          Representative sample of paystubs from Plaintiff Aldraily Coiscou
J.          Excerpts from deposition transcript of Malik Awan

# INTRODUCTION

"[A] collective action is designed to permit the presentation of evidence regarding certain representative plaintiffs that will serve as evidence for the class as a whole. . . . It is oxymoronic to use such a device in a case where proof regarding each individual plaintiff is required to show liability." *Bayles v. American Med. Response,* 950 F. Supp. 1053, 1065 (D. Col. 1996).

Amended Complaint: Defendants allegedly failed to pay "Plaintiffs and the FLSA Collective" overtime hours for all hours worked in excess of 40 hours in a week, and failed to pay "Plaintiffs and the FLSA Collective" overtime hours in a timely manner. D.E. 70 at ¶¶ 160, 165.

Named Plaintiff Mendez-Rivera: I did generally get paid overtime for the overtime I worked, although there were a total of three hours of overtime for which I did not get paid in 2012. Exhibit E at 33, 39.

Named Plaintiff Daniel Sante: I cannot recall a single date when I was not paid for the overtime that I worked. Exhibit F at 34-35.

Named Plaintiff Aldraily Coiscou: The company always paid me overtime when I worked overtime, and I do not believe that I am currently owed any overtime pay from the company. Exhibit H at 29-30.

Defendants U.S. Nonwovens Corp. ("USN" or "Company"), Samuel Mehdizadeh, Shervin Mehdizadeh, and Rody Mehdizadeh (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to decertify the FLSA Collective that was previously "conditionally certified" before the parties engaged in discovery in this case. As discussed more fully below, now that discovery is completed, it would be inappropriate for Plaintiffs to proceed upon so-called representative proof as required in a collective action given the fact that the named Plaintiffs and opt-in Plaintiffs are not similarly situated with respect to any purported policy of USN that is unlawful.

The Amended Complaint contains only two causes of action arising under federal law (*i.e.,* the FLSA): the First Cause of Action for failure to pay overtime wages in a "timely manner" to the entire "FLSA Collective," and the Second Cause of Action for failure to pay overtime wages in general to the entire "FLSA Collective." D.E. 70 at ¶¶ 159-162, 164-168. Thus, the first and second

1

causes of action are the only causes of action at issue in this instant motion to decertify. The Amended Complaint defines the "FLSA Collective" broadly as all "non-exempt factory workers employed by U.S. Nonwovens in New York [] who elect to opt-in to this action[.]" *Id.* at ¶ 53.

It is crystal clear at this point now that we have concluded discovery that the named and opt-in Plaintiffs are *not* "similarly situated," and that continuing to allow this case to proceed as a collective action at this stage would be fraught with due process concerns which should not be ignored for the sake of "judicial economy" and "expediency." In fact, at the beginning of this case, notice was sent to 1,238 former and current employees of USN to advise them of their right to join this lawsuit as a plaintiff if they so chose. By the end of the opt-in period, only 85 have shown an interest in joining and are currently opted-in to this action; more than 93% of the employees who received the notice are not joined.

In any event, the deposition testimony and documentary evidence revealed during discovery firmly establishes that any liability for failing to pay overtime on a particular day or for failing to pay overtime in a timely manner in a particular instance – again, the only two issues arising under federal law and that are subject to this motion to decertify – necessarily requires an examination of the individual circumstances of each plaintiff who believes that he or she was not paid properly. For every allegation that the entire "FLSA Collective" was not paid overtime, there are other Plaintiffs such as Daniel Sante and Aldraily Coiscou who admit (as quoted on page 1 and below) that they were always paid overtime for the overtime they worked. *By definition, if members of the collective class admit that they were paid overtime, while others believe they may be owed a few hours here and there for overtime, the issues cannot be representative in nature based on a uniform companywide policy of not paying overtime, and can only be resolved by looking at the nature of work performed by an employee in a particular week and the reason why that employee may or may not be owed overtime for that particular week.* Clearly, everyone in the "FLSA

2

Collective" is no longer "similarly situated" to permit maintenance of this lawsuit as a collective action under the FLSA. Accordingly, Defendants respectfully request that the Court decertify the conditionally certified FLSA Collective.

## BRIEF FACTUAL BACKGROUND

USN is a family-owned business that manufactures and distributes a wide range of personal care and home care throughout the world. Its corporate headquarters and principal production factories are located in Brentwood, New York, with an additional warehouse and distribution center located in Hauppauge, New York. In addition to the corporate entity, Plaintiffs have also sued three individuals: USN's CEO Shervin Zade and its COO Rody Mehdizadeh, together with their father Sam Mehdizadeh, who is principally tasked with ensuring that production line equipment in the Company's manufacturing facilities are working properly. The Mehdizadeh family has been operating USN for many years, and have always tried to do the right thing for the Company's hard-working employees. No business is perfect, but there is nothing in the record to suggest any motive other than an intent to pay employees for the time they work and to pay them properly. See Exhibit A at 41, 126; Exhibit B at 88; Exhibit C at 52, 83-84.

There are eight named Plaintiffs in this case, all of whom are or were factory workers at USN who were properly classified as non-exempt, hourly workers for purposes of wage and hour obligations. As discussed below, USN has a human resources and payroll department, and has always paid its factory workers weekly on Thursdays for the prior calendar week. Its factory workers are responsible for accurately punching in and out through the use of time clocks that are located at various locations near the production floor at the Company's various facilities. The information from the time clocks is transmitted to USN's outside payroll vendors (it has used ADP and Paychex at different times during the applicable period). The payroll vendors submit weekly reports to USN based on the punch in and out times from the workers, and pay checks are ultimately

issued to employees on Thursdays. Once a pay check is received, the workers have always had a means and process to address any concerns about the pay check, as evidenced by the fact that employees acknowledge that they have spoken with their supervisors and/or the payroll department on occasion and that USN has investigated the particular situations and, in most cases, resolved the concern in favor of the employee.

## BRIEF PROCEDURAL BACKGROUND

Plaintiffs commenced this action on November 13, 2012, and subsequently filed an Amended Complaint on March 12, 2014. D.E. 70. Defendants duly filed an Answer to the Amended Complaint on March 25, 2014. D.E. 71. The Amended Complaint contains seven separate claims, however, again, only two of the seven claims are at issue in the instant motion to decertify the federal FLSA claims: (i) the 1st cause of action for alleged failure to pay overtime in a timely manner under the FLSA; and (ii) the 2nd cause of action for alleged failure to pay overtime under the FLSA. On November 15, 2013, the Court granted in part and denied in part Plaintiffs' motion for conditional certification of a collective action for purposes of the two federal FLSA claims, subject to a post-discovery motion by Defendants to decertify the federal claims. See D.E. 38. The parties completed discovery on May 29, 2015, and Defendants are filing their instant motion to decertify in accordance with a briefing schedule established by the Honorable Steven I. Locke.

## GOVERNING LEGAL STANDARDS

The FLSA permits plaintiffs to file an action on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). Congress amended the FLSA in 1947 to include Section 216(b) "to 'prevent [] large group actions, with their vast allegations of liability, from being brought on behalf of employees who had no real involvement in, or knowledge of, the lawsuit.'" *Cameron-Grant v. Maxim Healthcare Serv., Inc.,* 347 F.3d 1240, 1248 (11th Cir. 2003) (citations omitted). Thus, maintenance of an FLSA "collective action" is only appropriate upon a showing that there are

4

individuals who desire to "opt-in" to the suit and that those individuals are "similarly situated" so that they are permitted "to benefit from any judgment." *Neary v. Metropolitan Prop. & Cas. Ins. Co.,* 517 F.Supp.2d 606, 618 (D. Conn. 2007).

The FLSA does not, however, define "similarly situated." Courts in this Circuit utilize a two-step analysis to determine whether to certify a collective action under the FLSA. *Myers v. Hertz Corp.,* 624 F.3d 537, 554-55 (2d Cir. 2010). The first step requires a "modest factual showing" by Plaintiffs, based on an analysis of the pleadings and initial affidavits. *Id.* at 555. If the Court is satisfied that Plaintiffs met that burden, the Court will "conditionally certify" the class for purposes of discovery and authorizing notice to putative collective group members who are afforded an opportunity to affirmatively "opt-in" to the action.

However, the second step of the analysis – generally, as here, after discovery has been completed – requires Plaintiffs to meet a much heavier burden than existed at the first stage for "conditional" certification:

> At the second stage, the district court will, on a fuller record, determine whether a so-called "collective action" may go forward by determining whether the plaintiffs who have opted in are in fact "similarly situated" to the named plaintiffs. The action may be "de-certified" if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice.

*Id.* at 555. *See also Desilva v. North Shore-Long Island Jewish Health Sys., Inc.,* 27 F.Supp.3d 313, 319-20 (E.D.N.Y. 2014) (post-discovery, "the Court must apply heightened scrutiny in determining whether Plaintiffs are similarly situated for the purpose of the FLSA."); *Zivali v. AT&T Mobility, LLC,* 2011 WL 1815391, *2 (S.D.N.Y. May 12, 2011) ("In considering Mobility's post-discovery motion for decertification, however, the Court, now afforded a much fuller record, must apply a more 'stringent standard' of proof in determining whether plaintiffs are similarly situated for the purposes of the FLSA.").

Thus, if the named Plaintiff and the opt-in Plaintiffs are ***not*** all similarly situated now that discovery is completed, this Court "decertifies the class, and the claims of the opt-in plaintiffs are dismissed without prejudice" so that the "class representatives then proceed to trial on their individual claims." *Scholtisek v. Eldre Corp.,* 229 F.R.D. 381, 387 (W.D.N.Y. 2005). *See also Cuzco v. Orion Bldg., Inc.,* 477 F.Supp.2d 628, 632 (S.D.N.Y. 2007) (same). Courts in the Second Circuit will typically look at the following factors to determine whether Plaintiffs are "similarly situated": "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against [collective action treatment]." *Laroque v. Domino's Pizza, LLC,* 557 F.Supp.2d 346, 352 (E.D.N.Y. 2008).

As the court stated in *Zivali*: "The burden is on the named plaintiff to prove that the other employees are similarly situated."

## ARGUMENT

### THE NAMED PLAINTIFFS CANNOT MEET THE "SIMILARLY SITUATED" REQUIREMENT WITH RESPECT TO ALL MEMBERS OF THE FLSA COLLECTIVE FOR PURPOSES OF AVOIDING DECERTIFICATION OF THE FLSA COLLECTIVE ACTION

In this case, the named Plaintiffs cannot come close to meeting their burden at this post-discovery second stage of analysis that all members of the FLSA collective are "similarly situated" for purposes of the first and second causes of action. Accordingly, this Court should grant Defendants' instant motion and decertify the FLSA collective action at this time.

### A.    The FLSA Collective Is Not "Similarly Situated" With Respect To The Claim For Alleged Unpaid Overtime (2nd Cause Of Action)

Plaintiffs' Second Cause of Action in the Amended Complaint alleges (at ¶ 165) that Defendants failed to pay "the FLSA Collective overtime wages for all of the hours they worked in excess of 40 hours in a work week." However, the record established during discovery fails to show

6

that all members of the FLSA Collective were not paid overtime in any similar fashion and pursuant to a companywide policy to not pay overtime, and therefore Defendants' instant motion to decertify should be granted.

First, USN's payroll records, including Plaintiffs' own pay stubs, unmistakably demonstrate that the Company *did* pay overtime compensation for overtime hours worked. See Exhibit D. Thus, there clearly cannot be any uniform companywide policy of refusing to pay overtime to non-exempt employees because the documentary evidence shows that USN paid overtime to non-exempt employees. Any claim by a particular Plaintiff that he or she worked overtime on a particular day but did not get paid overtime for that particular day necessarily requires an individualized inquiry into that employee's circumstances on that day (*i.e.,* the nature of the alleged work done by that employee on that day, the number of hours actually spent performing work that day and week, the nature of USN's investigation if that employee brought it to USN's attention, and the reason the employee was not paid for that day (if true)). A failure to pay overtime claim in this case cannot be tried by the representative testimony of one or a couple of named Plaintiffs who have different experiences from other members of the same FLSA Collective.

Second, and more critically, Plaintiffs' own testimony highlights the need for an individualized analysis for any claim that someone may be owed overtime for a particular day. For example, while Plaintiffs' counsel obviously contends that all members of the FLSA Collective were not paid overtime in violation of the FLSA, named Plaintiff Efrain Mendez-Rivera on the other hand testified that USN *did* pay him overtime in certain cases, and further testified that some employees did get paid overtime that they were owed, though others were not (according to him and his hearsay account). Exhibit E at 33, 39. In Plaintiff Mendez-Rivera's case, he acknowledges that in his six months of employment back in 2012, he was paid overtime by the Company, but claims that there were a total of ***three hours*** in those six months that were not paid. Plaintiff Mendez-

Rivera saw "hundreds of people" working for the Company, yet only was aware of about "15 or so" that may have complained about some issue with overtime pay. *Id.* at 59-61. If Plaintiff Mendez-Rivera admits he was almost always paid overtime, but we need to separately look into the three hours that he claims were not paid to him, that clearly does not support a claim that he was treated in a "similarly situated" manner to all other members of the FLSA Collective for purposes of the post-discovery "stringent standard" that applies at this stage. And it clearly does not support a claim that USN had an unlawful companywide policy of failing to pay overtime to an entire collective group.

To further highlight the individualized nature of Plaintiffs' overtime claims, another named Plaintiff Daniel Sante testified that ***he could not recall a single date when he was not paid for the overtime that he worked***. Exhibit F at 34-35. Plaintiff Sante readily admits that he was paid overtime and admits that his overtime pay was noted in his paychecks. *Id.* at 35. See also Exhibit G. How can Plaintiffs be permitted to maintain this action as a representative FLSA collective action when there are clearly differences in whether and why members of the FLSA Collective were paid overtime in particular, isolated circumstances?

And, named Plaintiff Aldraily Coiscou similarly testified as follows:

Q:      What do you understand overtime to mean?

A:      Well, overtime to me is extra time after you are working forty hours.

Q:      Did you work overtime hours in U.S. Nonwovens?

A:      ***Yes, several times I did work overtime***.

Q:      You didn't work overtime every week, did you?

A:      Not every week.

Q:      When you worked overtime, did the company pay you your overtime?

A:      ***Yes, they never stopped paying me*** . . . .

8

> Q:   *As we sit here today, do you believe that you are currently owed any overtime pay from the company?*
>
> A:   *No.*
>
> Q:   Did the company, to your knowledge, pay you your overtime when you worked there overtime?
>
> A:   *Yes.*

Exhibit H at 29-30 (emphasis added).

The payroll records for Plaintiff Coiscou further demonstrate that the Company did pay overtime to Plaintiff Coiscou. Exhibit I. In fact, both Plaintiff Sante and Plaintiff Coiscou also testified that they were not aware of any policy of the company to intentionally not pay their employees. Exhibit F at 77-78; Exhibit H at 54. Again, there can be no "similarly situated" FLSA Collective on an alleged unpaid overtime claim when it is clear that USN pays overtime (according to payroll documents) and it is clear that several Plaintiffs admit they were paid overtime (according to deposition testimony). Once again, if any individual claims he did not receive overtime pay for work done on a particular day, then that is the textbook definition of a need to engage in an individualized assessment.

From the Company's perspective, the COO testified that the intent and policy is to pay an employee's hourly rate for straight time and then time-and-a-half for any overtime worked. Exhibit A at 31. USN's payroll manager confirmed that all factory workers are paid time-and-a-half for hours worked over 40 in a week. Exhibit J at 37. There is clearly no companywide policy not to pay overtime, as even some of the named Plaintiffs readily admit that they were paid overtime. If Plaintiff Mendez-Rivera (or any other employee) alleges that he was not paid three hours of overtime in some week, the trier-of-fact will need to look into that Plaintiff's individualized case.

In *Desilva v. North Shore-Long Island Jewish Health Sys., Inc.,* 27 F.Supp.3d 313 (E.D.N.Y. 2014), Judge Chen recently decertified a conditionally-certified FLSA collective because

plaintiffs failed to point to an unlawful companywide practice, and thus the court had to look at individual circumstances of each plaintiff to see if that employee worked compensable overtime without being paid for some reason. The court added that even automatic meal deduction practices were not *per se* illegal and did alone support proceeding on a class or collective basis: "[T]here is no specific prohibition against requiring an employee to report having worked in order to receive pay for time worked. . . . It simply cannot be the case that merely establishing a process for an employee to report overtime worked transforms a legal policy, namely 'auto deduct' into an illegal one." *Id.* at 322.

Similarly, in *Ruiz v. Citibank, N.A.,* 2015 WL 1254820 (S.D.N.Y. Mar. 19, 2015), the court granted a motion to decertify the conditionally-certified opt-in collective group on the basis that, among other things, there was no evidence of a "common plan or scheme to subvert" the company's otherwise legal and appropriate companywide policies. *See also Hinterberger v. Catholic Health Sys.,* 299 F.R.D. 22, 55 (W.D.N.Y. 2014) (decertifying collective group because there was a lack of "any system-wide policy or practice that was applied to each of the four named Plaintiffs, much less the numerous opt-in plaintiffs."); *Seward v. International Bus. Machine Corp.,* 2012 WL 860363 (S.D.N.Y. Mar. 9, 2012) (decertifying collective group of plaintiffs claiming they were required to work off the clock); *Espinoza v. County of Fresno,* 290 F.R.D. 494 (E.D. Ca. 2013) (decertifying collective action because individualized determinations were necessary to "sort out" which employee worked compensable overtime from those who did not, and why an employee may not have been compensated if he did); *Briggins v. Elwood TRI, Inc.,* 882 F.Supp.2d 1256, 1263 (N.D. Ala. 2012) (granting decertification motion because "even if some plaintiffs may have prima facie cases of FLSA violations, the plaintiffs have not established evidence of a single decision, policy, or plan that caused them to work off the clock.").

Finally, while Defendants do not dispute that overtime pay is generally required even if

overtime work is not expressly authorized, the obligation to pay overtime is not limited and still demand individualized proof in light of the Plaintiffs' claims in this case. As the Second Circuit has held, a plaintiff must prove (1) that he worked overtime without compensation, and (2) that the employer had actual or constructive knowledge of that overtime work and that it was not compensated. *Kuebel v. Black & Decker, Inc.,* 643 F.3d 352 (2d Cir. 2011). *See also* 29 C.F.R. § 785.11 ("if the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted").

In *Holzapfel v. Town of Newburgh, N.Y.,* 145 F.3d 516, 523 (2d Cir.), *cert. denied,* 525 U.S. 1055 (1998), the Second Circuit noted the appropriate individualized inquiry for an employee's unpaid overtime claim:

> If, however, the employer did not require the expenditure of the contested time, the jury should then consider whether the employee expended his time primarily for the benefit of the employer. If the employee was motivated primarily by his or her own pleasure, then the time was not expended primarily for the employer's benefit and it is not compensable; similarly, if the time was expended primarily to inflate the employee's earnings, then the time was not primarily for the employer's benefit and is not compensable. On the other hand, if the employee was devoting the allegedly excessive time to the task primarily for the employer's benefit, then the employee has satisfied his burden as to this part of the test.

*See also Hinterberger v. Catholic Health Sys.,* 299 F.R.D. 22, 37 (W.D.N.Y. 2014) ("The relevant knowledge is not 'I know the employee was working,' but 'I know the employee was working <u>and</u> not reporting his time.'" (emphasis in original) (citation omitted).

As the payroll records and deposition testimony summarized above show, USN employees were paid overtime compensation in their paychecks for overtime worked. As the above-cited cases also demonstrate, however, if an individual claims that he or she worked overtime (or additional overtime) that was not paid for some reason, there can be no "representative" trial testimony; *that* employee must testify and be examined on what overtime work was allegedly performed, the reason

it was performed, and why it was or was not compensated in a particular situation. That is the antithesis of a collective action. Similarly, any claim that any individual performed compensable work during a meal break also requires an individualized analysis of each individual's situation. *See Desilva v. North Shore Long Island Jewish Health Sys., Inc.,* 27 F.Supp.3d 313, 321, 322 (E.D.N.Y. 2014). *See also Mendez v. Radec Corp.,* 232 F.R.D. 78, 83 (W.D.N.Y. 2005) ("[N]ot every interruption of an employee's lunch break renders the entire break period compensable under the FLSA. The question is not whether an employee did <u>any</u> work at all during the meal period, but whether that period itself is used primarily to perform activities for the employer's benefit.") (emphasis in original); *Willoughby v. Youth Villages, Inc.,* 2015 WL 4127276, * 6 (N.D.Ga. June 26, 2015) ("the factual circumstances of this case [*i.e.,* whether employees could or could not take an automatically deducted meal break, and whether employees sought/received cancellations of the automatic breaks when they could not] – which require the court to make such individualized inquires – preclude collective determination.").

The problem with proceeding with a representative collective action is that each employee may have a different reason for punching or not punching early or late. Sometimes employees would come in early because they share rides with others and get dropped off earlier than the start of their shift, but nevertheless go to punch in when dropped off (despite not performing work until their shift starts). Exhibit J at 170-71; Exhibit A at 90; Exhibit B at 136. Since many employees do not arrive in their own cars, many have been known to come to the building together, punch in at the same time, and then sit in the lunch room or roam around the building until their shift starts. Exhibit J at 174-75, 177. However, USN's COO was clear on the Company's intent, policy and practice to pay *for all time actually worked*:

> A:   If you are working during the shift, you get paid for it. If there is no shift and you are just hanging around because you're waiting for a ride and then you leave and then you punch out because your ride got there, you were there for an extra 15 minutes, then you don't get paid for that. . . .

12

> You cannot assume that because someone punched in a little earlier that they were working. The answer to your question is if they were working, they got paid. If they didn't get paid for working, then we would have the discrepancies and those are the discrepancies we are talking about. . . .
>
> The answer would be if they worked, if they were working, they would get paid. That's the answer to your question.

Exhibit A at 93-94, 97-99.

Critically, USN's payroll manager further testified that a particular employee's manager would know if that employee actually performed work pre- or post-shift, and that manager in an individual case *could* authorize payment for such pre- or post-shift work. Exhibit J at 170-71. There is, therefore, no uniform unlawful policy *not* to pay every employee for pre-shift or post-shift work, and any claim for unpaid overtime wages necessarily requires an individualized assessment into whether *that* individual employee worked or not, and when.

### B.   The FLSA Collective Is Not "Similarly Situated" With Respect To The Claim For Alleged "Untimely" Overtime (1st Cause Of Action)

Plaintiffs' First Cause of Action in the Amended Complaint alleges (at ¶ 160) that Defendants failed to pay "the FLSA Collective overtime wages to which they are entitled under the FLSA in a timely manner consistent with the FLSA and the supporting regulations[.]" However, this cause of action is even *less* appropriate to maintain as a representative collective action now that discovery has been completed than the other cause of action alleging unpaid overtime generally. Put simply, with some Plaintiffs acknowledging that they were paid overtime in full, some Plaintiffs alleging that overtime was paid after a concern was raised and the Company had an opportunity to investigate the particular matter, and some Plaintiffs still alleging that overtime may still be owed for a particular day, there is no way that this cause of action can proceed to any trial through any named Plaintiffs acting as "representatives" for the experiences of everyone else in the FLSA Collective. Therefore, Defendants' instant motion to decertify should be granted.

13

Plaintiffs cite the applicable United States Department of Labor ("DOL") regulation in their Amended Complaint (at ¶ 160), yet artfully gloss over the fact that that regulatory section in and of itself makes clear that an individualized assessment is required for any claim that an individual believes he or she was not paid overtime and was not paid "timely." Specifically, the question of what is "timely" will necessarily differ on a case-by-case basis under the circumstances. In that vein, Section 778.106 expressly states as follows:

> There is no requirement in the [FLSA] that overtime compensation be paid weekly. . . . When the correct amount of overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of *the [FLSA] will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable*. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made.

29 C.F.R. § 778.106 (emphasis added).

The Second Circuit has held that whether that standard is violated "must be determined by reference to objective standards." *Rogers v. City of Troy,* 148 F.3d 52, 58 (2d Cir. 1998). As the record in this case makes clear, the trier-of-fact would need to look at "why overtime payments were late," and this would be different for various employees. *Conzo v. City of N.Y.,* 667 F.Supp.2d 279, 289 (S.D.N.Y. 2009). Thus, and particularly in light of the fact that USN does otherwise pay overtime to its factory workers and does pay additional overtime as quickly as possible after an employee brings an issue to USN's attention, any claim by an individual that certain overtime was not paid on a particular occasion in a "timely manner" under the FLSA requires an individualized inquiry into the nature of any overtime worked by that individual, when the individual alerted USN to the additional overtime worked and/or when USN became aware of any additional overtime work claimed to have been worked, when USN was able to investigate and, if appropriate, pay that

14

additional overtime compensation to that individual, and, ultimately, whether the extra payment in that instance was made "as soon after the regular pay period as is practicable" in that situation. It is impossible to conclude, however, that the members of the FLSA Collective can be all similarly situated for purposes of this claim. *See Edwards v. City of New York,* 2011 WL 3837130 at *11 (S.D.N.Y. August 29, 2011), *quoting* 29 C.F.R. § 778.106) (emphasis added). *See also Conzo v. City of New York,* 667 F. Supp.2d 279, 288 (S.D.N.Y. 2009), *citing Rogers v. City of Troy,* 148 F.3d 52, 55 (2d Cir. 1998); *Hinterberger v. Catholic Health,* 2009 WL 4042718, *3 (W.D.N.Y. Nov. 19, 2009).

Indeed, if there is any Company policy at all, it is that USN intends to pay its employees what is owed and when it is owed. Exhibit A at 41. As the COO testified: "Just judging by the numbers, if you have 500, 400, 300 employees punch in, punch out, that's 600 a day times five days, that's 3,000 transactions. So when you have 15 in one year coming to me, I'm sure there was definite measures in place that that 15 out of, so if you take 3,000 and multiply by 52 weeks, what is that 150,000 transactions, I think 15 out of 150,000 is .0001. I think that's something good going on." *Id.* at 48-49. As Mr. Mehdizadeh added: "Judging by the fact that we do try, our intent is to pay people for their work. We are not here to nickel and dime, we are here to pay people for their work." *Id.* at 126.

Employees were all paid on a weekly basis and any claim that certain particular overtime hours were not paid in a timely manner must again require an individualized inquiry into the circumstances of any employee who claims that certain hours were not paid. Plaintiff Coiscou testified that he was paid weekly, and was never missing any hours. Exhibit H at 15, 32, 39, 47-48. On the other hand, Plaintiff Sante alleges that there was a "delay" of certain hours being compensated in one single paycheck he had received five years ago back on December 9, 2010. Exhibit F at 65. However, Plaintiff Sante was unable to describe what had to be investigated for his

particular circumstances to determine if those few hours in December 2010 were not compensated, although he did acknowledge that he did get fully paid after the Company's investigation into that particular instance. *Id.* at 42, 48.

USN always had an established complaint practice whereby employees could bring any paycheck concerns to human resources and management. USN recorded the employees' time through automated time clocks, and there were occasions where employees would use the time cock incorrectly or forget to punch in or out. Exhibit C at 52; Exhibit A at 24; Exhibit B at 26. While Plaintiffs' motion tries to make it sound as if any and all mistakes stemmed solely from the Company, even named Plaintiff Sante acknowledged that there *were* days that he forgot to punch in when he got there. Exhibit F at 61. As far as Company practices go, Plaintiff Mendez-Rivera admitted at his deposition as well that when his supervisor became aware of a problem with the time clock, his supervisor would attempt to fix the problem and make sure the employee was paid the correct amount of time they worked. Exhibit E at 55-56.  So where is the uniform companywide policy of refusing to timely pay employees generally to the entire FLSA Collective as would be required for this action to proceed as an FLSA collective action now that discovery has been completed?

Indeed, if an employee felt there was a discrepancy in a payroll check, the employee would typically be required to go to his or her manager/supervisor for correction, who would then sign an adjustment form and bring the issue to human resources for processing. Exhibit J at 44-46, 102, 106-10; Exhibit B at 83, 85; Exhibit A at 13-14, 16, 20. Once the Company began to grow even more, USN's practice began to gradually become even more proactive over time, such that the Company's payroll department started to go to individual managers before the week's payroll is processed to inquire whether the managers have seen any time clock or work time issues. Exhibit J at 59, 61, 65, 116. The Company's CEO has also installed more time clocks in multiple locations to

16

try to alleviate any recording issues, and had asked human resources to continue to be more proactive with managers to inquire about any employee complaints before a week's paycheck is issued. Exhibit B at 89-90, 94.

As noted above, the named Plaintiffs and putative class members are and were paid on a weekly basis. If payroll became aware of an employee concern about a particular paycheck, a brief investigation would be done to look at the issue and the Company would always try at least to include any verified hours that were unpaid in the very next payroll period where possible. Exhibit J at 110-11, 130, 142-43; Exhibit B at 87. If an employee had and raised a concern about hours worked on a particular occasion, USN would have to look at that individualized case and pay the employee (if, in fact, it was owed) as quickly as it could get into payroll.  As there are unique claims and defenses associated with each individual plaintiff's claims, those claims and defenses would dominate any "representative" trial. The issue in Plaintiffs' First Cause of Action is simply not susceptible to representative proof.

C.   **Fairness And Procedural Considerations Militate**
     **Against Proceeding By Collective Action In This Case.**

As noted above, of the 1,238 factory workers to whom notice was sent in the beginning of this case, there are currently only 85 individuals who joined this case. More than 93% of the individuals receiving notice did not join this action. Yet, because of the highly-individualized nature of inquiry into whether each individual worked overtime hours (beyond the overtime for which they were already paid) and why such individual may not have been paid overtime, or have been paid timely, in a given case, Defendants would need to – and would be entitled to – present evidence at trial regarding the circumstances and issues associated with each instance that a violation of law is claimed in contravention of the Company's stated general practice. The claims in Plaintiffs' first and second causes of action are, therefore, not at all susceptible to proceeding on the basis of "representative proof" as all members of the FLSA Collective are clearly not similarly situated for

17

these two asserted claims.

If (as here) each individual factory worker's circumstances will have to be examined at any trial to determine whether he or she was owed overtime and whether he or she was paid "timely" under the circumstances, then no efficiencies would be gained by proceeding collectively. To the contrary, Defendants would be severely prejudiced by being forced to do so.

## CONCLUSION

Now that discovery has been completed in this action, the named Plaintiffs' allegations have been fleshed out. It is crystal clear that the named Plaintiffs are not "similarly situated" to themselves or others in the defined FLSA Collective, and should not be allowed to continue to act as representatives in this FLSA action for purposes of Plaintiffs' first and second causes of action. Accordingly, Defendants respectfully request that the Court grant their instant motion in its entirety, decertify the previously "conditionally certified" collective action in this case, and award such other and further relief as the Court deems just and proper.

Dated: New York, New York
       August 31, 2015

                                        Respectfully submitted,

                                        COZEN O'CONNOR
                                        Attorneys for Defendants

                              By:       _____
                                        Michael C. Schmidt (MS7841)
                                        277 Park Avenue
                                        New York, New York 10172
                                        (212) 453-3937