UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
EFRAIN DANILO MENDEZ A/K/A EFRAIN D.
MENDEZ-RIVERA, ALDRAILY ALBERTO
COISCOU, FERNANDO MOLINA A/K/A
JORGE LUIS FLORES LARIOS, SIRYI
NAYROBIK MELENDEZ and RENE
ALEXANDER OLIVA, individually and on behalf
of all others similarly situated,

                  12-CV-5583 (ADS) (SIL)

       Plaintiffs,

 -against-

U.S. NONWOVENS CORP., SAMUEL
MEHDIZADEH A/K/A SOLOMON MEHDIZADEH,
SHERVIN MEHDIZADEH, and RODY
MEHDIZADEH,

       Defendants.
-----------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DECERTIFY THE "CONDITIONALLY CERTIFIED" FLSA COLLECTIVE ACTION

**COZEN O'CONNOR**
*Attorneys for Defendants*
277 Park Avenue
New York, New York 10172
(212) 453-3937

LEGAL\24605952\1

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION .........................................................................................................................1

REPLY ARGUMENT

    PLAINTIFFS' OPPOSITION FAILS TO JUSTIFY CONTINUING
    TO PROCEED IN *THIS* CASE AS A COLLECTIVE ACTION .............................................3

    A.  Counsel's Own Beliefs On The Merits Do Not Render This Action
        Appropriate For Representative Testimony When Plaintiffs Do Not
        Necessarily Have Representative Experiences .................................................................3

        1.  Plaintiffs Ignore That The Relevant Regulation Itself Contemplates
            The Need For Individualized Assessments Into Each Plaintiff's Claims ...................4

        2.  Plaintiffs' Argument About Alleged Systems To Verify Discrepencies
            Does Not Warrant The Continuation Of A Representative Action ............................4

        3.  Plaintiffs' Cacophony Of Various Alleged "Policies" Does Not
            Warrant The Continuation Of A Representative Action .............................................5

    B.  Continuing This Case As A Representative Collective Action
         Most Certainly Is Not "Fair To The Defendants" ...........................................................11

CONCLUSION ............................................................................................................................12

# TABLE OF AUTHORITIES

*Briceno v. USI Serv. Corp., Inc.*, 2012 WL 4511626 (E.D.N.Y. 9/28/12) ...............................7

*Briggins v. Elwood TRI, Inc.*, 882 F.Supp.2d 1256 (N.D. Ala. 2012) ......................................5

*Desilva v. North Shore-Long Island Jewish Health Sys., Inc.*, 27 F.Supp.3d 313
(E.D.N.Y. 2014) ...........................................................................................................4, 6, 7

*Ellis v. Common Wealth Worldwide Chauffeured Transp. of N.Y., LLC*,
2012 WL 1004848 (E.D.N.Y. 3/23/12) ..........................................................................6

*Fengler v. Crouse Health Found., Inc.*, 595 F.Supp.2d 189 (N.D.N.Y. 2009) ........................6

*Fernandez v. Wells Fargo Bank*, 2013 WL 4540521 (S.D.N.Y. 8/28/13) ................................5

*Haight v. The Wackenhut Corp.*, 692 F.Supp.2d 339 (S.D.N.Y. 2010) ....................................8

*Hinterberger v. Catholic Health Sys.*, 299 F.R.D. 22 (W.D.N.Y. 2014) ..................................6

*Indergit v. Rite Aid Corp.*, 293 F.R.D. 632 (S.D.N.Y. 2013) .................................................11

*Johnson v. Big Lots*, 561 F. Supp.2d 567 (E.D. La. 2008) ................................................3, 12

*Mendez v. Radec Corp.*, 232 F.R.D. 78 (W.D.N.Y. 2005) .......................................................8

*Seward v. International Bus. Mach. Corp.*, 2012 WL 860363 (S.D.N.Y. 3/8/12) ...................9

*Singh v. City of New York*, 524 F.3d 361 (2d Cir. 2008) .........................................................8

*Stevens v. HMSHost Corp.*, 2014 WL 4261410 (E.D.N.Y. 8/27/14) .....................................11

*Willoughby v. Youth Villages, Inc.*, 2015 WL 4127276 (N.D. Ga. 6/26/15) ...........................8

*Zivali v. AT&T Mobility, LLC*, 784 F.Supp.2d 456 (S.D.N.Y. 2011) ......................................5

## INTRODUCTION

The federal FLSA claims in the Complaint assert that Plaintiffs were not paid overtime, or were paid late, although the testimony summarized in Defendants' moving papers show that some Plaintiffs acknowledge that they *were* paid overtime, paid timely, and are not owed any overtime by USN. Defendants' Init. Memo. of Law (Docket No. 176) at 1, 7-9. The payroll records submitted with Defendants' moving papers also show that USN pays overtime. Exhibits D, I.[1] Therefore, there cannot be and is not a companywide, illegal policy affecting everyone the same way, as Plaintiffs were required to show to maintain this case as a collective action now that discovery is completed. It is as simple as that.[2]

Rather than focus on the unmistakably different employee experiences quoted in Defendants' moving papers, Plaintiffs begin their opposition brief with an expose on working life in America and excerpts from a literary piece from more than 230 years ago. Yet, Defendants do not dispute Plaintiffs' general notion (at 1) that every man (and woman) likely holds personal labor to be sacred and inviolable, or that the FLSA was enacted in 1938 to ensure certain basic wage and hour protections for covered employees. Defendants also do not dispute Plaintiffs' truism (at 2) that District Courts have "the duty to assure that claims under the FLSA are resolved fairly[.]" Neither premise addresses Defendants' *instant* motion.

The substantive protections afforded employees and the duty to resolve FLSA claims must await summary judgment or trial. The sole issue in the *instant* motion, at this post-discovery stage, is whether the Named Plaintiffs can appropriately act as "representatives" for *all* of the other 78

---

[1]   References to "Exhibit __" (and not to "Reply Ex. __") are to the particular exhibit submitted with Defendants' initial memorandum of law. Docket No. 176.
[2]   Plaintiffs posit the question (at 4) whether discovery is complete. The answer: yes. Based on this Court's prior scheduling order, the discovery completion date came and went on May 29, 2015. Defendants are not aware of any application by Plaintiffs prior to their separate Rule 23 certification motion to extend the discovery deadline or to compel production of items they now seem to claim they are owed.

1

opt-ins when the time does come to resolve whether any of the Plaintiffs (Named or Opt-In) were not paid overtime compensation and/or were not paid overtime compensation in a timely manner under federal law. In desiring to have FLSA claims get resolved fairly, Plaintiffs' opposition ignores the fact that the procedural mechanism of a collective action is no longer appropriate in light of the stark differences between the Plaintiffs on the very federal law claims that are at issue.

Put very simply, if members of the collective group admit that they *were* paid overtime, while others contend that were not paid overtime, and if members of the collective group admit that they *were* paid overtime on time, while others contend that there were some delays occasioned by a Company investigation into a particular situation, Plaintiffs' two federal claims **cannot by definition be representative in nature** and can only be resolved by looking at the nature of work performed by a particular employee in a particular week and the reason why that employee may or may not be owed overtime for that particular week (and if owed, whether or why that employee was not paid). How can Plaintiff Mendez-Rivera testify in a representative capacity as to the experiences of Plaintiff Sante or Plaintiff Aldraily or any other individual, when Mendez-Rivera claims he is owed a few hours of overtime, while Sante and Aldraily admit that they are not aware of any occasion when the Company did not pay them overtime for their overtime hours worked?

Defendants' instant motion does not "take aim" only at a mere "variation in damages" as Plaintiffs' opposition suggests (at 4). Rather, Defendants' moving papers made clear that the experiences – and claims – of some Plaintiffs simply do not reflect and cannot be determinative of the *liability* claims of all the others. Plaintiffs' opposition fails to articulate any basis to justify continuing to maintain this case as a collective action under the FLSA in light of the procedural and substantive prejudice that Defendants would suffer at this point. Indeed, the very danger of

allowing Plaintiffs to maintain an inappropriate collective action leading up to any trial is illuminated in *Johnson v. Big Lots,* 561 F. Supp.2d 567, 587 (E.D. La. 2008), where the court initially did not decertify the federal claims **before** the parties prepared for and presented evidence at trial, yet ultimately felt compelled to decertify the collective group later, stating that it "regrets that it must decertify this action at this stage [during trial], after the large investment of resources by the parties."

Therefore, Defendants' instant motion to decertify should be granted in its entirety.

## REPLY ARGUMENT

### PLAINTIFFS' OPPOSITION FAILS TO JUSTIFY CONTINUING TO PROCEED IN *THIS* CASE AS A COLLECTIVE ACTION

A. **Counsel's Own Beliefs On The Merits Do Not Render This Action Appropriate For Representative Testimony When Plaintiffs Do Not Necessarily Have Representative Experiences.**

There cannot be a common, unlawful policy to refuse to pay overtime when employees admit (and their paychecks show) that they *were* paid overtime. There also cannot be a common, unlawful policy to refuse to pay overtime "timely" when employees admit that they *were* paid overtime when they worked overtime, and the evidence shows that, in other particular cases, employees were paid promptly after raising an issue about their pay and the company had an opportunity to look into the particular circumstances. Discovery has now revealed that this case is not appropriate for the representative testimony that a collective action by its very nature requires. See cases cited in Defendants' Init. Memo. of Law at 9-12.[3]

---

[3] Plaintiffs continue to try to "poison the Court's mind" (at 3) by advancing scandalous allegations about alleged cold, poorly ventilated conditions. Defendants would adamantly deny the allegations, but they have nothing to do with this motion or this wage and hour case.

3

1. **Plaintiffs Ignore That The Relevant Regulation Itself Contemplates The Need For Individualized Assessments Into Each Plaintiff's Claims.**

Plaintiffs' recitation of the FLSA's payment requirement (at 5-6) glosses over 29 C.F.R. § 778.106. Rather than quoting the entire regulation as Defendants did in their moving papers (at 14), Plaintiffs curiously omit the one portion quoted in bold in Defendants' papers: *". . . the requirements of the [FLSA] will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable."* The regulation itself, coupled with the Plaintiffs' testimony quoted in Defendants' moving papers, shows that an analysis of each individual must be conducted in this case to determine if there is liability to any individual. Again, since some Plaintiffs admit they were paid overtime, and on time, there is clearly no common, unlawful policy of not paying overtime and not paying it timely.

2. **Plaintiffs' Argument About Alleged Systems To Verify Discrepancies Does Not Warrant The Continuation Of A Representative Action.**

Plaintiffs state categorically (at 6-8) that there were no systems in place for verifying hours prior to the issuance of paychecks. Curiously missing from Plaintiffs' discussion is a single case to show that a "system in place" *prior* to the issuance of paychecks (as opposed to a practice or procedure allowing employees to raise any issues with paychecks they receive) is required by law, or that its absence has any meaning in law for purposes of this motion. *Compare Desilva v. North Shore-Long Island Jewish Health Sys., Inc.*, 27 F.Supp.3d 313, 322 (E.D.N.Y. 2014) (Chen, J.) ("[T]here is no specific prohibition against requiring an employee to report having worked in order to receive pay for time worked.").

The fact remains that USN **had and has** a system in place for employees to address payroll discrepancies, and that employees acknowledged that the Company investigated and remedied issues when raised. See Defendants' Init. Memo. of Law at 12-13, 16-17. More importantly, however, Plaintiffs' argument does not address the issue raised by *this* motion; namely, whether one will need to

4

look at individual employee circumstances to determine liability because some employees argue they did not get paid for particular overtime hours, while some conceded (and have pay stubs that show) that they did.

### 3. Plaintiffs' Cacophony Of Various Alleged "Policies" Does Not Warrant The Continuation Of A Representative Action.

Plaintiffs make vastly overbroad statements in their opposition as to what they believe was the impact of so-called policies, still ignoring that this is not a summary judgment motion. However Plaintiffs choose to self-servingly characterize any alleged policies, the post-discovery record still shows that some Plaintiffs, like Plaintiff Sante and Plaintiff Coiscou, confirm that they did work overtime and were paid overtime (see Defendants Moving Memo. of Law at 8-9), while others apparently claim that was not the case. The sole issue on this motion is whether one small group can properly and fairly act as representatives for the experiences of everyone. They cannot.

If any policy was established in the record during discovery it is that USN's policy is to pay its employees what is owed, when it is owed, and that the Company would investigate any and all discrepancies brought to the Company's attention. See Defendants' Initial Memo. of Law at 9, 12-13, 15-17. Yet, Plaintiffs concoct various alleged "practices/policies" to suggest that everyone was somehow treated the same way. For example, Plaintiffs allege (at 10-11) that USN only paid for scheduled shift hours. The fatal flaw in Plaintiffs' argument is that any "no punch, no pay" policy, even assuming its existence, is also not in and of itself unlawful, and therefore one must again look at an individual employee's particular circumstances to determine whether there has been a violation of the law in a given instance. *See, e.g., Zivali v. AT&T Mobility, LLC*, 784 F.Supp.2d 456, 465 (S.D.N.Y. 2011) ("the defenses available to Mobility appear to be highly individual to each plaintiff"); *Fernandez v. Wells Fargo Bank*, 2013 WL 4540521 (S.D.N.Y. 8/28/13) (same); *Briggins v. Elwood TRI, Inc.*, 882 F.Supp.2d 1256, 1263 (N.D. Ala. 2012) (no evidence of a "single decision, policy, or plan that cause [plaintiffs] to work off the clock").

5

Thus, some anecdotal evidence regarding a purported *"de facto"* compensation policy does ***not*** constitute proof that any companywide, unlawful policy was applied generally for the purpose of denying pay or limiting the employees' ability to properly record time. As discussed in its moving papers, USN has always had a complaint process that was not only in effect, but was admittedly utilized by employees who may have believed that they were not paid for certain hours worked even if the employee failed to properly punch in or out on a particular day. Notably, Opt-in Juan Flores submitted an affidavit with Plaintiffs' papers where he refers generally (at ¶ 11h) to a so-called "no-punch, no-pay" policy, but yet also acknowledges in the very same paragraph that it happened to unnamed "people" but ***"did not happen to me."*** Clearly, there is no companywide (illegal) policy applied to and affecting everyone in the requested collective group. As also discussed in Defendants' moving papers, despite failing to punch or having a problem with punching, Plaintiffs admit that some were in fact ultimately paid upon review by the Company when brought to its attention to investigate. So, again, where is the uniform unlawful policy applied on a companywide basis? In short, there cannot be a representative collective action for a claim when some, but not all, factory workers believe they were not paid on some, unidentified occasions.

Plaintiffs next point (at 10-11) to an alleged automatic meal time deduction "policy," but that too only highlights the need for decertification at this stage. Indeed, "[a]s courts in this circuit have recognized, automatic meal deduction policies are not *per se* illegal." *Desilva v. North Shore-Long Island Jewish Health Sys., Inc.*, 27 F.Supp.3d 313, 321 (E.D.N.Y. 2014), *citing Ellis v. Common Wealth Worldwide Chauffeured Transp. of N.Y., LLC*, 2012 WL 1004848 (E.D.N.Y. 3/23/12). *See also Fengler v. Crouse Health Found., Inc.*, 595 F.Supp.2d 189, 195 (N.D.N.Y. 2009) ("[T]he mere existence and implementation of a policy or practice of making automatic deductions for scheduled meal breaks in and of itself does not violate the FLSA."); *Hinterberger v. Catholic Health Sys.*, 299 F.R.D. 22 (W.D.N.Y. 2014) (same). Critically, "employers utilizing an automatic

6

meal deduction policy may legally shift the burden to their employees to cancel the automatic meal deduction if they work through an unpaid meal." *Briceno v. USI Serv. Corp., Inc.*, 2012 WL 4511626, *6 (E.D.N.Y. 9/28/12).

Plaintiffs argue the point (at 10) as if they are proving the underlying claim on summary judgment or at trial, but we are not there yet. ***This*** motion only addresses whether Defendants can be forced to defend individualized claims with a representative sampling of plaintiff experiences. Indeed, the attorney-drafted affidavits submitted by Plaintiffs do not help their instant motion. For example, Aldraily Couscoi (at ¶¶ 7-8) and Siryi Melendez (at ¶ 6) declare that their supervisors told them to be back to work 30 minutes after the meal break started. That's the point of a 30-minute meal break. Where is the illegal companywide policy? Consequently, one must look at individualized circumstances to determine if any particular employee has a claim for unpaid work time during a meal break and whether USN knew that that employee worked through any particular meal break to be owed additional compensation. In that regard, USN's policy is to ensure that its employees are taking their meal break, and, as a general matter, the employees cannot be working during the mandatory break because the company shuts down the production line machinery, dims the lights, and turns off the electricity in the production area during the mandatory half-hour lunch break for all factory workers. See Reply Ex. A.

If any individual employee claims that he or she somehow performed work during a particular lunch break, and nevertheless had a meal break deduction in their paycheck, that would require an individualized inquiry into that employee's circumstances. Yet, Plaintiffs' moving papers fail to identify a single unlawful policy of USN that was applied companywide to warrant continuing this case as a representative action. *See Desilva*, 27 F.Supp.3d at 322 ("It simply cannot be the case that merely establishing a process for an employee to report overtime worked transforms a legal policy, namely 'auto deduct' into an illegal one."); *Mendez v. Radec Corp.*, 232 F.R.D. 78,

7

83 (W.D.N.Y. 2005) ("[N]ot every interruption of an employee's lunch break renders the entire break period compensable under the FLSA. The question is not whether an employee did <u>any</u> work at all during the meal period, but whether that period itself is used primarily to perform activities for the employer's benefit.") (emphasis in original); *Willoughby v. Youth Villages, Inc.*, 2015 WL 4127276, * 6 (N.D. Ga. 6/26/15 ("the factual circumstances of this case [*i.e.,* whether employees could or could not take an automatically deducted meal break, and whether employees sought/received cancellations of the automatic breaks when they could not] – which require the court to make such individualized inquires – preclude collective determination.").

Plaintiffs next point (at 11-12, 17) to some so-called "policy" regarding pre- and post-shift work, and wholly misstate the law with their general thesis (at 12) that "[b]ecause Defendants required employees to report to work at least five minutes prior to their scheduled shift time but only paid employees according to their scheduled shift time, Defendant failed to compensate employees for all hours worked." Even if true, however, a five-minute period prior to or after a shift is ***not*** in and of itself a blanket violation of the law given the *de minimis* rule of compensation. Thus, in *Singh v. City of New York,* 524 F.3d 361, 370-72 (2d Cir. 2008), the Second Circuit confirmed the standard for determining whether work is *de minimis* and did not need to be compensated, including the practical administrative difficulty with recording the time, the aggregate size of the claim, and whether the subject work was performed by the employee on a regular basis. Ancillary time of up to 7-10 minutes has generally been upheld as *de minimis*, and therefore, even accepting Plaintiffs' contention that some employees may have worked an additional five minutes here or there, unpaid work of five minutes for some is not evidence of an unlawful policy. *See, e.g., Haight v. The Wackenhut Corp.*, 692 F. Supp.2d 339, 345 (S.D.N.Y. 2010) (up to 7 minutes was "an insignificant amount of time").

More importantly, one would need to determine when a particular employee was or was not

actually working prior to or after an individual shift on an individual occasion. *Seward v. International Bus. Mach. Corp.*, 2012 WL 860363 (S.D.N.Y. 3/8/12) (whether an opt-in regularly booted up and why he did so are highly particularized questions and need to be resolved on an individualized basis). In any case, just as Plaintiffs try to mislead the Court that the factory workers are only paid based on a stated shift regardless of whether they perform work before or after their shift, USN's COO had to similarly stop Plaintiffs' counsel from mischaracterizing his testimony on that point at his deposition. Reply Ex. B at 127. In fact, while factory workers at USN have specific start and end times for their shifts based on when the machines on the production line are started and stopped, the record shows only that Company policy is still that "pre-shift work is work, so they would get paid for pre-shift work" if in fact an employee actually engaged in pre-shift work on a particular day. *Id.* at 113-14, 118-19, 126.

The problem is that each employee may have a different reason for punching or not punching early or late. Sometimes employees would come in early because they share rides with others and get dropped off earlier than the start of their shift, but nevertheless go to punch in when dropped off (despite not performing work until their shift starts). Reply Ex. C at 170-71; Reply Ex. B at 90; Reply Ex. D at 136. Since many employees do not arrive in their own cars, many will come to the building together, punch in at the same time, and then sit in the lunch room or roam around the building until their shift starts. Reply Ex. C at 174-75, 177. However, USN's COO was clear on the Company's ***intent, policy and practice to pay for all time actually worked***:

> A: If you are working during the shift, you get paid for it. If there is no shift and you are just hanging around because you're waiting for a ride and then you leave and then you punch out because your ride got there, you were there for an extra 15 minutes, then you don't get paid for that. . . .
>
> You cannot assume that because someone punched in a little earlier that they were working. The answer to your question is if they were working, they got paid. If they didn't get paid for working, then we would have the discrepancies and those are the discrepancies we are talking about. . . .

9

> The answer would be if they worked, if they were working, they would get paid. That's the answer to your question.

Reply Ex. B at 93-94, 97-99. ***That*** is the Company's ***policy***.

Plaintiffs' counsel submitted affidavits where he got various Plaintiffs to offer broad, general statements in the hope it would be enough to certify a class of hundreds of people.[4] For example, opt-in Siryi Melendez says (at ¶ 5) he was supposedly told to punch in early to avoid long lines, but wasn't paid for pre-shift work. Yet, no necessary connection is offered, as he does not declare that he actually performed particular pre-shift work on specific days he punched in solely to avoid a line. Opt-in Fernando Molina boldly opines (at ¶ 10) that he "typically" began working immediately and "often" began working pre-shift, though he does not identify particular dates and only highlights that one would need to look at days *he* supposedly worked pre-shift and why *he* may not have been paid as claimed. But most offensive is an affidavit counsel secured from Oona Muido, a payroll clerk employed for six months going back four years ago. The affidavit counsel submitted contains handwritten cross-outs of statements prepared for Muido that apparently he did not even agree with. How does that document get submitted to the Court?

Critically, USN's payroll manager further testified that a particular employee's manager would know if that employee actually performed work pre- or post-shift, and that the manager in an individual case ***could*** authorize payment for such pre- or post-shift work. Reply Ex. C at 170-71. Thus, there is no uniform unlawful policy ***not*** to pay every employee for pre-shift or post-shift work, and any claim for unpaid wages necessarily requires an individualized assessment into whether ***that*** individual employee worked or not, and when. Plaintiffs' opposition only makes the argument for Defendants when it states (at 13) that "many" workers have allegedly not been compensated for their work despite making the proper complaint. The problem is that others have

---

[4] Defendants had asked for the production of statements and affidavits during discovery, yet Plaintiffs did not produce any of the affidavits (going back years) that are now submitted with their opposition. Reply Ex. E at Nos. 11, 12. Defendants respectfully request that the Court disregard Plaintiffs' affidavits.

been compensated. That is why a representative action is no longer appropriate here.

Finally, the instant motion is not, as Plaintiffs' opposition suggests (at 14-16), only about doing an arithmetic calculation for an entire collective group of Plaintiffs. Instead, this motion demonstrates how, now that discovery is over, one cannot determine *liability* in the first place for the asserted federal claims by listening to a few select representatives try to extrapolate their experiences to everyone else. As Judge Glasser recently held:

> While an FLSA collective action is generally designed to efficiently resolve common issues in one proceeding, "[w]here there appears to be substantial different employment experiences among the various opt-ins the procedural advantages of a collective action cannot be realized.

*Stevens v. HMSHost Corp.*, 2014 WL 4261410 (E.D.N.Y. 8/27/14) (Glasser, J.), *quoting Indergit v. Rite Aid Corp.*, 293 F.R.D. 632 (S.D.N.Y. 2013).

### B. Continuing This Case As A Representative Collective Action Most Certainly Is Not "Fair To The Defendants."

Plaintiffs' opposition hardly touches on the ultimate question of fairness and procedural considerations, instead resorting back (at 20) to conflating the issue of determining liability on a representative basis and ascertaining damages. It bears emphasizing that the instant motion has nothing to do with "a review of the applicable [payroll] records" or whether "the amount of damages may be approximate." Because of the highly-individualized nature of inquiry into whether each individual worked overtime hours (beyond the overtime for which their pay stubs show they were already paid) and why such individual may not have been paid overtime in a given case, Defendants would need to – and would be entitled to – present evidence at trial regarding the circumstances and issues associated with each instance that a violation of law is claimed in contravention of the Company's stated general policy to the contrary. The claims in Plaintiffs' first and second causes of action are, therefore, not at all susceptible to proceeding on the basis of

"representative proof" as all members of the FLSA Collective are clearly not similarly situated for these two asserted claims.

The court in *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp.2d 567 (E.D. La. 2008) provides the road map for the perils of inappropriately proceeding as a collective action. As the Court stated there:

> After considering the full record, the Court reaches the inescapable conclusion that the all or nothing posture of this case makes ruling on the merits fundamentally unfair to both sides. Were the Court to rule in plaintiffs' favor, it would have to do so on the basis of proof that is not representative of the whole class, and the verdict would result in liability on the defendant in a magnitude that is not likely to be warranted in reality.

*Id.* at 588. *See also id.* at 587 ("Big Lots cannot be expected to come up with 'representative' proof when the plaintiffs cannot reasonably be said to be representative of each other.").

In the end, some Plaintiffs may have suffered some individual violation of the FLSA. Others' admissions undercut a claim that FLSA violations were either existing or pervasive in their own case. A blanket no-liability finding based on the claims of the latter individuals would be unfair to those, if any, who may have been truly aggrieved. At the same time, if the same all or nothing adjudication favors Plaintiffs, it will unfairly force Defendants to compensate certain Plaintiffs for certain types of alleged FLSA violations that those Plaintiffs admitted did not occur. Given that reality, the all or nothing, representative adjudication that Plaintiffs advocate is wholly improper and only shows that decertification at this stage is necessary.

## CONCLUSION

Based upon the foregoing, and on Defendants' prior submissions, Defendants respectfully request that the Court grant their instant motion to decertify in its entirety.

Dated: New York, New York
       October 23, 2015

                Respectfully submitted,

                COZEN O'CONNOR
                Attorneys for Defendants

By: _____
     Michael C. Schmidt (MS7841)
     277 Park Avenue
     New York, New York 10172
     (212) 453-3937