UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
EFRAIN DANILO MENDEZ a/k/a EFRAIN D.
MENDEZ-RIVERA, ADRAILY ALBERTO COISCOU,
FERNANDO MOLINA a/k/a JORGE LUIS FLORES
LARIOS, SIRYI NAYROBIK MELENDEZ, RENE
ALEXANDER OLIVIA, DANIEL SANTE, RAMIRO **ORDER**
CORDOVA, and JUAN FLORES-LARIOS, individually
and on behalf of all others similarly situated, CV 12-5583 (ADS) (SIL)

                         Plaintiffs,

     -against-

U.S. NONWOVENS CORP., SAMUEL MEHDIZADEH
a/k/a SOLOMON MEHDIZADEH, SHERVIN
MEHDIZADEH, and RODY MEHIDIZADEH,

                         Defendants.
------------------------------------------------------------------------X
**LOCKE, Magistrate Judge:**

       Plaintiffs commenced this action on behalf of themselves and all others similarly situated, seeking unpaid overtime compensation from Defendants U.S. Nonwovens Corp. ("Nonwovens"), Samuel Mehizadeh, Shervin Mehdizadeh, and Rody Mehdizadeh (collectively "Individual Defendants," together with Nonwovens, "Defendants") pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq.* and New York Labor Law ("NYLL"). Plaintiffs' motion for conditional certification of a collective action under the FLSA was previously granted. Presently before the Court is Defendants' motion for decertification. *See* Docket Entry ("DE") [175]. For the reasons set forth below, the motion is granted.

## BACKGROUND

### I. FACTUAL HISTORY

The underlying factual allegations were set forth comprehensively in District Judge Spatt's recent decision on Plaintiffs' motion to certify a Rule 23 class action and need not be repeated at length here. *See Mendez v. U.S. Nonwovens Corp.,* -- F.R.D. --, 2016 WL 231231 (E.D.N.Y. Jan. 15, 2016). Plaintiffs are current and former employees of Defendant Nonwovens, a New York corporation that operates facilities in Brentwood and Hauppauge, New York. The company manufactures, markets, and sells various products. *Id.* at *1. Individual Defendants Shervin Mehdizadeh, Rody Mehdizadeh, and Samuel Mehdizadeh, are Nonwovens's chief executive officer, chief operating officer, and a shareholder, respectively. *Id.* According to the Amended Complaint, the Individual Defendants "together own 100% of the outstanding shares of stock" of Nonwovens. Am. Compl. ¶ 19. The eight named Plaintiffs worked at Nonwovens during various time periods in several different positions. All were paid hourly. *Mendez,* 2016 WL 231231, at *1-2. Of the eight named Plaintiffs, five -- Mendez, Molina, Melendez, Oliva, and Cordova -- assert claims under the FLSA on behalf of themselves and the "FLSA Collective." *See* Am. Compl., First and Second Causes of Action.

Workers at Nonwovens were paid according to their assigned shifts. Each day, the plant managers posted a shift schedule that included a start time, thirty-minute break time, and end time for each shift. *Mendez,* 2016 WL 231231, at *2. The workers were required to take a one-half hour meal break at which time the machinery was shut down, lights dimmed, and electricity turned off. *Id.*

Workers used a "scanner" to punch in and out of work, and were paid according to their shift hours, minus the mandatory thirty-minute lunch break, not by the punch in and out times.

*Mendez,* 2016 WL 231231, at *2-3. It was company policy to pay overtime for multiple shifts or for work performed outside of the designated shift period. *Id.* at *3. Shervin Mehdizadeh testified that:

> [i]f the shift starts at 7 a.m. and they come a few minutes earlier, or an hour earlier because of dropoff and schedules, they will linger around the property. And then the machines start and the factory doors open at 7 . . . . They start getting paid at 7.
>
> If they come in earlier because work is assigned to them, and that's far and few between – let's say their shift is at 7 and somebody else is assigned to come at 6:30 to turn on the boiler or something, that other person will get paid from 6:30 when he comes in, but the other person will get paid from 7.

Deposition of Shervin Mehdizadeh ("Sherin Mehdizadeh Dep."), Moser Ex. 15, at 131-32); *see also* Deposition of Rody Mehdizadeh, Moser Ex. 14, at 94 ("If you are working during the shift, you get paid for it. If there is no shift and you are just hanging around because you're waiting for a ride and then you leave and then you punch out because your ride got there, you were there for an extra 15 minutes, then you don't get paid for that.").

Payroll was processed weekly. Prior to 2012, the payroll department prepared a report of hours worked which was approved by the appropriate supervisor. *Mendez,* 2016 WL 231231, at *3-4. After the paycheck was issued, an employee who found that he was not paid for overtime would raise any perceived underpayment with his manager. The manager would investigate the shortfall, and upon confirming it, bring the paycheck to one of the individual Defendants who approved payment for the missing hours. *Id.* at *4. A subsequent paycheck would include compensation for unpaid missing overtime. In late 2012, after this case was commenced, Defendants changed their payroll policy so that workers were required to review their hourly report before the paycheck was issued, not after. *Id.* at *5.

## II. PROCEDURAL HISTORY

### A. Conditional Certification

The Complaint filed on November 13, 2012 asserted a claim that Defendants failed to pay their employees overtime pursuant to the FLSA as well as state law claims under NYLL. *See* Complaint, DE [1]; FLSA, 29 U.S.C. § 216(b); N.Y. LAB. LAW §§ 190 *et seq.*; *id.,* §§ 650 *et. seq.* On November 15, 2013, prior to the amended complaint, Plaintiffs' motion for conditional certification was granted. *See* Order, DE [38]. The FLSA Collective included "all non-exempt workers employed by defendant U.S. Nonwovens in the State of New York from November 14, 2009 to the present (the 'FLSA Collective')." *Id.* Pursuant to the conditional certification order, the parties submitted an amended notice form that was approved by the Court, with revisions, on April 24, 2014, and this notice was sent to FLSA Collective members. *See* Order, DE [76]. Specifically, the notice was mailed to 1,238 potential collective class members, and at the end of the opt-in period, 79 current and former employees opted in, in addition to the eight named Plaintiffs. *See* Consent Forms, DE [72-74], [79-97], [101-13], [115-53], and [155-59].

On March 12, 2014, subsequent to conditional certification but before the notice was sent to the proposed collective, Plaintiffs amended their complaint. Amended Complaint ("Am. Compl.") DE [70]. The Amended Complaint added a federal cause of action under the FLSA for failure to timely pay overtime pursuant to 29 CFR § 778.106 as well as an additional state law claim.

After discovery was completed, the parties filed two motions: Defendants' motion to de-certify the collective action and Plaintiffs' motion to certify a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The motion for certification of a class has previously been

decided by Judge Spatt, and the motion to de-certify is the subject of this Order. Judge Spatt referred the motion to decertify to this Court for decision. Order of 9/19/15, DE [179].

**B. Plaintiffs' Motion to Certify a Class**

Plaintiffs' motion to certify a Rule 23 for "all non-exempt workers employed by U.S. Nonwovens in the State of New York from November 14, 2006 until the present" on the basis of the causes of action stated under New York Labor Law was granted in part and denied in part. *See Mendez,* 2016 WL 231231, at *1. For ease of analysis, Judge Spatt used three sub-classes provided by Plaintiffs consisting of all U.S. Nonwovens factory and warehouse workers who: (1) were paid by the hour and were not paid straight or overtime wages; (2) "received payment for straight wages or overtime more than seven days after the end of the workweek in which the straight wages or overtime were earned;" and (3) were not paid a spread of hours premium. *Id.* at *10. Judge Spatt granted the motion and certified a class solely with respect to only the third sub-class, which arises out of the fifth cause of action asserted by Plaintiffs, and denied class certification as to Plaintiffs' claims under NYLL for unpaid overtime and delayed payment of wages.

## DISCUSSION

**I. LEGAL STANDARDS**

Pursuant to the FLSA, a plaintiff may bring an action to "recover unpaid overtime compensation and liquidated damages from employers who violate the Act's overtime provisions." *Hoffmann v. Sbarro, Inc.,* 982 F. Supp. 249, 260 (S.D.N.Y. 1997) (citing 29 U.S.C. § 216(b)). An action under section 216(b) may be brought as a collective action, that is, by "one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "To establish liability under the FLSA on a claim for unpaid

overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011).

Unlike a Rule 23 class action, employees must affirmatively opt-in to an FLSA collective action. 29 U.S.C. § 216(b). Courts in this Circuit use a two-step procedure for determining whether certification as a collective action is warranted. *See Myers v. Hertz Corp.,* 624 F.3d 537, 554 (2d Cir. 2010). At the first stage, the plaintiffs must make a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* at 555 (quoting *Hoffmann,* 982 F. Supp. at 261). Plaintiffs in this case successfully met their burden at the first stage, a standard that is "set necessarily low." *Id.* at 555; *see also Genesis Healthcare Corp. v. Symczyk,* -- U.S. --, 133 S. Ct. 1523, 1530 (2013) (noting that the "sole consequence of conditional certification is the sending of court-approved written notice to employees . . . who in turn become parties to a collective action only by filing written consent with the court" (citations omitted)).

At the second stage, "the Court must apply heightened scrutiny in determining whether Plaintiffs are similarly situated for the purposes of the FLSA." *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.,* 27 F. Supp. 3d 313, 319 (E.D.N.Y. 2014). While the standard is higher at this stage, "the 'similarly situated' requirement of 29 U.S.C. § 216(b) is considerably less stringent than the requirement of Fed R. Civ. P. 23(b)(3) that common questions 'predominate.'" *Rodolico v. Unisys Corp.,* 199 F.R.D. 468, 481 (E.D.N.Y. 2001) (internal citation and quotation omitted). The decision to decertify is soundly within the court's discretion. *See Stevens v. HMSHost Corp.*, No. 10 CV 3571, 2014 WL 4261410, at *5 (E.D.N.Y. Aug. 27, 2014).

Most cases involve certification at the first stage, and "perhaps for that reason, '[t]he Second Circuit has yet to prescribe a particular method for determining whether members of a class are similarly situated' at the second, more stringent stage." *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279 298 (S.D.N.Y. 2015) (quoting *Pefanis,* 2010 WL 35644256, at *4). In considering whether members are similarly situated, "district courts generally analyze whether the following factors counsel for or against maintaining a collective action: '(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.'" *DeSilva,* 27 F. Supp. 3d at 320 (quoting *Laroque v. Domino's Pizza, LLC,* 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008) (internal quotation and citation omitted)). If the Court finds at this stage that the plaintiffs are similarly situated, the collective action may proceed; if not "the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her own claims." *Zivali v. AT & T Mobility, LLC,* 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011) (citing *Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 197 (S.D.N.Y. 2006)). It is the named plaintiffs' burden "to prove that the other employees are similarly situated." *Id.* at 461. "All that is required is a persuasive showing that the original and opt-in plaintiffs were common victims of a[n] FLSA violation pursuant to a systematically-applied company policy or practice such that there exist common questions of law and fact that justify representational litigation." *Pefanis v. Westway Diner, Inc.,* No. 08 Civ. 002, 2010 WL 3564426, at *4 (S.D.N.Y. Sept. 7, 2010); *see also Hinterberger v. Catholic Health Sys.*, 299 F.R.D. 22, 55 (W.D.N.Y. 2014) (noting that "[t]here is only one determination to be made at this second stage: Were Plaintiffs and the opt-in plaintiffs together subject to a . . . policy or practice, the lawfulness of which is susceptible to generalized proof").

It is clear that "[a] collective action under the FLSA is different from the typical class action under the Federal Rules of Civil Procedure, the strict requirements of which—numerosity, commonality, typicality, and adequate representation—do not apply to a collective action." *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014). Although the standard for establishing that the collective members are similarly situated under the FLSA is less stringent than the Rule 23 commonality standard, courts in this district have noted that these two standards are functionally similar. *See, e.g., Ruiz,* 93 F. Supp. 3d at 298-99 (agreeing that there is little difference in these analyses); *Gardner v. Western Beef Props., Inc.,* No. 07-CV-2345, 2013 WL 1629299, at *6 (E.D.N.Y. Mar. 25, 2013) (noting that "[t]he similarly situated analysis can be viewed, in some respects, as a sliding scale. The more opt-ins there are in the class, the more the analysis under § 216(b) will mirror the analysis under Rule 23"), *adopted sub nom. White v. Western Beef Properties, Inc.*, 2013 WL 1632657 (E.D.N.Y. Apr. 16, 2013). Indeed, "it is not mere coincidence that courts facing parallel motions to decertify an FLSA collective action under Section 216(b) and to certify a class action under Rule 23 have tended to allow either both actions or neither to proceed on a collective basis." *Ruiz,* 93 F. Supp. 3d at 298-99. With these standards in mind, the Court turns to the instant motion.

## II. Failure to Pay Overtime

Plaintiffs claim that Defendants followed three uniform "policies" that affected the collective: (1) a policy of failing to verify the attendance of employees by the direct supervisor prior to processing payroll resulting in "widespread delays in payment of minimum wages and overtime;" (2) the policy of paying for "shift hours" instead of hours clocked by the employee and the policy of automatically deducting ½ hour for lunch; and (3) a policy of "requiring employees to report to work *at least* five minutes prior to the beg[inn]ing of their shift."

Plaintiffs' Memorandum in Response at 19, DE [182] (emphasis in original). Judge Spatt addressed, and rejected, each of these arguments as a basis for Rule 23 class certification, finding no evidence of any unlawful, uniform policy, and insufficient, inconsistent evidence to demonstrate the existence of a *de facto* or informal policy.

This Court agrees that the policies are not facially unlawful and thus, Plaintiffs must provide sufficient evidence that Defendants' implementation of these policies violated the FLSA. Upon review of the declarations of the named Plaintiffs and several opt-in Plaintiffs, it is clear that there is no generalized or representative proof of such a policy that would establish liability on a collective-wide basis. While each Plaintiff may have a claim that he or she is entitled to additional compensation under the FLSA, those claims may only be established through individualized evidence. "Without belaboring the point, Defendant[s'] motion to decertify the collective action succeeds for exactly the same reason Plaintiffs' motion to certify the class action fails—a lack of commonality, even under the less stringent FLSA analysis." *Ruiz,* 93 F. Supp. 3d at 299.

    A.  <u>Failure to verify hours prior to processing payroll</u>

While the FLSA requires an employer to make and preserve a record of hours worked by its employees, *see* 29 U.S.C. § 211(c), it does not prescribe a particular recordkeeping method, nor have Plaintiffs identified any requirement under the FLSA mandating employers to verify attendance or hours worked prior to issuing a paycheck. Use of punch in/punch out systems that allow a contemporaneous recording of hours, such as the one used at Defendants' facilities, are clearly lawful. *See, e.g., Zivali,* 784 F. Supp. 2d at 461. Accordingly, Plaintiffs must establish that a corporate culture or practices existed that were "sufficiently uniform and pervasive as to warrant class treatment." *Id.* at 463.

In attacking the timekeeping system here, Plaintiffs merely put forth anecdotal evidence of individual failures in the system, not proof of a company-wide policy or practice that systematically deprived workers of rightfully earned overtime payments. As Judge Spatt found, this "evidence submitted by the Plaintiffs does not suggest that the Individual Defendants implemented a common *de facto* policy to deny compensation to their employees." *Mendez,* 2016 WL 231231, at *14. Notably, Defendants had a procedure that allowed for the correction of inaccurate hours, albeit post-issuance of the paycheck, and for payment of overtime for hours worked. *See* Declaration of Mayela Montanez ("Montanez Decl."), Moser Ex. 11, at ¶ 25[1]; Declaration of Oona B. Muido, Moser Ex. 12, at ¶¶ 25-28*; see also Mendez,* 2016 WL 231231, at *14 (noting that "the statements by Muido and Montanez suggest that the Defendants implemented a process to ensure that employees were generally paid for the hours that they claimed to have worked").

Plaintiffs' experiences with this procedure vary widely, however, as demonstrated by the inconsistency in their claims regarding payment of overtime wages. Some Plaintiffs do not make personal claims of missed overtime or do not mention whether they ever sought correction of alleged underpayment. *See* Declaration of Daniel Sante, Moser Ex. 10, at ¶ 11 (describing process for disputing unpaid overtime, but claims no personal loss nor any specifics regarding other workers' situations); Declaration of Siryi Melendez ("Melendez Decl."), Moser Ex. 6, at ¶ 5 (non-specific claim that he "was not paid for any pre-shift work," but no suggestion that he sought payment on any such occasion); Declaration of Santos Velasquez ("Velasquez Decl."), Moser Ex. 44, at ¶ 5 (cites instance of non-payment for actual pre-shift work, but does not state

---

[1] Plaintiffs provided Declarations from some of the named Plaintiffs and approximately 25 of the opt-in Plaintiffs. *See* Moser Decl., Exs. 6-10, 23-46. Unless specifically stated otherwise, these Declarations appear in the record as exhibits to the Declaration of Steven Moser, DE [183], and will be cited as "Moser Ex. #."

whether he reported non-payment to manager); Declaration of Rosa Lazo ("Lazo Decl."), Moser Ex. 33, at ¶ 9 ("missing" hours on four to five non-specific occasions, but does not state whether shortage was reported to manager). Other Plaintiffs claim to have been paid overtime after bringing the omission to a manager's attention. *See* Declaration of Amanda Alicia Rivera Argueta, Moser Ex. 25, at ¶ 11 (received overtime on two occasions after complaints); Declaration of Jose Vicente Del Cid ("Vicente Del Cid Decl."), Moser Ex. 27, at ¶9 (three instances of missing overtime paid after worker raised issue with manager); Declaration of Melvin Amaya Marquez ("Marquez Decl."), Moser Ex. 34, at ¶¶ 11-13 (missing overtime on five to eight occasions rectified after complaint to manager). Still other Plaintiffs state that they were never paid for their earned overtime. *See* Declaration of Ramon Cordova, Moser Ex. 8, at ¶ 14, 16 (was not paid overtime on two specific occasions despite complaints to manager); Declaration of Luis Emanuel Lopez Montoya, Moser Ex. 38, at ¶ 12 (was never paid for missing hours despite complaints on unspecified occasions); Declaration of Isidra Flores de Zelaya, Moser Ex. 46, at ¶¶ 8-10 (same). Others are unsure whether they even worked overtime. *See* Declaration of Luis Gonzalez ("L. Gonzalez Decl."), Moser Ex. 31, at ¶ 9 (does not know if he was paid for all hours worked, but does not claim to have worked overtime); Declaration of Mayra A. Montoya Cuadros ("Cuadros Decl."), Moser Ex. 29, at ¶ 11 ("I often heard complaints of hours missing from paychecks of my co-workers. I did not record my own hours, and do not know if I was deprived of wages"); Declaration of Celenia Acosta ("Acosta Decl."), Moser Ex. 22, at ¶ 13 ("I don't know if I was ever 'shorted' by US Nonwovens"); Declaration of Felix Salvador ("Salvador Decl."), Moser Ex. 41, at ¶ ("I do not know if US Nonwovens paid me for all hours worked"). Another group of Plaintiffs asserts that they received inconsistent treatment of their requests for overtime, receiving pay after complaining to supervisors on some occasions,

but not on others.  *See* Declaration of Efrain Danilo Mendez a/k/a Efrain D. Mendez-Rivera, Moser Ex. 9, at ¶ 16 (reported missing overtime twice and was compensated for instance but not the other); Declaration of Glenda Romero ("Romero Decl."), Moser Ex. 40, at ¶¶10-11 (eventually paid for overtime except one occasion); Declaration of Rosemberg Berrios Vasquez, Moser Ex. 45, at ¶¶ 10-11 (sometimes had to wait two or three weeks, sometimes was never paid); Declaration of Sandra Gonzalez ("S. Gonzalez Decl."), Moser Ex. 32, at ¶¶ 11-12 ("[s]ometimes they would eventually pay me in full but other times they would compensate me only for some of the hours that I was owed").

The Court finds that these inconsistencies demonstrate that the collective members are not sufficiently similarly situated with regard to overtime claims under the FLSA.  The inconsistency of treatment alleged by each Plaintiff suggests that the claims are not susceptible to resolution based on generalized proof.  Rather, individualized evidence will be necessary to assess each claim.  *See Zivali,* 784 F. Supp. 2d at 459 (granting decertification where plaintiffs "failed to show that [the employers'] lawful policies are consistently violated in practice such that it would be possible to generalize" across the opt-in plaintiffs); *see also Stevens,* 2014 WL 4261410, at *8 (finding decertification appropriate where, in the absence of generalized or representative proof, proceeding as a collective would "require mini-trials for each of the opt-in plaintiffs"); *Hinterberger*, 299 F.R.D. at 55 (decertifying collective where Plaintiffs "have not identified any system-wide policy or practice that was applied uniformly to each of the four name Plaintiffs, much less the numerous opt-in plaintiffs").  Accordingly, Defendants' motion to decertify the collective action as to Plaintiffs' overtime claims under the FLSA is granted.

B.  <u>Non-Payment for Pre-Shift or Off-the-Clock Work</u>

The remaining unlawful uniform policies alleged by Plaintiffs -- the policy of paying for "shift hours" instead of hours clocked by the employee, of automatically deducting ½ hour for lunch, and of requiring employees to arrive prior to the start of their shift – all implicate the issue of whether workers were entitled to be paid for pre-shift or off-the-clock work. A review of these arguments similarly shows that Plaintiffs cannot establish these claims by generalized proof.

i. Payment based on shift work

As Judge Spatt noted, the policy of paying workers based on their shifts and not their punch times is not facially invalid, and "there is no evidence showing that the Individual Defendants used this practice to deny employees overtime or regular wages." *Mendez,* 2016 WL 231231, at *13. As to the alleged policy requiring workers to arrive five minutes prior to the start of the shift, the declarations from Plaintiffs again show that individualized determinations will be necessary. Defendants dispute that they required the workers to come in early, and Plaintiffs' submissions are lacking in any details regarding how or from whom they received this instruction. Moreover, Plaintiffs' testimony is inconsistent concerning how this alleged requirement resulted in the performance of compensable overtime work. Many Plaintiffs summarily state that they arrived early, but do not indicate what, if any, work they performed during that time, while others state summarily that they started work early. *Compare* Acosta Decl., at ¶ 8 ("I often arrived to work 15 minutes early and stayed 5 minutes late"); Declaration of Felipe Santiago Cruz, Moser Ex. 28, at ¶ 8 (arrived 15 minutes early but was not paid); S. Gonzalez Decl., at ¶ 8 ("we were told that we had to be at work at least ten minutes before the beginning of our shift so that production would not stop" but does not allege that she performed pre-shift work); Marquez Decl., at ¶ 8 ("I would arrive early and/or stay late" but no mention of

work performed); Declaration of Zoila Merlos, Moser Ex. 37, at ¶ 8 (ordered to be at work early and arrived 5-10 minutes prior to shift); Romero Decl. at ¶ 12 (ordered to be at factory 5-10 minutes early but no mention actually performing work), *with* Declaration of Daniel Carbajal, Moser Ex. 26, at ¶ 12 ("I usually arrived at least 15 minutes before the beginning of my shift, punched in, and started working"); Declaration of Heriberto Mendez, Moser Ex. 35, at ¶ 9 ("Many times during my employment I arrived to work early, punched in, and began working"); Lopez Montoya Decl. at ¶9 (usually arrived 5 minutes early and began working). Some statements provide slightly more specific allegations of work performed outside of the shift, and yet others omit any reference to reporting prior to commencement of the shift. *Compare* Declaration of Raul Alva, Moser Ex. 23, at ¶ 9 ("I was told by my supervisor Rafael Bobea that I had to punch out at 4:00 PM. But even after I punched out he would tell me that I had to finish wrapping pallets. . . I was never paid for the time that I worked after I punched out."); Velasquez Decl. at ¶ 5 (cites "one particular occasion" where he was "specifically asked to repair a machine" pre-shift but was not paid), *with* Vicente Del Cid Decl. (no allegations of pre-shift reporting requirement or of pre-shift work performed); Cuadros Decl. (same); L. Gonzalez Decl. (same); Lazo Decl. (same); Salvador Decl. (same). Further highlighting the inconsistencies, at least one worker testified that he arrived early to make sure he would be on time for his shift. Declaration of Abraham Mercado, Moser Ex. 36, at ¶ 5 ("I always arrived early" to avoid being penalized for being late). Another worker testified that there were five or six occasions where he had to wait "up to two hours" for the machines to be fixed only to be sent home for the day with no pay. Declaration of Santos Sarai Melgar Ulloa, Moser Ex. 43, at ¶ 7. And there is additional testimony that some workers' arrival time was often dictated by non-business factors such as

carpools, and that after punching in, workers went to the lunchroom to wait for the shift to start. Deposition of Malik Awan ("Awan Dep."), Defendants' Ex. J, DE [176-10], at 170-71.

As Judge Spatt noted, "a few unsupported statements by class members, which do not specify details, such as who in management told them to come in early or reference specific occasions when they did so, is not sufficient to infer a company-wide compensation policy." *Mendez,* 2016 WL 231231, at *15. The testimony sets forth disparate factual claims by the individual Plaintiffs on questions such as the length of the pre-shift time period, who told them to come early, what they were told, and whether each Plaintiff actually performed any work during that period. As a result, the defenses available to Defendants will necessarily vary. For example, those Plaintiffs who claim to have actually worked will have to establish that the employer had actual or constructive knowledge that he performed uncompensated overtime, evidence of which is currently absent from the Plaintiffs' submissions. *Cf. Kuebel,* 643 F.3d at 361; 29 C.F.R. § 785.11 (additional time must be counted where "the employer knows or has reason to believe that [the employee] is continuing to work"). Similarly, different defenses may be available to Defendants regarding those Plaintiffs who suggest that they should be paid once they punched in regardless of whether they actually worked. For example, Defendants may raise the *de minimis* doctrine that "permits employers to disregard, for purposes of the FLSA, otherwise compensable work when the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours." *Singh v. City of New York*, 524 F.3d 361, 370-71 (2d Cir. 2008) (internal quotation and citation omitted). Alternatively, Defendants may claim that certain employees had personal reasons for arriving early or did so as a self-imposed time management practice. Further and contrary to Plaintiffs' assertion, damages are not ascertainable by a review of payroll records and use of simple arithmetic to subtract the shift time from the punched in

time and determine an appropriate measure of overtime earned. Accordingly, use of a collective proceeding is inappropriate to resolve these claims, and the motion to decertify as to Plaintiffs' claims concerning shift pay is granted. *See generally Hinterberger*, 299 F.R.D. at 55 (decertifying collective where "a determination of the merits is not susceptible to generalized proof, but will require individualized inquiries regarding the procedures in place at each department, and the conduct of individual managers and employees").

ii. Nonpayment for meal breaks

Regarding the meal deduction policy, it is clear that such policies "are not *per se* illegal." *DeSilva,* 27 F. Supp. 3d at 321 (citing cases). As Judge Spatt concluded, the existence of a policy of mandatory meal breaks with an automatic pay deduction for the break time "by itself, does not violate the FLSA . . . as the Plaintiffs contend, because employees are not entitled to compensation during break periods when they are not working." *Mendez,* 2016 WL 231231, at *16. Indeed, "not every interruption of an employee's lunch break renders the entire break period compensable under the FLSA. The question is not whether an employee did *any* work at all during his meal period, but whether that period itself is used primarily to perform activities for the employer's benefit." *Mendez v. Radec Corp.*, 232 F.R.D. 78, 83 (W.D.N.Y. 2005) (emphasis in original).

Plaintiffs' testimony regarding performance of work during the mandatory meal break is particularly sparse, being limited to three declarations. Opt-in Plaintiff Sandra Gonzalez claims that she was forced to work through lunch on three unspecified occasions and that the mandatory meal deduction was still made. S. Gonzalez Decl., at ¶ 13. Named Plaintiff Melendez noted that the meal period was ½ hour, "[b]ut you have to be at your machine at 8:00 PM and at 8:30 PM. Therefore I often took a lunch of 25 minutes or less." Melendez Decl. at ¶ 6. Named Plaintiff

Fernando Molina describes a specific date on which he punched in and out for a twelve-minute lunch, but that his paycheck reflected the full half-hour deduction. Declaration of Fernando Molina, Moser Ex. 7, ¶ 8. He further testifies that when he skipped lunch, he was instructed by an unspecified supervisor to punch out and back in. *Id. ¶* 9. The remaining Plaintiffs do not claim that they performed work for Defendants' benefit during the meal break period.

Defendants, on the other hand, have presented evidence that "suggests that managers did not encourage employees to work through their meal breaks in any kind of uniform way." *Mendez,* 2016 WL 231231, at \*17. A buzzer sounded to signal the start of the break and food vendors were available. Awan Dep. at 82. In addition, the machines were shut down, lights dimmed, electricity was turned off, and the supervisors left the floor. Shervin Mehdizadeh Dep. at 134. Based on this evidence, the anecdotal claims of three Plaintiffs appear to represent isolated incidents, not a uniform policy requiring employees to work during their meal breaks without compensation. Accordingly, as Plaintiffs are not similarly situated, decertification of the collective their claim based on non-payment for meal breaks is also appropriate.

**III. Failure to Timely Pay Overtime**

In the Amended Complaint, Plaintiffs added a cause of action for untimely payment of overtime. A threshold issue, addressed by neither party, exists as to whether this claim is part of the collective action. Plaintiffs' motion for conditional certification was granted *before* the Plaintiffs received court permission to file the Amended Complaint, and Plaintiffs never sought permission to add specific language regarding this claim to the collective action.

Even assuming *arguendo* that the untimely payment of overtime is part of the collective action, Plaintiffs have failed to provide proof sufficient to withstand the second stage of inquiry, and thus, Defendants' motion to de-certify the collective action as to this claim is granted as

well. As discussed at length *supra,* the declarations submitted by the named and opt-in Plaintiffs show that the process of seeking payment for overtime varied by employee and was therefore susceptible to individualized, not generalized, proof. Similarly, Plaintiffs' assertions regarding the eventual payment of overtime are disparate and require individual determinations. There is no suggestion that the delays were part of any plan or policy by Defendants, and such delays may be attributed to myriad factors, all subject to individualized proof, including when in the payroll cycle the worker reported the omission and the time necessary for the manager to confirm the shortage. There was no set time period for correcting paychecks that were missing hours, as the evidence shows that Plaintiffs received payment in two weeks, three weeks, or up to a month after they reported the missing time. *See e.g.,* Vicente Del Cid Decl. at ¶ 9 (delays of two weeks and one month); Romero Decl. at ¶ 10 (paid two to three weeks later); Marquez Decl. at ¶ 13 (sometimes had to wait "up to three weeks"). Further, Plaintiffs have presented no evidence that suggests the length of the delay was the result of a company-wide policy intended to deprive them of earned overtime. As Plaintiffs have not demonstrated that they are similarly situated and "have not shown a common policy that operated to common effect, or some other mode of evidencing shared experiences, they cannot proceed as a collective action." *Ruiz,* 93 F. Supp. 3d at 300. Accordingly, Defendants' motion to decertify as to Plaintiffs' claims to failure to timely pay overtime is granted.

## IV. Notice to Pro Se Opt-in Plaintiff

According to Plaintiffs' counsel, one of the opt-in Plaintiffs, Erik Briggs, has elected to appear *pro se. See* Consent*,* DE [125]. Although Mr. Briggs indicated, by writing "Self" on the consent form, that he would be representing himself, this fact is not reflected on the docket beyond the form as opt-in Plaintiffs are not added to the docket as separate parties. The Court

finds, however, that in light of the testimony from other collective members, it would be impossible for Mr. Briggs to provide any evidence that would cure the inconsistencies demonstrated. In addition, dismissal of Mr. Briggs from this action will be without prejudice and thus his rights will not have been substantively adjudicated. Mr. Moser is directed to serve a copy of this Order on Mr. Briggs at the address indicated on his consent form.

## CONCLUSION

The policies identified by Plaintiffs do not, on their face, violate the FLSA, and Plaintiffs have failed to identify any unlawful *de facto* or informal company-wide practice that was uniformly applied to the Plaintiffs. The disparate facts underlying Plaintiffs' claims, the existence of defenses available to Defendants that vary by individual Plaintiff, and interests of fairness all weigh against allowing the case to proceed as a collective action. Accordingly, Defendants' motion to decertify the collective action is granted.

Dated: Central Islip, New York  
      March 31, 2016

SO ORDERED:

  s/ Steven I. Locke  
STEVEN I. LOCKE  
United States Magistrate Judge